**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE:

*EX PARTE* APPLICATION OF EURASIAN
NATURAL RESOURCES CORPORATION
LIMITED PURSUANT TO 28 U.S.C. § 1782 FOR
LEAVE TO TAKE DISCOVERY FOR USE IN
FOREIGN PROCEEDINGS,

                              Applicant.

Case No. 20 mc. _____

## MEMORANDUM OF LAW IN SUPPORT OF *EX PARTE* APPLICATION OF EURASIAN NATURAL RESOURCES CORPORATION LIMITED PURSUANT TO 28 U.S.C. § 1782 FOR LEAVE TO TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

Duane L. Loft
Mark W. Kelley
Joseph Aronsohn
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
(t) +1 212 446 2300
(f) +1 212 446 2380

*Attorneys for Applicant Eurasian
Natural Resources Corporation Ltd.*

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................... 1

RELEVANT BACKGROUND ..................................................................................................... 3

I.      The Parties ..................................................................................................................... 3

II.     Breaches of ENRC's Confidential Information.............................................................. 3

III.    Contemplated Proceedings Related to the Forthcoming Book ....................................... 7

IV.     Discovery Sought through this Application..................................................................... 9

ARGUMENT ............................................................................................................................... 11

I.      The Application Meets Section 1782's Statutory Requirements. ................................. 11

        A.      Respondent Is Found in the Southern District of New York. ............................. 11

        B.      The Requested Discovery Is for Use in Proceedings Before Foreign or
                International Tribunals............................................................................................ 12

        C.      As Plaintiff in the Foreign Proceedings, ENRC Is an "Interested Person." ......... 14

II.     *Intel*'s Discretionary Factors Favor Granting the Application. ......................................... 14

        A.      Respondent Is Not a Participant in the Foreign Proceedings............................... 15

        B.      English Courts Are Receptive to the Requested Discovery.................................. 16

        C.      The Application Does Not Circumvent Affirmative Proof-Gathering
                Restrictions. ......................................................................................................... 17

        D.      The Application Is Narrowly Tailored to Avoid Unnecessary Burdens in
                Accordance with the Federal Rules of Civil Procedure........................................ 17

CONCLUSION............................................................................................................................ 19

# TABLE OF AUTHORITIES

**Cases**

*Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*,
  785 F. Supp. 2d 434 (S.D.N.Y. 2011) .................................................................. 11

*Anwar v. Fairfield Greenwich Ltd.*,
  297 F.R.D. 223 (S.D.N.Y. 2013) ......................................................................... 17

*Application of Euromepa, S.A.*,
  51 F.3d 1095 (2d Cir. 1995) ................................................................................ 16

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
  673 F.3d 76 (2d Cir. 2012) ................................................................................. 11

*Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.*,
  798 F.3d 113 (2d Cir. 2015) .......................................................................... 12, 13

*Gushlak v. Gushlak*,
  486 F. App'x 215 (2d Cir. 2012) ........................................................................... 2

*In re Accent Delight Int'l Ltd.*,
  869 F.3d 121 (2d Cir. 2017) ............................................................................ 2, 13

*In re Application for an Order for Judicial Assistance in a Foreign Proceeding in the
  Labor Court of Brazil*,
  466 F. Supp. 2d 1020 (N.D. Ill. 2006) .................................................................. 15

*In re Application for an Order Pursuant to 28 U.S.C. 1782 to Conduct Discovery for Use
  in Foreign Proceedings*,
  773 F.3d 456 (2d Cir. 2014) ................................................................................ 14

*In re Application of Shervin Pishevar for an Order to take Discovery for use in Foreign
  Proceedings Pursuant to 28 U.S.C. § 1782*,
  439 F. Supp. 3d 290 (S.D.N.Y. 2020) .................................................................. 16

*In re Application of Sveaas*,
  249 F.R.D. 96 (S.D.N.Y. 2008) ........................................................................... 12

*In re del Valle Ruiz,*
  939 F.3d 520 (2d Cir. 2019) ................................................................................ 15

*In re Hornbeam Corp.*,
  722 F. App'x 7 (2d Cir. 2018) ........................................................................ 11, 13

*In re Kiobel*,
  No. 16 CIV. 7992 (AKH), 2017 WL 354183 (S.D.N.Y. Jan. 24, 2017) ............... 12

*In re Malev Hungarian Airlines*,
  964 F.2d 97 (2d Cir. 1992) ................................................................................. 2

*In re Mangouras*,
  No. 17-MC-172, 2017 WL 4990655 (S.D.N.Y. Oct. 30, 2017) .............................................. 16

*In re Postalis*,
  No. 18-MC-497 (JGK), 2018 WL 6725406 (S.D.N.Y. Dec. 20, 2018) ................................. 11

*In re Republic of Kazakhstan*,
  110 F. Supp. 3d 512 (S.D.N.Y. 2015) ..................................................................... 16

