# Exhibit 19

# TaylorWessing

To: Tom Burgis

**PRIVATE & CONFIDENTIAL**
**NOT FOR PUBLICATION**

**BY EMAIL ONLY:** tom.burgis@ft.com

Taylor Wessing LLP
5 New Street Square
London EC4A 3TW

Tel +44 (0)20 7300 7000
Fax +44 (0)20 7300 7100
DX 41 London
www.taylorwessing.com

Date
8 May 2020

Our reference
EUR138.U4

Your reference

Dear Sirs

**Our client: Eurasian Natural Resources Corporation Limited ("ENRC")**

We represent ENRC.

We refer to your recent correspondence with our client's representatives whereby you provided a 33 page document entitled *"ENRC fact-checking (2).pdf"* containing a considerable amount of information about ENRC and related parties (the **"Document"**). You claim to be writing a book about our client and its founders (the **"Book"**) and have requested that the information contained in the Document be *"fact-checked"* for accuracy. You originally provided a deadline of 1 May by which to respond, which was an unrealistic time period given the length of the Document. Nevertheless, the Document has now been considered.

In summary, the accuracy of the information in the Document is disputed. Moreover, the Document causes grave concern because the information it contains is also confidential. This is obviously apparent to our client from a comparison between the information contained in the Document and information which is the subject of English High Court proceedings being brought by our client against various defendants for breach of confidence. Put simply, the information in the Document is the same or similar to the confidential information in these legal proceedings, which is no doubt due to it having emanated from the same source(s), i.e. individuals who have previously obtained information belonging to our client in breach of confidence.

To the extent that you are not already aware of this, and we shall explain why it is highly likely that you are already aware that the information in the Document is confidential, this letter puts you on notice of this, binding you with these same obligations, and explains why any further publication, disclosure, communication or misuse of the confidential information which you clearly have in your

Taylor Wessing LLP is a limited liability partnership registered in England and Wales, registered number OC322935. A list of members is available for inspection at our registered office: 5 New Street Square, London EC4A 3TW.

Any reference to a partner in relation to Taylor Wessing LLP is to a member of Taylor Wessing LLP or an employee or consultant of Taylor Wessing LLP with equivalent standing as the members of Taylor Wessing LLP. Taylor Wessing LLP is authorised and regulated by the Solicitors Regulation Authority.

Taylor Wessing is the trading name used by a number of distinct legal entities. Further information can be found on our regulatory page at www.taylorwessing.com

UKMATTERS:57236723.1

possession would expose you (and any other parties working with you or assisting you with the same) to liability. Our client reserves its right to bring proceedings against you in any jurisdiction.

To the extent that you have not done so already, we urge you to inform Harper Collins (to whom we shall also be writing) and to seek urgent legal advice.

**Existing proceedings**

After it became clear to our client that various individuals had obtained and misappropriated information belonging to it in breach of confidence, proceedings were issued in the English High Court against London based "intermediary" Mark Hollingsworth (BL-2019-001955) and Ake-Jean Qajygeldin (BL-2019-001377) (the **"Proceedings"**). We enclose a copy of the current Particulars of Claim in the Proceedings.

As set out in these proceedings, confidential information was obtained by the defendants from a variety of different sources/individuals who were bound by obligations of confidence which they owed to our client. By way of example, it is alleged that:

1. Robert Trevelyan (a computer forensics expert who was engaged by our client to undertake various IT, forensic and data collection projects, reviews, tests and audits) unlawfully copied and retained a very large about of information from our client's IT systems and servers and provided information to Mr Hollingsworth, Mr Qajygeldin and others in return for payment;

2. senior sources within the Serious Fraud Office (**"SFO"**) leaked confidential information about the SFO investigation into our client and related individuals to Mr Hollingsworth (who, our client understands, you have previously been in contact with), and as a result, the SFO has suspended a serving senior investigator for suspected misconduct and has referred the matter to the Metropolitan Police; and

3. other individuals, such as Alex Yearsley (who, our client understands, you have previously been in contact with), and Glenn Simpson and Phillip van Niekerk (both of whom are subject to an application under Section 1782 of the United States Code to provide disclosure) provided and/or received our client's confidential information.

