# Exhibit 21

TaylorWessing

The Financial Times
Bracken House
1 Friday St
London
EC4M 9BT

Taylor Wessing LLP
5 New Street Square
London EC4A 3TW

Tel +44 (0)20 7300 7000
Fax +44 (0)20 7300 7100
DX 41 London
www.taylorwessing.com

**PRIVATE & CONFIDENTIAL**
**NOT FOR PUBLICATION**
**FOR THE ATTENTION OF THE LEGAL DEPARTMENT**

**BY EMAIL ONLY:**
tim.braton@ft.com and nigel.hanson@ft.com
cc: roula.khalaf@ft.com and tom.burgis@ft.com

| Date | Our reference | Your reference |
|------|--------------|----------------|
| 27 August 2020 | EUR138.U4 | |

Dear Sirs

**Our client: Eurasian Natural Resources Corporation Limited ("ENRC")**

We represent ENRC. We received no response from you to our letter of 8 May 2020 in relation to our enquiries about your journalist, Tom Burgis. We have now received the enclosed email of 21 August (the **"Email"**) from Mr Burgis setting out a long list of 20 unsupported statements, accompanied with various questions (the **"Statements"**) and without any evidential documentation, requesting that any comment for publication be sent by close of business on 27 August.

In the Email, Mr Burgis makes it clear that he is preparing news reports for publication in the Financial Times about the deaths of Jim Gorman, James Bethel, Gerrit Strydom and Andre Bekker (who was not an employee of our client). Ahead of publication, he states: *"Are any of the following statements incorrect? If so, kindly provide any necessary corrections or clarifications, with supporting documents as required"*.

Both we and our client are extremely concerned about your proposed news reports for a number of reasons. Firstly, Mr Burgis makes very serious defamatory allegations unsupported by any evidence. Secondly, none of this is news and all of the events are historic and were covered by the media at the time they occurred. Thirdly, the way in which Mr Burgis has formulated his questions reveals his ulterior motives.

**Defamation**

When taken as a whole, the Statements convey a natural ordinary meaning that our client, along with its founders and Victor Hanna, were/are involved in corrupt and organised criminal activities in Africa which resulted in the suspicious deaths of Messrs Gorman, Bethel, Strydom and Bekker for which they are responsible, or that there are strong grounds to suspect the same (the **"Allegation"**).

Taylor Wessing LLP is a limited liability partnership registered in England and Wales, registered number OC322935. A list of members is available for inspection at our registered office: 5 New Street Square, London EC4A 3TW.

Any reference to a partner in relation to Taylor Wessing LLP is to a member of Taylor Wessing LLP or an employee or consultant of Taylor Wessing LLP with equivalent standing as the members of Taylor Wessing LLP. Taylor Wessing LLP is authorised and regulated by the Solicitors Regulation Authority.

Taylor Wessing is the trading name used by a number of distinct legal entities.  Further information can be found on our regulatory page at www.taylorwessing.com

UKMATTERS:58432582.1

2

The Allegation is false and is vehemently denied by our client. The meaning of the Allegation is highly defamatory. Publication would obviously meet the serious harm threshold, regardless of the Chase Level involved, entitling our client to bring a claim for defamation against the Financial Times and Mr Burgis for considerable general, as well as potentially special, damages. As you know, this remains the position in relation to allegations made to you or Mr Burgis by third parties which you repeat/republish and, as we address further below, our client suspects that the Financial Times is being used as part of a black PR campaign being run behind the scenes by various malicious third parties against whom our client is currently litigating.

**No defence**

The Financial Times will be unable to justify the Allegation as substantially true and we note that Mr Burgis has provided no evidence in support of the Email. On the contrary, Mr Burgis states *"Are any of the following statements incorrect? If so, kindly provide any necessary corrections or clarifications, with supporting documents as required"* (our emphasis added) and appears to expect our client to provide him with the evidence. Our client is under no obligation to provide documentation to Mr Burgis or the Financial Times in order to presumably assist with building a potential defence under sections 2 or 4 of the Defamation Act (2013). This journalistic burden rests solely upon you, as does the burden of proof.

