

1251 Sixth Ave
21st Floor
New York, NY 10020

**Laura R. Handman**

Tel. 212.489.8230
Fax 212.489.8340
laurahandman@dwt.com

October 16, 2020

**Via ECF**
The Honorable Edgardo Ramos
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007

**MEMO ENDORSED** at page 4.

Re:   *In re Ex Parte Application of Eurasian Natural Resources Corporation Limited Pursuant to 28 U.S.C. § 1782 for Leave to Take Discovery for Use in Foreign Proceedings*, No. 1:20-mc-00312-ER (S.D.N.Y. 2020)

Dear Judge Ramos:

    We represent Respondent HarperCollins Publishers LLC ("HarperCollins US") in the above-referenced action. Pursuant to Local Rule 37.2 and Rule 2(A)(i) of Your Honor's Individual Practices in Civil Cases, as well as the parties' agreement, we write to request an informal pre-motion conference with the Court to briefly set forth the legal and factual basis for the anticipated motion of HarperCollins US to quash the subpoena served on it by Petitioner Eurasian Natural Resources Corporation Limited ("ENRC") on September 19, 2020 (the "Subpoena").

## BACKGROUND

    On May 16, 2018, Tom Burgis, an award-winning investigative journalist for *The Financial Times* based in London, contracted with HarperCollins UK to write and publish a book called *Kleptopia*, which explores modern-day corporate corruption (hereinafter, the "Book"). Mr. Burgis worked closely with the editorial and legal team at HarperCollins UK to fact-check and finalize the Book. While Mr. Burgis also contracted with HarperCollins US (HarperCollins UK's sister company) to publish the same Book in the United States, HarperCollins US had minimal involvement in drafting and reviewing the Book, as HarperCollins UK was the lead publisher.

    Because the Book was going to include discussion of ENRC, Mr. Burgis reached out to ENRC for comment prior to publication, providing them with a 33-page document containing the precise information about the company that he intended to include in the Book. At that time, ENRC had already initiated four lawsuits in the UK against various individuals and entities whom it claimed had wrongfully acquired and/or used ENRC's confidential information. ENRC brought these lawsuits in an apparent attempt to silence critics and media outlets, which had published articles covering the UK Serious Fraud Office's investigations into ENRC's alleged corruption, bribery, and other wrongdoing. Much of Mr. Burgis's 33-page document was based on these public news articles and court filings from the four UK lawsuits. *See* Shanmuganathan Decl., Exs. 2-12 (ECF Nos. 4-2 to 4-12).

    ENRC initiated the above-referenced action the day before the Book's publication in the UK, seeking discovery from HarperCollins US allegedly to aid its UK-based litigations and in contemplation of bringing an additional case against Mr. Burgis—but more likely (given the timing) to intimidate the publishers into halting publication. In its application, ENRC admitted

Anchorage  New York   Seattle
Bellevue   Portland   Shanghai
Los Angeles San Francisco Washington, D.C.

www.dwt.com

Hon. Eduardo Ramos
October 16, 2020
Page 2

that it had "not seen or read the contents of the Book," but claimed it suspected Mr. Burgis possessed the same confidential information that is the subject of its UK litigations, based on the 33-page document. ECF No. 2 at 7. Notably, however, ENRC declined to specifically identify which information from that document was allegedly confidential. The Court granted ENRC's application *ex parte* on September 9, 2020, allowing it to serve the Subpoena at issue.

## ARGUMENT

The Court should quash this Subpoena for at least five reasons: (1) the Subpoena's primary purpose is harassment; (2) it improperly seeks newsgathering materials that are completely protected from disclosure by the reporter's privilege under New York, federal, and UK law; (3) it improperly seeks documents that are subject to the attorney-client privilege; (4) it improperly seeks documents from a New York entity that are almost entirely held by its UK-based corporate affiliate, for use in UK-based litigations; and (5) the requested discovery would not support a valid legal claim under US or UK law.

**1. The Subpoena's Primary Purpose is Harassment.**

"[I]f the district court determines that a party's discovery application under section 1782 is made in bad faith, for the purpose of harassment, or unreasonably seeks cumulative or irrelevant materials, the court is free to deny the application in toto, just as it can if discovery was sought in bad faith in domestic litigation." *In re Postalis*, No. 18-MC-497 (JGK), 2018 WL 6725406, at *5 (S.D.N.Y. Dec. 20, 2018). It is clear that ENRC knows it has no viable claim against Mr. Burgis because it has ***never*** specified exactly which portions of Mr. Burgis's 33-page document—nor the Book, now publicly available—include ENRC's allegedly confidential information; and it is aware that much of the information therein is publicly available. The only plausible explanation for the instant proceeding is ENRC's relentless harassment campaign against its critics in the media—for which reason alone the Court should quash the Subpoena.