*In re Top Matrix Holdings Ltd.*,
  No. 18 MISC. 465 (ER), 2020 WL 248716 (S.D.N.Y. Jan. 16, 2020) .................................. 15

*In re Vale S.A.*,
  No. 20MC199JGKOTW, 2020 WL 4048669 (S.D.N.Y. July 20, 2020) .............................. 12

*In re Veiga*,
  746 F. Supp. 2d 8 (D.D.C. 2010) ........................................................................... 12

*Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*,
  895 F.3d 238 (2d Cir. 2018) .......................................................................... 13, 15

*Mees v. Buiter*,
  793 F.3d 291 (2d Cir. 2015) .......................................................................... 13, 17

*Schmitz v. Bernstein Liebhard & Lifshitz LLP*,
  376 F.3d 79 (2d. Cir 2004) ................................................................................. 14

**Statutes**

28 U.S.C. § 1782 ........................................................................................... 1, 11, 12

Applicant Eurasian Natural Resources Corporation Limited ("ENRC") respectfully submits this Memorandum of Law in support of its application pursuant to 28 U.S.C. § 1782 authorizing ENRC to take discovery, in the form of the attached subpoena, from Respondent HarperCollins Publishers, LLC ("Respondent," or "HarperCollins") for use in foreign proceedings.

## PRELIMINARY STATEMENT

On September 8, 2020, a British writer named Tom Burgis will publish a book containing privileged and confidential information that ENRC has reason to believe was unlawfully obtained in a multi-year conspiracy to leak and sell such information on the black market to ENRC's rivals and competitors. Mr. Burgis has now published an article about ENRC that appears to present the same privileged and confidential information wrongfully obtained for use in his book, but this time in a false and misleading manner intended to distort the facts. Based on the article, ENRC believes the book will also include false, sensationalized accusations with no basis in truth and will disclose the privileged and confidential information stolen from ENRC. Through this Application, ENRC seeks leave to serve a subpoena on Respondent, the publisher of the forthcoming book, for discovery in aid of ongoing litigation in England against those responsible for the information breaches and in aid of litigation that ENRC intends to bring against Mr. Burgis for breach of confidence and unlawful publication of the confidential information.

Section 1782 permits the "district court of the district in which a person resides or is found" to order the production of discovery "for use in a proceeding in a foreign or international tribunal" upon the application of "any interested person." 28 U.S.C. § 1782(a). This Application meets those statutory requirements. Respondent is "found" in the Southern District of New York based on its corporate headquarters; the requested discovery will be "for use" in ongoing and reasonably

contemplated civil actions before English courts; and, as the plaintiff in the foreign proceedings, ENRC is an "interested person."

The discretionary factors set forth in the Supreme Court's decision in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), also weigh in favor of granting the Application: (i) Respondent is not a party or participant in the foreign proceedings; (ii) English courts are receptive to discovery obtained under Section 1782; (iii) obtaining discovery through Section 1782 would not circumvent any local proof-gathering restrictions; and (iv) the Application is narrowly tailored to avoid unnecessary burdens on Respondent. In short, granting the Application would further the "twin aims" of Section 1782: "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 134 (2d Cir. 2017) (quoting *In re Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir. 1992)).

ENRC's application is also properly filed *ex parte*. As the Second Circuit has recognized, applications pursuant to Section 1782 are routinely filed *ex parte* because the entities from whom discovery is sought "can later challenge any discovery request by moving to quash pursuant to Federal Rule of Civil Procedure 45(c)(3)." *Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012); *see also id.* ("[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*."). This *ex parte* application does not prejudice the rights of Respondent.

For these reasons and as set forth below, ENRC respectfully requests that the Court grant the Application.

## RELEVANT BACKGROUND

### I.      The Parties

Applicant ENRC is a private limited company incorporated in the United Kingdom and is part of a diversified group of companies in the natural resource industry (the "ENRC Group") that engages in mining, integrated energy, processing, and logistics operations. *See* Declaration of Niranjan Shanmuganathan ("Shanmuganathan Decl.") ¶ 3.

Respondent HarperCollins is an international publishing company with its headquarters in New York, New York. *Id*. ¶ 4. It operates in 17 countries, including the United Kingdom, and publishes approximately 10,000 new books a year in 16 languages. *Id*. HarperCollins operates more than 120 "imprints," trade names under which works are published. *Id*.

### II.     Breaches of ENRC's Confidential Information

ENRC has been victimized by a years-long conspiracy to steal and otherwise obtain its confidential information. ENRC believes that confidential information was unlawfully obtained through and by, among other parties, IT vendors and lawyers, and has now found its way into a book by Tom Burgis titled *Kleptopia: How Dirty Money Is Conquering the World* (the "Book"), which is scheduled to be published in the United States on September 8, 2020.[1] The events giving rise to these breaches of confidentiality, as alleged in foreign pleadings, are summarized briefly below.