ENRC also has separate ongoing proceedings before the Commercial Court against Dechert LLP and Neil Gerrard, the partner at Dechert who oversaw an internal investigation from 2011 to early 2013 (Claim Number: CL-2017-000583). Mr Gerrard committed a number of deliberate breaches of duty involving the leak of ENRC's confidential and privileged material to the press. Mr Gerrard similarly engaged in numerous unauthorised and unlawful disclosures to the SFO, and even provided confidential and privileged material to the SFO in a brown 'jiffy bag' after his retainer had been terminated. Mr Gerrard's leaks and unauthorised disclosures also feature prominently in ENRC's further proceedings against the Director of the Serious Fraud Office (Claim Number: CL-2019-000644). The particulars of claim relating to these other proceedings are also enclosed.

Not only did these individuals leak, trade and exchange our client's confidential information between themselves, but they also provided information covertly to others.

The information obtained and misappropriated from ENRC, and then disclosed, included internal emails and communications between ENRC officers, directors, employees and agents, personal emails, external emails between ENRC and third parties (banks, advisors, customers, suppliers, partners and contractors) and electronic documents containing information about financial and business affairs and activities (such as financial statements, audits, memos, due diligence reports, board minutes, legal documents). Thus this information had (and has) the necessary quality of

confidence because it was inherently confidential to our client, was stored securely on our client's premises, was not public or publicly available, was obviously confidential or marked confidential and should not have been retained or covertly acquired in the first place. Information about our client obtained from the SFO, Mr Gerrard and others was also confidential and/or privileged. This was because of the SFO's duty as a public authority to investigate matters and keep them confidential. Mr Gerrard, as a retained, professional advisor (as well as any others in his team) was also under a contractual, common law and fiduciary obligation to keep confidential and legally privileged information about ENRC (his former client) confidential. All the individuals involved were aware that what they were doing had to be kept secret, they acquired information and liaised and exchanged it in a secret manner, they protected their own sources or their ultimate clients, the money paid for information was a reflection of its value given its inaccessibility and source and they were aware that the subject matters were confidential and highly sensitive.

Therefore, all of this information had the necessary quality of confidence and was imparted in circumstances importing an obligation of confidence upon those who obtained, misappropriated and received it. Each party involved remains under a duty of confidence towards our client in respect of the confidential information and were not entitled to receive, access, disclose or misuse it, but did so in breach of confidence.

**Confidential information contained in the Document**

The information contained in the Document bears a remarkable similarity to the information subject to the proceedings described above.

Therefore, it seems highly likely to our client that you are working from or have in your possession the same confidential information acquired by the defendants in the Proceedings. This must be because you obtained this confidential information from the defendants or from individuals who acquired it from the defendants, in breach of confidence.

It is very unlikely that you have sourced all the confidential information you have yourself without any of it having come from sources who obtained, misappropriated or received it in breach of confidence. Even if you have sourced it yourself, the information you have in your possession is clearly confidential and you are now on notice that the information you have is confidential and its further disclosure, misuse and/or publication will amount to a breach of confidence.

**Breach of confidence**

As already stated, it is highly likely, given the Proceedings, all the media coverage about ENRC, the number of journalists to whom information has been leaked and the research you have no doubt undertaken in preparing and writing the Book that you are aware of all the above already. If not, this letter puts you on notice. In either event, you are now bound by a duty of confidence and cannot further misuse, disclose, publish or communicate the confidential information without being exposed to various legal claims.

**Next Steps**

As mentioned above, Mark Hollingsworth, Ake-Jean Qajygeldin, Neil Gerrard, other representatives or employees of Dechert law firm, Glen Simpson, and/or any of their advisers, representatives or investigators have obtained and/or disseminated confidential information belonging to our client. Our client is seeking legal recourse from all involved parties including for breach of trust, breach of contract and illegally obtaining private, confidential and legally privileged information belonging to our client. The contents of the Document suggest that some of this confidential information is likely to be included in the Book. If you received confidential information belonging to our client from any of these sources our client requests that you immediately disclose

4

the circumstances under which you obtained that confidential information, including who from, when, how and the method of obtaining it.

Given the contents of the Document, our client assumes that some or all of the parties mentioned above are aiming to use the Book to further publicly disseminate confidential and/or legally privileged information about our client with the specific intent of causing damage to our client.

In light of this, we trust that you will not include in the Book any of the confidential information relating to our client that is listed in the Document (or otherwise).  If you still intend to include any confidential information relating to our client in the Book, please specify exactly which information you intend to use.

Please respond to the questions above **by no later than 4pm on 12 May 2020**.

In the meantime, and pending your response, all of our client's rights and remedies in all jurisdictions are and shall remain expressly reserved.

Yours faithfully

*Taylor Wessing LLP*

**Taylor Wessing LLP**

**Cc. Taylor Wessing New York**