If you or Mr Burgis are to seek to rely on a defence under section 4 after publication of your proposed news reports, you must *"conduct such enquiries and checks as it is reasonable to expect of the particular defendant in all the circumstances of the case. Among the circumstances relevant to the question of what enquiries and checks are needed, the subject-matter needs consideration, as do the particular words used, the range of meanings the defendant ought reasonably to have considered they might convey, and the particular role of the defendant in question"*, see Warby J at paragraph 241 of *Economou v De Freitas [2016]*, as recently endorsed by the Supreme Court in *Serafin v Malkiewicz & Others [2020] UKSC 23*. With regards to section 4(1) (b), whether or not there was a reasonable belief that publication was in the public interest requires consideration of all the circumstances of the case and some analysis as to the conduct undertaken pre-publication. In this case, the following factors will weigh heavily against any reliance by the Financial Times on a section 4 defence post publication.

(1) Our client has been provided with no more than a list of opaque statements, inaccuracies and questions without any documentation or evidence in support. Mr Burgis asks for confirmation on accuracy or, if such accuracy is disputed, for supporting documentation in response. We have already explained why that approach is wholly unsatisfactory.

(2) The nature of the Allegation is very serious indeed.

(3) There is no urgency to this story. Mr Gorman sadly passed approximately 8 years ago. The Centres for Disease Control and Prevention confirmed over 5 years ago that Mr Bethel and Mr Strydom died of falciparum malaria and Mr Burgis had not provided any information to the contrary. These tragic events are very much in the past. Whether these are matters which are *"on a matter of public interest"* pursuant to section 4(1) (a) is very much in dispute.

(4) Mr Burgis has also inaccurately quoted from, and/or inaccurately purported to summarise, the Amended Defence of Dechert LLP and David Neil Gerrard in the proceedings being brought against them by our client (claim number CL-2017-000583), meaning that any repetition of the allegations in paragraph 3 of the Email will not be covered by statutory qualified privilege.

3

(5) Mr Burgis clearly has an axe to grind against our client ahead of the imminent release his book *"Kleptopia: How Dirty Money Is Conquering the World"* (the **"Book"**), in relation to which Mr Burgis is trying to generate publicity to boost sales.

(6) Mr Burgis is also clearly working for other parties involved behind the scenes who are involved in a black PR campaign against our client. We infer this as a result of Mr Burgis' enquiries regarding publication of the Book, in which context Mr Burgis has obtained information from these and/or other third parties in breach of confidence, some of whom are already subject to litigation. To the extent that the Financial Times or Mr Burgis have received information from the sources Neil Gerrard of Dechert LLP, Dechert LLP (from whose Amended Defence Mr Burgis has misquoted), Milltown Partners, Mark Hollingsworth and/or individuals at the SFO acting improperly, and the Financial Times still intends to rely on those sources and/or the information they have provided in stories about ENRC, please be aware that these sources should not be relied upon as they are neither credible or independent.

(7) Proceeding in this fashion pre-publication is not the way in which a reputable, highly experienced and sophisticated national publisher such as the Financial Times should or is expected to proceed.

**Next steps**

No evidence has been provided to justify the Allegation as true.

For all the reasons above and taking into account all the circumstances of the case, you have not done enough to raise a credible section 4 defence having failed to satisfy both sections 4(1) (a) and (b) as the Allegation is not a statement (nor forms part of a statement) on a matter of public interest Nor can you have a reasonable belief that publishing the Allegation is in the public interest. The Financial Times is being used by other parties behind the scenes and ahead of publication of the Book.

Therefore, if you publish the Allegations, or any similar allegations, you will be exposed to a defamation claim and our client will continue to take steps to protect its reputation.

We reiterate that there is no urgency to this story, which deals with events already reported upon in the public domain many years ago, and that the only time pressure to this appears to be the publication of, and generating publicity for, the Book.

If you have any documentation in your possession supporting the Allegation, which our client strongly doubts, please provide it for consideration together with a reasonable period of time (not less than 48 hours) to respond. Likewise, if you have other allegations to put to our client, please provide them and any supporting evidence allowing our client no less than 48 hours to consider and respond.  **Otherwise, please confirm by no later than 1pm on Friday 28th August that you no longer intend to publish the Allegation or any allegation with a similar meaning.**

In the meantime, all of our client's rights and remedies are and shall remain expressly reserved.

Yours faithfully

*Taylor Wessing LLP*

**Taylor Wessing LLP**