**2. ENRC Improperly Seeks Newsgathering Materials That Are Protected from Disclosure by the Reporter's Privilege Under New York, Federal, and UK Law.**

Under the New York Shield Law, confidential newsgathering materials or sources are absolutely privileged from disclosure; and unpublished non-confidential materials are subject to a qualified privilege, which is only overcome in exceedingly rare cases upon a "clear and specific showing" that the information sought: "(i) is highly material and relevant; (ii) is critical or necessary to the maintenance of a party's claim, defense or proof of an issue material thereto; and (iii) is not obtainable from any alternative source." N.Y. Civ. Rights Law § 79-h(b-c). Federal common law and UK law also recognize a qualified privilege for journalistic information. *See In re Petroleum Prod. Antitrust Litig.*, 680 F.2d 5, 7 (2d Cir. 1982); *see also Goodwin v. UK*, App. No. 17488/90, 22 Eur. Ct. H.R. 123 [39] (Mar. 27, 1996). In fact, in a decision cited by ENRC, a California court noted that "the [federal] journalist's privilege may well apply to the discovery that ENRC seeks" in the U.S., involving the media. *See In re Eurasian Nat. Res. Corp., Ltd.*, No. 18-MC-80041-LB, 2018 WL 1557167, at *3 (N.D. Cal. Mar. 30, 2018).

In writing the Book, Mr. Burgis worked with many sources who were not comfortable publicly identifying themselves in print, fearing that there could be consequences from the powerful companies and individuals mentioned in the Book. Accordingly, much of the material that ENRC seeks—such as the drafts of the Book and fact-checking correspondence between Mr. Burgis and his editors—contains the identities of, or information that could reveal the identities of, these unnamed sources, and information told to Mr. Burgis in confidence. As a result, these documents are absolutely privileged from disclosure under the Shield Law. Even if there exist any

Hon. Eduardo Ramos
October 16, 2020
Page 3

documents responsive to the Subpoena that do not contain confidential information, these documents are still protected from disclosure because ENRC cannot satisfy the high standard required to overcome the Shield Law's qualified privilege for unpublished newsgathering materials.

For example, ENRC cannot maintain that the information sought is not attainable from other sources where it has commenced four other litigations in the UK and has apparently even had the opportunity to collect documents and discovery from the very individuals whom ENRC alleges provided Mr. Burgis with its confidential information. *See* Shanmuganathan Decl., Exs. 14-16 (ECF Nos. 4-14 to 4-16); *see also In re Application of Shervin Pishevar*, 439 F. Supp. 3d 290, 306 (S.D.N.Y. 2020) (denying 1782 application under the federal reporter's privilege, where petitioner "failed to make a clear and specific showing that the identity of the Confidential Source is not obtainable from other available sources," and later granting same only after petitioner made such a showing).

**3. ENRC Improperly Seeks Documents That Are Subject to the Attorney-Client Privilege.**

Communications between counsel and a third-party author in the course of pre-publication legal review of editorial content are protected by the attorney-client privilege. *See Berisha v. Lawson*, No. 19-10315, 2020 WL 5228847, at **10-13 (11th Cir. Sept. 2, 2020) (holding that under New York law, an author's communications with his publisher's attorney who conducted pre-publication legal review of the book's contents were protected by the attorney-client privilege). Any communications involving legal advice provided in the course of the Book's pre-publication review would be absolutely protected from disclosure under the attorney-client privilege.

**4. ENRC Subpoenaed a New-York Based Company for Documents That Are Almost Entirely Held by Its UK-Based Corporate Affiliate, for Use in UK Litigations.**

ENRC oddly seeks documents from HarperCollins US instead of HarperCollins UK, despite the former's very limited involvement in the review of the Book. ENRC should not be permitted to do an end run around the UK discovery procedures by seeking HarperCollins UK's documents from HarperCollins US. "[C]orporations . . . are entitled to have their separate corporate identities respected" for purposes of Section 1782 discovery. *In re Effecten-Spiegel AG*, No. 18MC93 (DLC), 2018 WL 3812444, at *2 (S.D.N.Y. Aug. 10, 2018) (denying petitioner's Section 1782 application for documents from two New York financial entities where their foreign affiliate in Ireland was the entity that actually conducted the transaction at issue and the New York entities had limited, if any, involvement). To the extent that ENRC seeks discovery from HarperCollins UK by way of this Subpoena to aid in a potential UK litigation against the publisher, the Court should not allow such a use under 1782. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004) (holding that, in ruling on 1782 applications, courts should consider whether "the person from whom discovery is sought is a participant in the foreign proceeding").

**5. The Requested Discovery Would Not Support a Valid Legal Claim Under US or UK Law.**

Now that the Book is public, ENRC can ascertain for itself that it does not contain or "misuse" any of ENRC's confidential information. Because "misuse" of confidential information is an element of a "breach of confidence" action under UK law, ENRC cannot establish a valid claim against Mr. Burgis, regardless of any of the requested discovery. Additionally, such a claim would violate clearly established First Amendment doctrine. *See Bartnicki v. Vopper*, 532 U.S. 514, 535 (2001) (holding that the First Amendment bars the imposition of civil liability against a journalist for truthful speech about a matter of public concern, even if the third party who provided information to the journalist obtained that information unlawfully).

Hon. Eduardo Ramos
October 16, 2020
Page 4

                                Respectfully submitted,

                                /s/ *Laura R. Handman*

---

Respondent's request for a premotion conference is granted. The parties are directed to appear telephonically before the Court on **October 27, 2020 at 11:30 a.m.** The parties will use the following conference call information: (877) 411-9748; Access Code: 3029857#. Petitioner is directed to respond to the arguments in Respondent's letter, Doc. 16, by Wednesday, October 21, 2020. The Clerk is respectfully directed to terminate the letter motion, Doc. 16.

It is SO ORDERED.

                                _____
                                Edgardo Ramos, U.S.D.J
                                Dated: 10/16/2020
                                New York, New York