Between approximately 2007 and 2012, ENRC engaged a computer forensics expert named Robert Trevelyan through his company, Cyntel, to perform IT services, data collection, and security analysis. Shanmuganathan Decl. Ex. 2 ("Hollingsworth Pleading") ¶ 12. As part of this work, Mr. Trevelyan had access to ENRC's premises and IT systems and, in some instances, was

---

[1]      The publication date in the U.K. is September 3, 2020. *See* Shanmuganathan Decl. ¶ 21.

permitted to make copies of data stored within those IT systems for the limited purposes of testing or analysis.  *Id.*  Mr. Trevelyan had access to numerous categories of information, including (a) documents relating to completed and prospective corporate transactions; (b) due diligence reports; (c) business analysis and strategy reports; (d) internal communications between officers, employees, and agents of ENRC; (e) external communications between officers, employees, and agents of ENRC and third parties (such as suppliers, customers, contractors, business partners, banks, and professional advisors); (f) minutes and records of board meetings; (g) communications with regulators; (h) financial statements; (i) internal audits; and (j) documents generated for purposes of ongoing or anticipated legal proceedings and/or containing legal advice received by ENRC and its subsidiaries from its legal advisors (the "ENRC Dataset").  *Id.* ¶¶ 12–13, 25. Without ENRC's authorization or knowledge, Mr. Trevelyan retained copies of sensitive, confidential, and in some instances, privileged information ("ENRC Confidential and Privileged Information").  *Id.* ¶ 13.

Mr. Trevelyan disclosed portions of ENRC Confidential and Privileged Information to a number of third parties, including Mark Hollingsworth, a self-described freelance journalist and "intermediary."  *Id.* ¶¶ 14–16.  Intermediaries buy and sell confidential and sensitive information within the private intelligence community.  Mr. Hollingsworth regularly relied on Mr. Trevelyan to search through and exploit the ENRC Dataset.  *Id.* ¶ 16.

Mr. Hollingsworth frequently traded ENRC Confidential and Privileged Information with other intermediaries, members of the press, and his own clients.  For example,

- Mr. Hollingsworth leaked or sold the information to commercial rivals of ENRC, including those engaged in legal disputes with ENRC and sought to who used ENRC Confidential and Privileged Information to baselessly exert pressure on ENRC in such litigation.

- Mr. Hollingsworth leaked ENRC Confidential and Privileged Information to investment firms who sought to profit from a decline in the value of ENRC's share price resulting from the publication of such information. *Id.* ¶ 9.

- Mr. Hollingsworth provided ENRC Confidential and Privileged Information to, and received instructions from, Ake-Jean Qajygeldin (AKA Akezhan Kazhegeldin), the former Prime Minister of Kazakhstan. *Id.* ¶ 21(b), Annex C.1; Shanmuganathan Decl. Ex. 5 ("Qajygeldin Pleading") ¶ 10. Mr. Qajygeldin sought this information as part of an effort to destabilize and damage ENRC. Qajygeldin Pleading ¶¶ 9, 28, 38.

- Mr. Hollingsworth additionally worked to acquire, trade, and otherwise exploit ENRC Confidential and Privileged Information with Glenn Simpson, a U.S.-based intermediary and Chief Executive of Fusion GPS, a private intelligence firm, Hollingsworth Pleading ¶¶ 21(c), 29(g), Annex C.1, Alex Yearsley, a UK-based intermediary and freelance investigator, *id.* ¶¶ 21(a), 29, and Phillip van Niekerk, the Managing Partner of Calabar Consulting, another private intelligence firm, *id.* ¶¶ 21(d), 29(h), Annex C.3.

- Mr. Hollingsworth acquired ENRC Confidential and Privileged Information from one or more sources within the U.K.'s Serious Fraud Office (the "SFO") which he disseminated further to third parties, including representatives of the media. *Id.* ¶¶ 22–23, Annex D. Press outlets have reported that the SFO recently referred one of its employees to the Metropolitan Police of London for an investigation relating to leaks to the press. Shanmuganathan Decl. Ex. 13. There is reason to believe that this referral is related to what Mr. Hollingsworth has described as his "source at the SFO who is a senior investigator on their big cases and talks to me off-the-record" about, among other things, "the SFO investigation into ENRC." *Id.* Ex. 14.

- Mr. Hollingsworth, in cooperation with Mr. Trevelyan, acted as a conduit for a lawyer named David Neil Gerrard, whom ENRC hired in December 2010 to conduct an internal investigation relating to an indirect subsidiary located in Kazakhstan. Shanmuganathan Decl. Ex. 3 ("Dechert Pleading") ¶¶ 34–40. Mr. Gerrard worked at the law firm DLA Piper when he was first hired by ENRC, and later joined the firm Dechert LLP ("Dechert"). *Id.* ¶ 42. His remit eventually expanded to include advice relating to an investigation by the SFO. *Id.* ¶ 45. However, between 2011 and 2013, Mr. Gerrard made a series of unauthorized disclosures of ENRC Confidential and Privileged Information via Mr. Trevelyan and Mr. Hollingsworth to the SFO, journalists, and others. *See, e.g.*, *id.* ¶¶ 60, 81.

The disclosures made or caused to be made by Mr. Gerrard prejudiced ENRC's interests and included, among other things, confidential communications and privileged legal memoranda relating to suspected frauds against ENRC. *Id.* These disclosures resulted in the publication of several damaging articles containing ENRC Confidential and Privileged Information, including "Copper giant calls in outsiders to examine corruption claims," published by *The Times* on August 9, 2011; "Mining giant slips into a new hole" and "Fraud office steps in at embattled Footsie mining giant," published by *The Sunday Times* on December 11, 2011; and "ENRC internal inquiry raises suspicions," published by *The Financial Times* on March 14, 2013. Disclosures made or caused to be made by Mr. Hollingsworth resulted in the publication of articles as well, including "Ex-ENRC Africa Boss Interviewed by U.K. Prosecutor in Bribe Case," published by *Bloomberg News* on September 9, 2016; "SFO is stepping up its Kazakh miner probe," published by *Evening Standard* on September 15, 2017; and "ENRC Sues U.K. Fraud Cops as Corruption Charges Loom," published by *Bloomberg News* on March 27, 2019. *Id.* ¶¶ 60, 81, 147; Shanmuganathan Decl. Exs. 6–12.

As a result of these alleged breaches of confidentiality, ENRC has brought a number of legal proceedings in the U.K., including the following cases (collectively, the "Ongoing Proceedings"):

- *Eurasian Natural Res. Corp. v. Mark Hollingsworth*, Claim No. BL-2019-001955 (the "Hollingsworth Proceeding"), wherein ENRC alleges, among other things, that Mr. Hollingsworth disseminated ENRC Confidential and Privileged Information;

- *Eurasian Natural Res. Corp. v. The Director of the Serious Fraud Office*, Claim No. BL-2019-000613 (the "DSFO Proceeding"), wherein ENRC alleges that the Director of the SFO committed misfeasance in public office and that the SFO wrongfully obtained ENRC Confidential and Privileged Information through Dechert or Mr. Gerrard;

- *Eurasian Natural Res. Corp. v. Dechert LLP and David Neil Gerrard*, Claim No. CL-2017-000583 (the "Dechert Proceeding"), wherein ENRC alleges,

among other things, that Dechert and Mr. Gerrard deliberately leaked documents containing ENRC Confidential and Privileged Information to the press in breach of their duties to ENRC; and

- *Eurasian Natural Res. Corp. v. Ake-Jean Qajygeldin*, Claim No. BL-2019-001377 (the "Qajygeldin Proceeding"), wherein ENRC alleges, among other things, that Mr. Qajygeldin misappropriated and misused ENRC Confidential and Privileged Information.

Shanmuganathan Decl. ¶ 5. ENRC previously applied for, and received, an order for discovery pursuant to Section 1782 in aid of the Dechert Proceeding. Shanmuganathan Decl. ¶ 10, Ex. 17. That application sought documents and deposition testimony from Danny Fortson, a reporter for *The Sunday Times*. *Id.* ¶ 10. The case is captioned *In re Application of Eurasian Natural Resources Corporation*, 18-mc-80041 (N.D. Cal.).

## III. Contemplated Proceedings Related to the Forthcoming Book

On April 18, 2020, an ENRC public relations agent received an e-mail from an author named Tom Burgis stating that Mr. Burgis was writing a book about, among other things, ENRC, and requesting that ENRC confirm the accuracy of a 33-page document attached to the e-mail. *See* Shanmuganathan Decl. ¶¶ 11–12, Ex. 18. Although ENRC has not seen or read the contents of the Book itself, ENRC believes that the 33-page document reveals that Mr. Burgis has had access to the ENRC Confidential and Privileged Information obtained by Messrs. Trevelyan, Gerrard, Hollingsworth, Qajygeldin, Simpson, Yearsley, and van Niekerk. Shanmuganathan Decl. ¶ 12. For example, the document uses very similar and sometimes the same headings, and contains very similar and sometimes the same information under such headings, as documents containing the ENRC Confidential and Privileged Information at issue in the Ongoing Proceedings. *Id.* Indeed, there is documentary evidence that Mr. Burgis has been in touch with both Mr. Hollingsworth and Mr. Yearsley. Shanmuganathan Decl. Exs. 14–15.

In a letter response to Mr. Burgis's e-mail, Taylor Wessing LLP ("Taylor Wessing"), a law firm representing ENRC in the U.K., stated that it has reason to believe that Mr. Burgis has been in contact with Mr. Yearsley, and that Mr. Burgis was in possession of confidential information unlawfully obtained from ENRC. Shanmuganathan Decl. ¶ 14, Ex. 19. The Book is scheduled to be published on September 8, 2020, by an American imprint of HarperCollins called "Harper." Shanmuganathan Decl. ¶ 20.

On August 21, 2020, Mr. Burgis sent ENRC an e-mail stating that he intended to publish an article in *The Financial Times* that, based on his description, would contain false and misleading allegations concerning ENRC. *Id.* ¶ 16. Based on this e-mail, ENRC believed that the article was intended to preview and promote the contents in the Book, which it expected to contain similar false and misleading characterizations of the ENRC Privileged and Confidential Information. *Id.* ENRC, through its UK counsel at Taylor Wessing, warned *The Financial Times* that Mr. Burgis's planned article contains a false and misleading characterization of the ENRC Privileged and Confidential Information and that Mr. Burgis has acted in breach of confidence. *Id.* ¶¶ 17–18, Exs. 21–22. Taylor Wessing also warned *The Financial Times* that Mr. Burgis is working with individuals that lack credibility and have an interest in harming and prejudicing ENRC, including Mr. Gerrard, Dechert, Mr. Hollingsworth, and Milltown Partners, and inquired as to whether *The Financial Times* had received information from defendants in those proceedings. *Id.* ¶¶ 17–18, Exs. 21–22. The article was published on September 2, 2020 and, as expected, contains damaging allegations against ENRC purportedly derived from the Book. *Id.* ¶ 19.

ENRC is preparing to bring a claim against Mr. Burgis for breach of confidence under English law (the "Burgis Proceeding") relating to Mr. Burgis's publication of the Book. Shanmuganathan Decl. ¶ 22. A claim for breach of confidence does not require a contract between

the parties or wrongdoing on the part of the defendant in obtaining any of the confidential information; rather, it arises on the basis that Mr. Burgis has misused ENRC Confidential and Privileged Information through actual or threatened publication of the information in the Book. *Id*. ¶ 23. The claim has three elements: first, that the information has the necessary quality of confidence; second, that the information was provided to the defendant in circumstances which imparted an obligation of confidence, including circumstances where the defendant knows that that the information was obtained unlawfully; and third, that the defendant misused the confidential information, causing damages. *Id*. ¶ 24. Once the information is established as confidential, the defendant may raise a public interest defense, in which case an English court will undertake a balancing exercise to assess whether the public interest outweighs the duty of confidence and whether, in all the circumstances, it was in the public interest that the duty of confidence be breached. *Id*.

As described in the Shanmuganathan Declaration, ENRC has a valid claim for breach of confidence: ENRC believes that the relevant information is confidential and was unlawfully obtained from ENRC in the circumstances described above, that these circumstances impart a duty of confidentiality on all who obtained and/or misused it, and that the publication of the information constitutes a misuse that will cause monetary and reputational damage to ENRC. *Id*. ¶ 26.

## IV.    Discovery Sought through this Application

Through this Application, ENRC seeks documents and information that Respondent obtained in connection with the Book relating to ENRC. These include documents that Mr. Burgis may have provided to HarperCollins containing ENRC information, and any other documents concerning ENRC that HarperCollins obtained for consideration as part of a due-diligence, fact-checking exercise. ENRC also seeks information relating to Mr. Burgis's compensation in connection with the Book.

Such discovery is directly relevant to the Burgis Proceeding. As discussed above, in the Burgis Proceeding, ENRC must demonstrate (1) that information obtained and/or used by Mr. Burgis had the necessary quality of confidence, and (2) that the information was obtained under circumstances imparting a duty of confidence, including knowledge that the information was obtained unlawfully and/or illegally. The requested discovery will aid ENRC's claims with regard to each of these elements. If HarperCollins received ENRC Confidential and Privileged Information from Mr. Burgis, then this helps establish that Mr. Burgis obtained and used that information, particularly if this was the only information about ENRC that HarperCollins used in fact-checking the Book. Shanmuganathan Decl. ¶ 29. Furthermore, if such documents bear indicia of confidentiality—for example, a stamp indicating that the documents are confidential or for internal use only—they would demonstrate that any recipient of such documents understood that they imparted a duty of confidentiality. *Id*. Moreover, ENRC seeks information regarding Mr. Burgis's compensation in connection with the Book to aid the measurement of damages in the Burgis Proceeding. *Id*. ¶ 30.

For many of the same reasons, the requested documents and testimony are relevant in the Ongoing Proceedings because they will establish the scope of the wrongful disclosure of ENRC's confidential information by the defendants in those actions. *Id*. ¶ 31. For example, as set forth above, ENRC believes that Mr. Burgis received ENRC Confidential and Privileged Information either from Mr. Hollingsworth, or from Mr. Yearsley, who received that information from Mr. Hollingsworth, who received the information from Mr. Trevelyan and other sources. The evidence obtained in response to the Subpoena may therefore be used in the Hollingsworth Proceeding to show that Mr. Hollingsworth's tortious conduct resulted in the publication of the wrongfully and unlawfully obtained information on a much larger scale than previously known. *Id*. The evidence

relating to compensation of Mr. Burgis will also help to measure damages in the Ongoing Proceedings, including damages resulting from the publication of the Book. *Id.*

## ARGUMENT

The Application meets the statutory requirements set forth in Section 1782 and the discretionary factors established by the Supreme Court's decision in *Intel*.

## I. The Application Meets Section 1782's Statutory Requirements.

28 U.S.C. § 1782 authorizes this court to order discovery where "(1) 'the person from whom discovery is sought resides (or is found)' within the court's district, (2) 'the discovery is for use in a foreign proceeding before a foreign tribunal,' and (3) 'the application is made by a[n] . . . interested person.'" *In re Hornbeam Corp.*, 722 F. App'x 7, 9 (2d Cir. 2018) (quoting *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012)). This Application satisfies all three statutory prerequisites.

### A. Respondent Is Found in the Southern District of New York.

For the purposes of Section 1782, "[a] corporation is found in the district where it is incorporated or headquartered." *In re Postalis*, No. 18-MC-497 (JGK), 2018 WL 6725406, at *3 n.3 (S.D.N.Y. Dec. 20, 2018). Here, HarperCollins maintains its corporate headquarters in Manhattan, New York. *See* Shanmuganathan Decl. ¶ 4. Accordingly, Respondent is "found in" the Southern District of New York for the purposes of Section 1782. *See Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*, 785 F. Supp. 2d 434, 438 (S.D.N.Y. 2011) ("All of the respondents have offices and do business in Manhattan and thus 'reside' in the Southern District of New York.").

**B.    The Requested Discovery Is for Use in Proceedings Before Foreign or International Tribunals.**

The Application also meets the requirement of Section 1782 that the requested discovery be "for use in a proceeding in a foreign or international tribunal."  28 U.S.C. § 1782(a).  Courts describe the burden to satisfy this requirement as "*de minimis*."  *In re Veiga*, 746 F. Supp. 2d 8 (D.D.C. 2010); *see also In re Application of Sveaas*, 249 F.R.D. 96, 107 (S.D.N.Y. 2008) (describing the "standard by which a court evaluates the relevance of discoverable materials" in a Section 1782 motion as "broadly permissive").  As the Supreme Court recognized in *Intel*, the foreign proceeding need not be "pending" or even "imminent" in order to satisfy this prong; so long as it is within "reasonable contemplation," the statutory requirement is met.  542 U.S. at 259.  As set out below, the Application satisfies this requirement because the requested discovery is "for use" in the Foreign Proceedings—four of which are ongoing, and a fifth that is within reasonable contemplation.

1.    The Foreign Proceedings Qualify for Assistance Pursuant to Section 1782.

The Ongoing Proceedings are civil actions before English courts, and therefore undoubtedly qualify as "proceeding[s] before [] foreign or international tribunal[s]" under Section 1782.  *See, e.g.*, *In re Vale S.A.*, No. 20MC199JGKOTW, 2020 WL 4048669, at *4 (S.D.N.Y. July 20, 2020) (holding that proceedings pending before an English court satisfied Section 1782's statutory requirements).

Furthermore, the Burgis Proceeding is within "reasonable contemplation" as there is "some objective indicium that the action is being contemplated."  *Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 123-24 (2d Cir. 2015).  Courts in this Circuit have found such indicia to be present where an applicant submitted "liability letters" to the contemplated defendant, *In re Kiobel*, No. 16 CIV. 7992 (AKH), 2017 WL 354183, *3 (S.D.N.Y. Jan. 24, 2017),

*reversed on other grounds sub nom. Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895

F.3d 238 (2d Cir. 2018), where an applicant "articulate[d] a theory on which it intend[s] to litigate,"

*In re Hornbeam Corp.*, 722 F. App'x 7, 10 (2d Cir. 2018), and where an applicant had already

"brought two related actions" in the same forum, *id.* at 9.

All of these factors are present here. ENRC has already initiated multiple proceedings in

the English High Court of London against individuals it alleges misappropriated and unlawfully

obtained ERNC Confidential and Privileged Information, clearly demonstrating that ENRC is

prepared to bring such claims against others. Shanmuganathan Decl. ¶ 5. On May 8 and 27, 2020,

Taylor Wessing LLP sent letters to Mr. Burgis informing him there is reason to believe he was

planning to publish the same confidential information, and advising him that doing so will expose

him to liability. *Id*. Exs. 19–20. Liability will be premised on the tort of breach of confidence,

which is plainly applicable to the publication of confidential information. *Id*. ¶¶ 23–26; *see also*

*supra* pp. 7–9. Accordingly, because the Burgis Proceeding is plainly "more than just a twinkle

in counsel's eye," it meets the standard for a foreign proceeding under Section 1782. *KPMG*, 798

F.3d at 124.

### 2. The Requested Discovery is For Use in the Foreign Proceeding.

The requested discovery is "for use" in the Foreign Proceedings, because it will "be used"

at "some stage" of the litigation. *Mees v. Buiter*, 793 F.3d 291, 301 (2d Cir. 2015). To satisfy this

aspect of Section 1782's "for use" requirement, the discovery need only "be employed with some

advantage or serve some use in the proceeding." *Id*. at 299. The "focus" of this requirement,

therefore, is "on the practical ability of an applicant to place a beneficial document—or the

information it contains—before a foreign tribunal." *In re Accent Delight*, 869 F.3d at 131.

As detailed in the accompanying declaration from U.K. counsel, ENRC will have ample

opportunity to use the requested discovery to prepare witnesses, draft questions, and present its

case in each of them.  Shanmuganathan Decl. ¶ 32.  Accordingly, this Application satisfies the "for use" prong.

## C.    As Plaintiff in the Foreign Proceedings, ENRC Is an "Interested Person."

ENRC qualifies as an "interested person" because it will be the plaintiff in the Burgis Proceeding and is already the plaintiff in the Ongoing Proceedings.  *See Intel*, 542 U.S. at 256 ("No doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782 . . . ."); *accord Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*, 785 F. Supp. 2d 434, 438 (S.D.N.Y. 2011).

## II.    *Intel*'s Discretionary Factors Favor Granting the Application.

Once Section 1782's "statutory requirements are met, a district court is free to grant discovery in its discretion."  *In re Application for an Order Pursuant to 28 U.S.C. 1782 to Conduct Discovery for Use in Foreign Proceedings*, 773 F.3d 456, 460 (2d Cir. 2014) (quoting *Schmitz v. Bernstein Liebhard & Lifshitz LLP*, 376 F.3d 79, 83 (2d. Cir 2004)).  To guide district courts in the exercise of this discretion, the Supreme Court in *Intel* laid out four non-exclusive factors that may be considered:

> (1)    whether "the person from whom discovery is sought is a participant in the foreign proceeding," in which event "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad";

> (2)    "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance";

> (3)    "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and

> (4)    whether the request is "unduly intrusive or burdensome."

*Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238 (2d Cir. 2018) (quoting *Intel*, 542 U.S. at 264-65). Here, all four *Intel* factors counsel strongly in favor of granting the requested discovery.

### A. Respondent Is Not a Participant in the Foreign Proceedings.

The Application satisfies the first *Intel* factor because HarperCollins is not a present or contemplated "participant in the foreign proceedings," and thus is "outside the foreign tribunal's jurisdictional reach." *Intel*, 542 U.S. at 244. Respondent is not a party to the Ongoing Proceedings and will not be a party to the contemplated Burgis Proceeding. Shanmuganathan Decl. ¶ 27.

ENRC has reserved its rights against Respondent's U.K-based affiliate, HarperCollins Publishers Ltd. *Id.* ¶ 27. This reservation of rights has no bearing on the first *Intel* factor. The Second Circuit recently confirmed that Section 1782 discovery is appropriate against the U.S.-based affiliate of a foreign litigant so long as the affiliate "is not a party to any of the foreign proceedings." *In re del Valle Ruiz,* 939 F.3d 520, 533–34 (2d Cir. 2019). This is consistent with the weight of authority among courts in this District and elsewhere. *See, e.g., In re Top Matrix Holdings Ltd.*, No. 18 MISC. 465 (ER), 2020 WL 248716, at *5 (S.D.N.Y. Jan. 16, 2020) ("Notwithstanding the likelihood that Credit Suisse also has the requested information, Credit Suisse USA and Dougan have separate legal personalities, and neither is within the jurisdiction of the Swiss courts."); *cf. In re Application for an Order for Judicial Assistance in a Foreign Proceeding in the Labor Court of Brazil*, 466 F. Supp. 2d 1020, 1031 (N.D. Ill. 2006) ("McDonald's is not a party in the Labor Court. Its wholly-owned subsidiary, McCal, is the party.").

Accordingly, because Respondent is not, and will not be, a participant in any of the Foreign Proceedings, the first *Intel* factor favors granting the Application.

**B.**     **English Courts Are Receptive to the Requested Discovery.**

The Application is also favored by the second *Intel* factor, which "take[s] into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 244. In examining this factor, the Second Circuit has made clear "that an extensive examination of foreign law regarding the existence and extent of discovery in the forum country is [not] desirable," and has therefore held that "a district court's inquiry into the discoverability of requested materials should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782." *See In re Republic of Kazakhstan*, 110 F. Supp. 3d 512, 517 (S.D.N.Y. 2015) (quoting *Application of Euromepa, S.A.*, 51 F.3d 1095, 1099-100 (2d Cir. 1995)); *see also In re Mangouras*, No. 17-MC-172, 2017 WL 4990655, at *7 (S.D.N.Y. Oct. 30, 2017) ("Absent 'a forum country's judicial, executive or legislative declarations that specifically address the use of evidence gathered under foreign procedures,' a district court should lean toward disclosure" (quoting *Euromepa*, 51 F.3d at 1100).)

Courts in this District have found that English courts are receptive to the assistance of U.S. courts pursuant to Section 1782. *See, e.g.*, *In re Application of Shervin Pishevar for an Order to take Discovery for use in Foreign Proceedings Pursuant to 28 U.S.C. § 1782*, 439 F. Supp. 3d 290, 303–04 (S.D.N.Y. 2020). And numerous English courts have declared their willingness to accept evidence obtained through Section 1782. Shanmuganathan Decl. ¶¶ 33–35. Absent any indication, much less "authoritative proof," that an English court would reject the requested discovery, this factor weighs in favor of granting the Application.

## C. The Application Does Not Circumvent Affirmative Proof-Gathering Restrictions.

The Application does not "conceal[] an attempt to circumvent foreign proof-gathering limits or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 244-45. This factor concerns whether granting an application would circumvent "proof-gathering restrictions," that is, "rules akin to privileges that prohibit the acquisition or use of certain materials." *Mees*, 793 F.3d at 303 n.20. Absent the existence of such an affirmative restriction, "a § 1782 application should not be rejected on the ground that the discovery would not be available in the foreign proceedings." *Id.*; *see also id.* ("That a country does not enable broad discovery within a litigation does not mean that it has a policy that restricts parties from obtaining evidence through other lawful means."). Here, discovery of HarperCollins is in the interests of justice and thus would not circumvent any English laws, policies, or proof-gathering restrictions. Shanmuganathan Decl. ¶ 36.

## D. The Application Is Narrowly Tailored to Avoid Unnecessary Burdens in Accordance with the Federal Rules of Civil Procedure.

Finally, the requested discovery would not be "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. Courts in the Second Circuit assess this factor "by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure." *Mees*, 793 F.3d at 302. Accordingly, "the Court must balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it." *Kleimar*, 220 F. Supp. 3d at 522 (quoting *Anwar v. Fairfield Greenwich Ltd.*, 297 F.R.D. 223, 226 (S.D.N.Y. 2013)). "[I]nconvenience alone will not justify an order to quash a subpoena that seeks potentially relevant testimony." *Id.* (quoting *Anwar*, 297 F.R.D. at 226).

Here, the discovery requests are narrowly tailored, temporally limited, and directly relevant to the Foreign Proceedings. Specifically, ENRC's requests are limited to a time period beginning

January 1, 2019, when Mr. Burgis claims he began working on the Book. Shanmuganathan Decl. ¶ 11. The requests are also tailored to target only information used in publication of the Book, certain individuals and events with known connections to the breaches of confidentiality that gave rise to the Foreign Proceedings, and Mr. Burgis's compensation in connection with the Book.

As discussed above, documents and testimony responsive to these requests are directly relevant to the Foreign Proceedings. *See supra* pp. 9–10. In the Ongoing Proceedings, ENRC could use the requested discovery to demonstrate that the Book contains information derived from the defendants' breaches of confidentiality, thereby proving the full extent of the alleged tortious conduct and its damages. *Id*. In the Burgis Proceeding, ENRC can use the requested discovery to show that Mr. Burgis relied on confidential material in connection with the Book, and knew of its confidential nature before deciding to publish it. *Id*.

**CONCLUSION**

For the foregoing reasons, ENRC respectfully requests that this Court issue an Order

1.      Approving the Application for discovery, and

2.      Granting permission for ENRC to issue the subpoena in substantially the same form

as it appears attached as Exhibit A to the Declaration of Duane L. Loft.


Dated: September 2, 2020                                    Respectfully submitted,

                                                           */s/ Duane L. Loft*
                                                           Duane L. Loft
                                                           Mark W. Kelley
                                                           Joseph Aronsohn
                                                           BOIES SCHILLER FLEXNER LLP
                                                           55 Hudson Yards
                                                           New York, NY 10001
                                                           (t) +1 212 446 2300
                                                           (f) +1 212 446 2380

                                                           *Attorneys for Applicant Eurasian Natural
                                                           Resources Corporation Ltd.*