UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

-------------------------------------------------------------- x

IN RE: EX PARTE APPLICATION OF
EURASIAN NATURAL RESOURCES
CORPORATION LIMITED PURSUANT TO 28
U.S.C. § 1782 FOR LEAVE TO TAKE
DISCOVERY FOR USE IN FOREIGN
PROCEEDINGS

Applicant.

:
:
:
:
:
:
:
:
:
:
:
:
:
:

Case No. 1:20-mc-00312-ER

Hon. Edgardo Ramos

ORAL ARGUMENT REQUESTED

-------------------------------------------------------------- x

## MEMORANDUM OF LAW IN SUPPORT OF MOTION OF RESPONDENT HARPERCOLLINS PUBLISHERS, LLC TO QUASH SUBPOENA OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER

Laura R. Handman
Jeremy A. Chase
Chelsea T. Kelly
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, NY 10020-1104
Tel: (212) 489-8230
Fax: (212) 489-8340
laurahandman@dwt.com
jeremychase@dwt.com
chelseakelly@dwt.com

*Attorneys for Respondent HarperCollins
Publishers, LLC*

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 2

    I.     THE BOOK AT ISSUE ................................................................................ 2

    II.    ENRC'S CAMPAIGN OF HARASSMENT TO SILENCE ITS CRITICS .......... 4

    III.   THE PROCEEDINGS BEFORE THIS COURT ................................... 7

ARGUMENT ....................................................................................................................... 9

    I.     ALL DOCUMENTS AND TESTIMONY SOUGHT BY ENRC ARE EITHER
        PROTECTED FROM DISCLOSURE BY THE REPORTER'S PRIVILEGE
        UNDER FEDERAL AND NEW YORK LAW, OR CONSTITUTE
        PROPRIETARY COMMERCIAL INFORMATION. ....................................... 10

        A.    ENRC Cannot Satisfy the High Burden of Overcoming the Federal
             Reporter's Privilege for Confidential Newsgathering Materials. ............. 11

            1.    ENRC Cannot Make a Clear and Specific Showing that
                HarperCollins US Has Any Relevant Evidence—Let Alone
                Evidence That Is Highly Material or Relevant. ........................... 13

            2.    The Information ENRC Seeks Is Not Necessary or Critical to
                the Maintenance of the Claims in Its Ongoing UK-Based
                Lawsuits Nor to Any Potential Lawsuit Against Mr. Burgis. ....... 14

            3.    The Information ENRC Seeks Is Obtainable from Other
                 Sources. .......................................................................................... 16

        B.    ENRC Cannot Satisfy the Burden of Overcoming the Privilege for Non-
             Confidential Newsgathering Materials. ................................................... 19

    II.    SOME OF THE DISCOVERY SOUGHT BY ENRC IS PROTECTED BY THE
        ATTORNEY-CLIENT PRIVILEGE. .................................................................. 21

    III.   THE AMENDED SUBPOENA VIOLATES THE PRINCIPLES OF SECTION
        1782 DISCOVERY BECAUSE IT IS HARASSING, OVERLY BURDENSOME
        AND INTRUSIVE, AND DESIGNED TO CIRCUMVENT FOREIGN PROOF-
        GATHERING LIMITS. ...................................................................................... 22

CONCLUSION .................................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Baker v. F&F Inv.*,
    470 F.2d 778 (2d Cir. 1972)...................................................................................................11

*Baker v. Goldman Sachs & Co.*,
    669 F.3d 105 (2d Cir. 2012)..................................................................................................14

*Bartnicki v. Vopper*,
    532 US 514 (2001)................................................................................................................23

*Berisha v. Lawson*,
    973 F.3d 1304 (11th Cir. 2020) ...........................................................................................22

*Davis v. Costa-Gavras*,
    580 F. Supp. 1082 (S.D.N.Y. 1984).....................................................................................22

*Eurasian Natural Res. Corp., Ltd. v. Simpson*,
    No. 8:19-mc-00699-PX (D. Md. Jan. 6, 2020) ....................................................................18

*Giuffre v. Maxwell*,
    221 F. Supp. 3d 472 (S.D.N.Y. 2016).......................................................................14, 16, 21

*Goldberg v. Amgen, Inc.*,
    123 F. Supp. 3d 9 (D.D.C. 2015) .........................................................................................16

*Gonzales v. Nat'l Broad. Co.*,
    194 F.3d 29 (2d Cir. 1999)............................................................................................10, 19

*In re Appl. to Quash Subpoena to National Broad. Co. (Graco)*,
    79 F.3d 346 (2d Cir. 1996).................................................................................14, 15, 16, 19

*In re Application of Shervin Pishevar*,
    439 F. Supp. 3d 290 (S.D.N.Y. 2020)..................................................................................25

*In re Application of Shervin Pishevar*,
    No: 1:19-mc-00503(JGK)(SDA) (S.D.N.Y.)........................................................................25

*In re Behar*,
    779 F. Supp. 273 (S.D.N.Y. 1991) ................................................................................14, 16

*In re McCray, Richardson, Santana, Wise, Salaam Litig.*,
    991 F. Supp. 2d 464 (S.D.N.Y. 2013)............................................................................19, 21

*In re Pan Am Corp.*,
  161 B.R. 577 (S.D.N.Y. 1993)................................................................17

*In re Petroleum Prods. Antitrust Litig.*,
  680 F.2d 5 (2d Cir. 1982).......................................................... *passim*

*In re Postalis*,
  No. 18-mc-497 (JGK), 2018 WL 6725406 (S.D.N.Y. Dec. 20, 2018)............................22, 24

*In re Tiberius Grp. AG*,
  No. 19-mc-467 (VSB), 2020 WL 1140784 (S.D.N.Y. Mar. 6, 2020) ...............................22, 24

*Intel Corp. v. Advanced Micro Devices, Inc.*,
  542 US 241 (2004)........................................................23, 24, 25

*Lebowitz v. City of N.Y.*,
  948 F. Supp. 2d 392 (S.D.N.Y. 2013)........................................................19

*Lonegan v. Hasty*,
  No. CV-04-2743 (NG)(VVP), 2008 WL 41445 (E.D.N.Y. 2008) ....................................11, 13

*Mees v. Buiter*,
  793 F.3d 291 (2d Cir. 2015)........................................................24

*Persky v. Yeshiva Univ.*,
  No. 01 CIV. 5278 (LMM), 2002 WL 31769704 (S.D.N.Y. Dec. 10, 2002) .........................12

*Pugh v. Avis Rent A Car Sys., Inc.*,
  No. M8-85, 1997 WL 669876 (S.D.N.Y. Oct. 28, 1997) .................................13, 17

*Schoolcraft v. City of N.Y.*,
  No. 10 Civ. 6005(RWS), 2014 WL 1621480 (S.D.N.Y. Apr. 22, 2014)...................19, 20, 21

*Sommer v. PMEC Assocs. & Co.*,
  No. 88 CIV. 2537 (JFK), 1991 WL 73858 (S.D.N.Y. May 1, 1991) ...............................14, 16

*Sullivan Mktg., Inc. v. Valassis Commc'ns, Inc.*,
  No. 93 CIV. 6350 (PKL), 1994 WL 177795 (S.D.N.Y. May 5, 1994) .................................21

*United States ex rel. Vuitton Et Fils, S.A. v. Karen Bags, Inc.*,
  600 F. Supp. 667 (S.D.N.Y. 1985) ........................................................13

*United States v. Marcos*,
  No. 87 CR 598, 1990 WL 74521 (S.D.N.Y. June 1, 1990) ....................................14

*von Bulow by Auersperg v. von Bulow*,
  811 F.2d 136 (2d Cir. 1987)........................................................10

*Zerilli v. Smith*,
   656 F.2d 705 (D.C. Cir. 1981) ...................................................................................17

**State Cases**

*Holmes v. Winter*,
   22 N.Y.3d 300 (2013) ..............................................................................................10, 12

*O'Neill v. Oakgrove Constr., Inc.*,
   71 N.Y.2d 521 (1988) ..................................................................................................21

**Federal Statute**

28 U.S.C. § 1782.................................................................................................... *passim*

**State Statutes**

N.Y. Civ. Rights Law § 79-h(b) ......................................................................................21

N.Y. Civ. Rights Law § 79-h(c).......................................................................................21

**Rules**

Federal Rule of Civil Procedure 26(c) ..........................................................................1, 10

Federal Rule of Civil Procedure 45 ...............................................................................1, 9

**Constitutional Provisions**

First Amendment ...................................................................................................11, 17, 23

**Other Authorities**

*Fin. Times Ltd. v. UK*,
   App. No. 821/03, 21 Eur. Ct. H.R. 533 (Nov. 24, 2009) .......................................24

*Goodwin v. UK*,
   App. No. 17488/90, 22 Eur. Ct. H.R. 123 [39] (Mar. 27, 1996)...........................24

Contempt of Court Act 1981...........................................................................................24

HarperCollins Publishers, LLC ("HarperCollins US") respectfully submits this memorandum of law in support of its motion to quash the subpoena of Eurasian Natural Resources Corporation Limited ("ENRC") under Federal Rule of Civil Procedure 45(d)(3) or, in the alternative, for a protective order under Federal Rule of Civil Procedure 26(c).

## INTRODUCTION

For years, the press and law enforcement have investigated and reported on corporate corruption at UK-based energy and mining firm, ENRC.  Over that time, ENRC has undertaken a campaign to silence all who would dare expose its misdeeds, through initiating or threatening legal action.  Because the facts in these reports are true, ENRC has not sued for defamation.  Instead, it has pursued its critics (even law enforcement) with numerous lawsuits in the United Kingdom, alleging that such reports misused ENRC's "confidential" corporate information.  HarperCollins US is now the latest target of ENRC's relentless campaign to squelch any coverage of its corruption.  The night before HarperCollins published renowned investigative journalist Tom Burgis's book *Kleptopia*, ENRC applied to this Court under 28 U.S.C. § 1782 to seek discovery from HarperCollins US to obtain the drafts of and newsgathering material related to the book.

Like the other lawsuits across the pond, ENRC's own filings in this case reveal that this action is nothing more than an intimidation tactic designed to persuade HarperCollins US and Mr. Burgis to either halt publication of the book or refrain from further coverage of ENRC.  ENRC purports to seek evidence that Mr. Burgis included its confidential information in the book, allegedly to support its UK-based lawsuits and in contemplation of a case against Mr. Burgis himself.  However, ENRC now has full access to the book and yet still has been unable to identify ***any*** specific confidential information therein that has not already been made public through court filings or press articles.  This fact is a non-starter under 28 U.S.C. § 1782—ENRC cannot be

1

permitted to conduct burdensome and invasive discovery of a publisher where it is clear from the face of publicly available documents that no wrongdoing has occurred.

But even more fundamentally, ***all*** of the documents and information ENRC seeks are either protected from disclosure by the reporter's privilege under federal and New York law, or—in the case of the information sought regarding Mr. Burgis's compensation for the book—constitute proprietary commercial information of limited, if any, relevance to the lawsuits at hand.  The federal reporter's privilege is designed for exactly this situation: to protect journalists and publishers from being forced to reveal the identities of their sources or disclose their unpublished newsgathering materials, except under specific circumstances not present here.  ENRC cannot satisfy the burden to overcome this privilege for numerous reasons, but most importantly because it has done ***nothing*** to first seek the subpoenaed documents and testimony from other sources as required by the privilege—despite having identified five such alleged sources.

HarperCollins US respectfully requests that the Court quash ENRC's subpoena to protect "the pivotal function of reporters to collect information for public dissemination," *In re Petroleum Prods. Antitrust Litig.*, 680 F.2d 5, 8 (2d Cir. 1982), and prevent ENRC from using the US courts to extend its campaign of retaliatory lawsuits designed to chill speech on matters of public concern.

## BACKGROUND

### I.    THE BOOK AT ISSUE

Mr. Burgis is an investigations correspondent at the *Financial Times* who also writes books in a freelance capacity.  *See* Burgis Decl. ¶ 2.  He has reported from more than forty countries, but currently resides in London and holds British citizenship.  *Id.*  Mr. Burgis has won major journalism awards in the US and Asia, including the top prize for investigative reporting at the 2015 Society of Publishers in Asia and a US Society for Professional Journalism Sigma Delta Chi

Award in 2016.  *Id.* ¶ 3.  He has also been short-listed for eight other journalism awards, including twice at the British Press Awards.  *See id.*  His critically acclaimed book *The Looting Machine*, about the modern plundering of Africa, won an Overseas Press Club of America award.  *See id.*

On May 16, 2018, Mr. Burgis contracted with HarperCollins UK[1] to research and write a book chronicling the modern-day causes and effects of corporate and political corruption around the world—which would later be published under the name *Kleptopia: How Dirty Money Is Conquering the World* (hereinafter, "the Book").  *Id.* ¶ 4.  Among other topics, the Book explores allegations of corruption, bribery, and other wrongdoing by ENRC.  *See id.*  Mr. Burgis also signed a contract with HarperCollins US to publish the same Book in the United States; however, HarperCollins US had more limited involvement in the drafting and review of the Book.  *Id.* ¶ 5.

Because of the sensitive subject matter of the Book, Mr. Burgis worked with a number of sources who were not comfortable publicly identifying themselves in print, fearing that there could be retaliation from the powerful companies and individuals mentioned in the Book.  *See id.* ¶ 6. Mr. Burgis addresses the issue of his unnamed sources in the Prologue of the Book:

> In the cases when sources would only speak on condition of anonymity, they are described with as much detail as possible without making them identifiable. Occasionally, all that can be said is that the source of a particular fact is a confidential interview.  This is because the source in question could face reprisals for revealing what he or she knew.  While anonymous sources are not ideal, especially in a book about the nefarious power of secrecy, it is important for those whom others would wish to silence to have their voice in this way, subject to the author's best efforts to test their credibility.

*Id.*  In order to protect the identities of his unnamed sources, Mr. Burgis closely guarded any materials that could conceivably reveal their identities.  *See id.* ¶ 7.  As such, he took heightened

---

[1] HarperCollins UK, the lead publisher of the Book, is a London-based, independently incorporated foreign affiliate and sister company of HarperCollins US—which is located in New York.  *See* Silfin Decl. ¶ 2.  The Amended Subpoena only seeks documents within the possession, custody, or control of HarperCollins US, not HarperCollins UK.  *See* Handman Decl., Ex. E at 4.

security measures even when transmitting drafts of the Book to his publishers.  *See id.*  On September 3, 2020, HarperCollins UK published *Kleptopia* to wide international acclaim.  *See* Silfin Decl. ¶ 3.  The Book was published in the US on September 8, 2020.  *See id.*

## II.   ENRC'S CAMPAIGN OF HARASSMENT TO SILENCE ITS CRITICS

Mr. Burgis is not the only one who has reported upon ENRC's misdeeds.  For years, the UK's Serious Fraud Office ("SFO") has investigated ENRC's alleged wrongdoing, namely related to its operations in Kazakhstan and the Democratic Republic of Congo.  Numerous news outlets—including *Bloomberg News*, *The Times*, *The Sunday Times*, *The Evening Standard*, *and The Financial Times*—published articles covering these investigations.  *See generally* ECF No. 4, Shanmuganathan Decl., Exs. 6-12.  In a clear attempt to silence the negative press against it, ENRC initiated four separate lawsuits in the UK against the Director of the SFO, three other individuals, and one law firm, whom it alleged acquired and misused ENRC's confidential information, resulting in the negative press against ENRC.  *See* Mem. of Law in support of ENRC's § 1782 application (ECF No. 2) (hereinafter "1782 Mot.") at 6-7 (citing cases).

As grounds for these lawsuits, ENRC asserted that, around 2007, one of its computer forensics experts copied some of its confidential information and allegedly disclosed it to Mark Hollingsworth, a UK-based freelance journalist and author.  *See id.* at 4; *see also* http://markhollingsworth.co.uk/articles/.  ENRC further claims that Mr. Hollingsworth traded or otherwise disclosed this confidential information to other third parties, including Ake-Jean Qajygeldin, the former Prime Minister of Kazakhstan, and Alex Yearsley, a UK-based freelance investigator.  *See id.* at 4-5.  ENRC also alleges that, between 2011 and 2013, a Dechert LLP lawyer named David Neil Gerrard—whom ENRC had hired to conduct an internal investigation—worked with Mr. Hollingsworth to unlawfully disclose the confidential information to the SFO,

4

journalists, and others.  *See id.* at 5.  In addition to the SFO Director, the other defendants in ENRC's UK lawsuits include Mr. Hollingsworth, Mr. Qajygeldin, Mr. Gerrard, and Dechert LLP. *See id.* at 6-7.  None of the complaints mention Mr. Burgis or any HarperCollins entity.  *See* Handman Decl., Exs. A-D.  And critically, none of these complaints claim that any of the allegedly confidential information is false.  *See generally id.*

In the course of drafting the Book, Mr. Burgis reached out to ENRC to request comment on facts involving the company that he was considering including in the Book, and provided ENRC's UK-based law firm, Taylor Wessing, with a 33-page document setting forth these facts. Burgis Decl. ¶ 9.  On May 8, 2020, Taylor Wessing sent Mr. Burgis a letter, alleging that Mr. Burgis's 33-page document contained confidential information, yet failed to specify which information from the letter was allegedly confidential.  *See id.*, Ex. B at 1.  On May 15, Mr. Burgis responded to Taylor Wessing's letter, explaining in great detail how much of the information from the 33-page document was already part of the public record—namely in public court filings and published news articles.  *See id.*, Ex. C at 3-4.  In particular, Mr. Burgis identified the following public sources for the information in the 33-page document: (1) ENRC's IPO prospectus; (2) Dechert LLP and Mr. Gerrard's Defence to ENRC's Particulars of Claim[2]; (3) ENRC's Particulars of Claim against Mr. Hollingsworth; (4) ENRC's Particulars of Claim against Dechert LLP and Mr. Gerrard; (5) two articles in *The Times*; and (6) one article in *The Financial Times*.  *See id.*  Mr. Burgis then stated: "I will be glad to reflect in my book the thrust of ENRC's claims and would be grateful to be kept abreast of developments.  But you would not expect me to refrain from also drawing on information that may once have been contained in confidential documents but which has, as I have explained above, passed into the public domain."  *Id.*, Ex. C at 4.

---

[2] In the UK, a "particulars of claim" is the equivalent of a "complaint" in the US; and a "defence" is the equivalent of an "answer."

On May 27, 2020, Taylor Wessing sent Mr. Burgis another letter, purporting to disagree with some of Mr. Burgis's assertions about the public nature of the information—but not providing any specifics or support.  *See id.* ¶ 12, Ex. D.  Like its first letter, this letter also did not identify which parts of Mr. Burgis's 33-page document included allegedly confidential information, but instead, adopting a negative inference, claimed any information Mr. Burgis did not explicitly set out in his May 15 email was necessarily confidential.  *See id.*  Mr. Burgis responded to Taylor Wessing on June 2, 2020, stating:  "I have carefully reviewed what you have said in your original letter, as well as the information about your client which has passed into the public domain in journalism and court filings, and am satisfied that the text to be published does not reference information which remains confidential to your client."  *Id.*, Ex. C at 1.

Instead of identifying for Mr. Burgis which information from his 33-page document was purportedly confidential, ENRC waited three months, until September 2, 2020—the day before the Book was published in the UK—to file an application in this Court under 28 U.S.C. § 1782 for leave to take discovery from HarperCollins US.  *See generally* 1782 Mot.  In its 1782 Motion, ENRC alleged, on information and belief, that Mr. Burgis might be including some of ENRC's confidential information in the Book, and purported to seek discovery to support its ongoing UK litigations and in contemplation of a potential case against Mr. Burgis.  *See id.* at 7.  Yet, ENRC admitted that it had "not seen or read the contents of the Book itself," *id.*; and it offered no proof that Mr. Burgis obtained any confidential information from Mr. Hollingsworth or others or, more importantly, that Mr. Burgis disclosed or intended to disclose any particular confidential information.  Instead, as in Taylor Wessing's letters, ENRC reiterated its unsupported and vague claim that Mr. Burgis's 33-page document included similar headings and information to those contained in ENRC's allegedly confidential material, without any particulars.  *See id.*

ENRC also put forth as "evidence" two emails.  In one, Mr. Hollingsworth states to a third-party: "I read the FT story on Ablyazov – fascinating.  Yes, I will try and get Tom Burgis to run the SFO and Belgium story because I know Tom." Shanmuganathan Decl., Ex. 15.  In the other, Mr. Burgis emails Mr. Yearsley regarding the publicly-reported deaths of two ENRC employees, citing a link to a public government website and saying, "Apparently it was malaria (though seems weird that they'd both have it at the same time??)."  *Id.*, Ex. 16.  Neither of these emails remotely indicate that Mr. Burgis received unlawfully obtained confidential documents from either Mr. Hollingsworth or Mr. Yearsley.  The first simply demonstrates that Mr. Hollingsworth claimed to know Mr. Burgis.  The second merely shows Mr. Burgis expressing skepticism to Mr. Yearsley (a British expert on African affairs) regarding the purported explanation for the deaths of two of ENRC's African employees—it in no way relates to any exchange of allegedly confidential information.

## III.    THE PROCEEDINGS BEFORE THIS COURT

The Court granted ENRC's application *ex parte* on September 9, 2020, allowing ENRC to serve its subpoena.  *See* ECF No. 11.  ENRC served HarperCollins US' counsel with the original subpoena on September 19, 2020 and, after reviewing HarperCollins US' suggestions, with an amended subpoena on November 12, 2020.  *See* Handman Decl., Ex. E (hereinafter, the "Amended Subpoena").  The Amended Subpoena seeks  nine categories of documents—seven of which call for production of documents pertaining to HarperCollins US' fact-checking or pre-publication review of the Book, including, *inter alia*: (1) all manuscripts and other drafts of the Book; (2) all communications with Mr. Hollingsworth, Mr. Gerrard, Dechert, Mr. Qajygeldin, or Glenn Simpson, regarding ENRC; (3) all documents that have ever been in ENRC's possession; and (4) all documents derived from or including "non-confidential sources of information relating to

7

ENRC." *Id.*  The remaining two categories seek information relating to the compensation that HarperCollins US paid Mr. Burgis in connection with the publication and sale of the Book.  *See id.*  It also notices the deposition of a corporate representative of HarperCollins US, and specifies six topics for examination—five of which relate solely to the pre-publication review and fact-checking process, the other to Mr. Burgis's compensation.  *See id.* at 1.

On October 16, 2020, pursuant to an agreement between the parties, HarperCollins US filed a pre-motion letter requesting leave to file a motion to quash the original subpoena.  *See* ECF No. 16.  ENRC filed a letter in response on October 21, 2020.  *See* ECF No. 18 (hereinafter, "Opposition Letter").  In its Opposition Letter, ENRC purported to "identify" three examples of allegedly confidential documents that the Book disclosed, but described these documents in such vague terms—without any dates, named authors, or recipients—that it is difficult to know exactly which documents these refer to.  *See* Opp. Letter at 1.  ENRC appears to identify these three documents with slightly more detail in the Amended Subpoena—listing them as "the March 29, 2011 letter from Neil Gerrard, the May 22, 2011 email from Paul Judge, and the Dechert report on Kazakhstan."  Handman Decl., Ex. E at 5.  However, all three of these documents became public prior to the publication of the Book as a result of court filings in ENRC's UK-based litigations.[3] Accordingly, due to their public nature—and the fact that publishing the contents of these documents, as described in the lawsuits, appears to be in the public interest—none of these

---

[3] The March 29, 2011 letter from Mr. Gerrard was extensively described and quoted in ENRC's Amended Particulars of Claim in its litigation against Mr. Gerrard and Dechert.  *See* Handman Decl., Ex. C ¶¶ 40, 44.3.  The "May 22, 2011 email from Paul Judge" appears to be referenced in ENRC's Particulars of Claim in its litigation against Mr. Hollingsworth.  *See* Handman Decl., Ex. A, Annex C.2(8)(a)(ii) (describing an "internal ENRC email which Sir Paul Judge, a director of the Claimant, had sent to the Claimant's other directors and company officers in May 2011 about Mr. Mashkevich and his prospective role as a future chairman of the Claimant").  Finally, "the Dechert report on Kazakhstan" is discussed repeatedly throughout ENRC's Amended Particulars of Claim in its litigation against Mr. Gerrard and Dechert as well as Mr. Gerrard and Dechert's Amended Defence to same.  *See, e.g.,* Handman Decl., Ex. C (particulars of claim) ¶¶ 122.1, 123, 130, 132.2, 137-138, 146, 149, 172.5-172.6; *see also, e.g.,* Handman Decl., Ex. F (defence) ¶¶ 233(10), 337, 342(1)(a), 354(3)(a), 355(1)(a), 357(3), 358, 360A, 366-68, 383-86, 388, 392(4), 425.

documents could support a claim for "breach of confidence" in the UK. *See* 1782 Mot. at 9 (stating that the first element of a "breach of confidence" claim is that "the information has the necessary quality of confidence," and that even if the information is confidential, the claim may be defeated by a public interest defense).

On October 27, 2020, the Court held a pre-motion conference, granted HarperCollins US leave to move to quash, and set a briefing schedule for that motion, which was altered after ENRC amended its subpoena. *See* 10/27/2020 Minute Entry; *see also* ECF No. 22. Accordingly, HarperCollins US hereby submits the instant motion to quash ENRC's Amended Subpoena.

## **ARGUMENT**

Federal Rule of Civil Procedure 45(d)(3) provides that "[o]n timely motion, the court for the district where compliance is required <u>must</u> quash or modify a subpoena that: . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies; or . . . subjects a person to undue burden" (emphasis added). The Rule further notes that "the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires: . . . disclosing a trade secret or other confidential research, development, or commercial information[.]" *Id.* The Court should quash the Amended Subpoena under Rule 45 for three reasons: (1) ***all*** of the documents and testimony the Amended Subpoena seeks constitute either newsgathering materials that are completely protected from disclosure by the reporter's privilege under federal and New York law, or proprietary commercial information; (2) some of the documents and testimony the Amended Subpoena seeks are also protected from disclosure by the attorney-client privilege; and (3) the Amended Subpoena violates the principles of Section 1782

discovery because it is harassing, overly burdensome and intrusive, and designed to circumvent foreign proof-gathering limits for ENRC's UK-based litigations.[4]

I.  **ALL DOCUMENTS AND TESTIMONY SOUGHT BY ENRC ARE EITHER PROTECTED FROM DISCLOSURE BY THE REPORTER'S PRIVILEGE UNDER FEDERAL AND NEW YORK LAW, OR CONSTITUTE PROPRIETARY COMMERCIAL INFORMATION.**

With the Amended Subpoena's requests for proprietary commercial information regarding Mr. Burgis's compensation for the Book excepted, all documents and testimony that the Amended Subpoena seeks constitute newsgathering materials protected from disclosure under the federal reporter's privilege and the New York Shield Law.  The federal reporter's privilege is most applicable here because the source of the Court's jurisdiction over this action is a federal statute— 28 U.S.C. § 1782.  At the same time, "[i]n examining the boundaries of the journalist's privilege" under federal law, the Second Circuit has encouraged courts to "consider also the applicable state law, in this case New York's so-called 'Shield Law,'" and has advised courts not to "ignore New York's policy of giving protection to professional journalists."  *von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 144 (2d Cir. 1987).  This is significant because "New York public policy as embodied in the Constitution and our current statutory scheme provides a mantle of protection for those who gather and report the news—and their confidential sources—that has been recognized as ***the strongest in the nation***."  *Holmes v. Winter*, 22 N.Y.3d 300, 310 (2013) (emphasis added).

The Second Circuit "has long recognized the existence of a qualified privilege for journalistic information" under federal common law.  *Gonzales v. Nat'l Broad. Co.*, 194 F.3d 29,

---

[4] In the alternative, HarperCollins US asks the Court to issue a protective order preventing ENRC from enforcing the Amended Subpoena.  Federal Rule of Civil Procedure 26(c)(1) provides that the Court may, for good cause, issue a protective order "to protect a party or person from annoyance . . . or undue burden or expense, including . . . forbidding the disclosure or discovery . . . or limiting the scope of disclosure or discovery to certain matters . . . ."  For the reasons set forth in this Motion—namely, the privileged nature of the documents and testimony sought and the undue burden of the Amended Subpoena—good cause exists to support the issuance of such a protective order.

32 (2d Cir. 1999).  This privilege reflects the "'paramount public interest in the maintenance of a vigorous, aggressive and independent press capable of participating in robust, unfettered debate over controversial matters, an interest which has always been a principal concern of the First Amendment.'" *Baker v. F&F Inv.*, 470 F.2d 778, 782 (2d Cir. 1972).  The Second Circuit has established a two-tiered test for overcoming the federal reporter's privilege—with one tier for confidential information and the other for non-confidential information.  ENRC cannot satisfy either test; and this Court should quash the Amended Subpoena for this reason alone.

### A.    ENRC Cannot Satisfy the High Burden of Overcoming the Federal Reporter's Privilege for Confidential Newsgathering Materials.

Because confidentiality is "essential to fulfillment of the pivotal function of reporters to collect information for public dissemination," *In re Petroleum Prods. Antitrust Litig.*, 680 F.2d at 8, courts in this Circuit apply a demanding qualified privilege that protects reporters from being compelled to reveal their confidential sources and information.  *See Lonegan v. Hasty*, No. CV-04-2743 (NG)(VVP), 2008 WL 41445, at *2 (E.D.N.Y. 2008) ("The damage caused by the required revelation of confidential information is obvious: if sources fear that their identities will be readily subject to exposure, they will be less likely to provide information to journalists and the press's ability to perform its constitutionally protected function will be compromised.").

Mr. Burgis worked with a number of unnamed sources in writing the Book.  *See* Burgis Decl. ¶ 6.  As one might expect, when investigating corruption and alleged malfeasance by multiple powerful corporations, many sources feared for their safety and therefore would only speak with Mr. Burgis upon the condition of anonymity.  *See id.*  As stated *supra*, Mr. Burgis addresses this issue at length in the Prologue of the Book, stating that while he could describe some of these unnamed sources without identifying them, where "the source in question could face reprisals for revealing what he or she knew," he just described the source as a "confidential

interview."[5]   *See id.*   In order to respect any requests for anonymity and safeguard against potentially adverse consequences, Mr. Burgis closely guarded his unnamed sources and any materials that could conceivably reveal their identities, including by using secure means to transmit drafts of the Book to his publishers.   *See id.* ¶ 7.   Indeed, the importance of maintaining confidentiality is of paramount importance in a case like this, where the sources could face serious consequences if their identities were revealed.   *See Holmes*, 22 N.Y.3d at 310 (noting that "safeguarding the anonymity of those who provide information in confidence is perhaps the core principle of New York's journalistic privilege").

Although ENRC purports to frame its Amended Subpoena to seek only "non-confidential" information, it fails to do so, partly because it seeks several categories of documents such as "[a]ll manuscripts and other drafts of the Book."  Handman Decl., Ex. E at 5.  Some of these drafts and manuscripts contain information that could identify Mr. Burgis's unnamed sources, and/or information these sources provided to Mr. Burgis in confidence.   *See* Burgis Decl. ¶ 8. Accordingly, because some of the material that ENRC seeks implicates the high standard of the privilege for confidential newsgathering materials, "disclosure may be ordered only upon a clear and specific showing that the information is: highly material and relevant, necessary or critical to the maintenance of the claim, and not obtainable from other available sources."  *In re Petroleum Prod. Antitrust Litig.*, 680 F.2d at 7 (emphasis added).  All three of these factors must be satisfied to overcome the privilege.  *See Persky v. Yeshiva Univ.*, No. 01 CIV. 5278 (LMM), 2002 WL 31769704, at *4 (S.D.N.Y. Dec. 10, 2002) (finding the privilege not overcome where the first two factors were satisfied, but the third was not).  ENRC cannot satisfy any of these three factors.

---

[5] The Book includes 338 detailed footnotes, painstakingly identifying the sourcing for numerous facts/statements therein, including stating where the source is a confidential interview.  *See* Burgis Decl., Ex. A at 341-423.

       1.     *ENRC Cannot Make a Clear and Specific Showing that HarperCollins US Has Any Relevant Evidence—Let Alone Evidence That Is Highly Material or Relevant.*

Courts have found that a party cannot make a "clear and specific showing" sufficient to satisfy the first factor where the party seeks discovery based merely on a "hunch" that the targeted journalist might have material and relevant information.  *See Pugh v. Avis Rent A Car Sys., Inc.*, No. M8-85, 1997 WL 669876, at \*4 (S.D.N.Y. Oct. 28, 1997) (granting motion to quash upon finding that the "subpoena [wa]s based only upon Defendant's 'hunch' that the 60 Minutes interview outtakes . . . must contain some information useful to its argument . . . .  This 'hunch,' without more, does not constitute a clear and specific showing that the nonpublished information sought is highly material and relevant"); *see also United States ex rel. Vuitton Et Fils, S.A. v. Karen Bags, Inc.*, 600 F. Supp. 667, 671 (S.D.N.Y. 1985) (holding that a "hunch" is insufficient as a specific showing that the information sought is "highly material" or "critical"); *Lonegan*, 2008 WL 41445, at \*7 (finding that defendants failed to make a "clear and specific showing that any relevant information exist[ed], much less that it [wa]s highly material or necessary to their defense" where they only cited "to but one paragraph in the respondents' report as evidence that they possess any information relevant to the issue").

Here, ENRC has put forth ***no*** credible evidence that HarperCollins US or Mr. Burgis obtained or misused any of its allegedly confidential information.  Instead, it hangs its hat on: (1) two emails involving Mr. Burgis, which establish nothing more than that Mr. Hollingsworth claims to know Mr. Burgis and that Mr. Burgis is acquainted with Mr. Yearsley; and (2) a claim that the Book includes information from three allegedly confidential documents, which appear to be already in the public domain.  Such paltry "evidence" amounts to nothing more than a "hunch." *Pugh*, 1997 WL 669876, at \*4.  Indeed, that ENRC cannot produce any stronger evidence ***even now that it has the Book at its disposal***, suggests that the Amended Subpoena is merely an

overbroad and harassing fishing expedition.  *See Giuffre v. Maxwell*, 221 F. Supp. 3d 472, 479 (S.D.N.Y. 2016) (defendant's subpoena for third-party journalist's newsgathering materials from interviews with alleged sexual assault victim to prove that the victim's accounts changed over time, did not seek "highly material" information because any inconsistencies "would be apparent from the face of the Articles themselves").

           2.      *The Information ENRC Seeks Is Not Necessary or Critical to the Maintenance of the Claims in Its Ongoing UK-Based Lawsuits Nor to Any Potential Lawsuit Against Mr. Burgis.*

The Second Circuit has emphasized that information is not "necessary or critical" to a claim unless the claim "***virtually rises or falls*** with the admission or exclusion of the proffered evidence." *In re Appl. to Quash Subpoena to National Broad. Co.* (*Graco*), 79 F.3d 346, 351 (2d Cir. 1996) (quoting *United States v. Marcos*, No. 87 CR 598, 1990 WL 74521, at *3 (S.D.N.Y. June 1, 1990)) (emphasis added).  "The test is not merely that the material be helpful or probative, but ***whether or not . . . the action may be presented without it***." *Baker v. Goldman Sachs & Co.*, 669 F.3d 105, 108 (2d Cir. 2012) (emphasis added) (citation omitted).  Accordingly, information that is cumulative of other evidence can never be "necessary or critical" to a claim.  *See, e.g.*, *In re Behar*, 779 F. Supp. 273, 275 (S.D.N.Y. 1991); *Marcos*, 1990 WL 74521, at *4.  In addition, when the reporter's testimony would go to only one aspect of a larger course of allegedly wrongful conduct, courts hold that the testimony is not "necessary or critical."  Thus, for example, where a defendant's "alleged feeding of false and misleading statements" to a newspaper was just one of over a dozen courses of conduct that the plaintiff alleged the defendant "undertook in furtherance of his vendetta," the court held the reporter's testimony about the sources for an article was not "necessary or critical" to the plaintiff's case.  *Sommer v. PMEC Assocs. & Co.*, No. 88 CIV. 2537 (JFK), 1991 WL 73858, at *3 (S.D.N.Y. May 1, 1991).

Under this standard, ENRC cannot possibly establish that its four UK-based litigations "virtually rise or fall" with any evidence allegedly possessed by HarperCollins US. These litigations have been ongoing since 2018 or 2019 and the complaints in those cases do not once mention Mr. Burgis or HarperCollins. Instead, the lawsuit against Dechert LLP and Mr. Gerrard focuses more on legal malpractice and breach of duty claims than breach of confidence, alleging that those defendants failed to properly conduct internal investigations for ENRC and instead collaborated with the UK SFO against ENRC. *See* Handman Decl., Ex. C at 1-4. Likewise, ENRC's case against the UK SFO Director involves similar allegations that the SFO induced breach of ENRC's contract with Dechert and committed unlawful acts in investigating the company. *See id.*, Ex. B at 37-58. The case against Mr. Qajygeldin (the former prime minister of Kazakhstan) claims that he wrongfully obtained ENRC's confidential information and disclosed it to ***specific named recipients*** such as Rinat Akhmetshin, the SFO, and Glenn Simpson. *See id.*, Ex. D at 14-16. Finally, the case against Mr. Hollingsworth similarly alleges that he disclosed ENRC's confidential information to ***specific named recipients*** including the SFO, First Quantum Minerals Limited, Nardello & Co. LLP, FG Hemisphere Associates LLC, Akezhan Qajygeldin, Glenn Simpson, and Philip van Niekerk. *See id.*, Ex. A at 19-24.[6]

Even if the defendants in these cases also disclosed confidential ENRC information to Mr. Burgis (a fact that HarperCollins US neither confirms nor denies), that fact is nowhere near "necessary or critical" to the maintenance of any of these lawsuits. For the lawsuits that allege breach of confidence violations, they already identify named recipients of the allegedly confidential information—adding another name to that list is not "necessary or critical" to the

---

[6] To the extent that ENRC seeks evidence from HarperCollins US to contradict or "impeach" the testimony of the defendants in its ongoing UK-based lawsuits, the reporter's privilege precludes such a use. *See Graco*, 79 F.3d at 352 (holding that "impeachment material is not critical or necessary to the maintenance or defense of a claim").

claim.  *See In re Behar*, 779 F. Supp. at 275 (noting information cumulative of other evidence can never be "necessary or critical" to a claim).  And for the lawsuits against Dechert and the SFO, any "evidence" regarding Mr. Burgis (if it existed) would go to only one aspect of a larger course of allegedly wrongful conduct—in those cases, the claimed collaboration of the entities in breaching ENRC's contract with Dechert and engaging in other malfeasance—and such evidence is not "necessary or critical" in such a situation.  *See Sommer*, 1991 WL 73858, at *3.

Nor can ENRC argue that the discovery it seeks from HarperCollins US is necessary or critical to its purportedly anticipated lawsuit against Mr. Burgis in the UK.  If ENRC were to bring a lawsuit against Mr. Burgis in the UK, it would have the opportunity to serve discovery requests upon him at that time.  *See* Handman Decl., Ex. G at 16:12-21.  Accordingly, subject to the UK reporter's privilege, ENRC would be able to go directly to the source of the information it seeks, and any discovery from HarperCollins US would be merely cumulative and therefore, not necessary or critical to the maintenance of the action.  *See In re Behar*, 779 F. Supp. at 275.

3.    *The Information ENRC Seeks Is Obtainable from Other Sources.*

Perhaps most importantly, the Court should quash the Amended Subpoena because ENRC cannot demonstrate the documents and testimony it seeks are unavailable from other sources.  The federal reporter's privilege is designed to ensure that a journalist's First Amendment-protected newsgathering activities and information are invaded "only as a last resort."  *Giuffre*, 221 F. Supp. 3d at 480 (citation omitted); *see also*, *e.g.*, *Goldberg v. Amgen, Inc.*, 123 F. Supp. 3d 9, 20 (D.D.C. 2015) ("A journalist's privilege should be overridden only as 'a last resort.'") (citation omitted).  Accordingly, under the Second Circuit's reporter's privilege test, the applicant must show that it has "exhaust[ed] all other available sources" for the information sought before it can force a reporter to reveal the information.  *Graco*, 79 F.3d at 353 (citing *In re Pan Am Corp.*, 161 B.R.

577, 585 (S.D.N.Y. 1993)).  That it may be burdensome to exhaust alternative sources is no basis

to override the First Amendment values protected by the privilege.  The Second Circuit has even

"overturn[ed an] order requiring disclosure of a journalist's notes despite the fact that **hundreds** of

depositions had been taken and others might be necessary." *In re Pan Am Corp.*, 161 B.R. at 585

(discussing *In re Petroleum Prods.*, 680 F.2d at 7) (emphasis added); *see also In re Petroleum

Prods.*, 680 F.2d at 9 (noting that requiring such additional steps—even if burdensome—was

"reasonable when balanced against the strain on the First Amendment" caused by compelled

disclosure of a reporter's sources).  Other courts have held that "an alternative requiring the taking

of as many as 60 depositions might be a reasonable prerequisite to compelled disclosure." *Zerilli

v. Smith*, 656 F.2d 705, 714 (D.C. Cir. 1981); *see also Pugh*, 1997 WL 669876, at *4 (quashing

subpoena for non-confidential outtakes from television news program where subpoenaing party

had "not deposed . . . all of the individuals interviewed by [news program] on the issue of

statements made to [news program] or any other media source").

    Here, ENRC has never represented—in its motion papers or at the pre-motion

conference—that it has made **any** attempt to obtain information regarding Mr. Burgis's alleged

acquisition of ENRC's confidential material from **any** source other than HarperCollins US.

ENRC's failure in this regard is even more troubling given that it purports to know the identities

of the sources who it claims might have provided Mr. Burgis with its allegedly confidential

information.  *See* Opp. Letter at 2 n.2 ("[I]n this case ENRC already knows the identity of the

sources named in the subpoena.").  Indeed, at the pre-motion conference, ENRC's counsel

acknowledged that the parties named in the Subpoena constitute the pool of suspected sources that

it alleges gave confidential information to Mr. Burgis.[7]  *See* Handman Decl., Ex. G at 17:9-14.

---

[7] While the operative subpoena at the time of the hearing included eleven alleged sources, the Amended Subpoena
removed references to six of these, leaving five such alleged sources.  *See* Handman Decl., Ex. E at 5.

Oddly, ENRC's counsel claimed that it does not have "the power to seek documents" from many of these sources because they are "not parties to [ENRC's] ongoing litigation in the UK." *Id.* However, of the five alleged sources, ENRC has currently pending litigation against four of them (Dechert LLP, Mr. Gerrard, Mr. Hollingsworth, and Mr. Qajygeldin). ENRC made no showing that it has served any discovery requests on these four parties to inquire whether they provided allegedly confidential information to Mr. Burgis. Additionally, the remaining alleged source, Mr. Glenn Simpson, is a US resident and thus, ENRC can apply to subpoena him through 28 U.S.C. § 1782, just as it did in this application. ENRC is well aware of this fact because it has already applied for § 1782 discovery from Mr. Simpson to assist in its ongoing UK-based litigations, which the court granted. *See Eurasian Natural Res. Corp., Ltd. v. Simpson*, No. 8:19-mc-00699-PX (D. Md. Jan. 6, 2020) (ECF No. 7). However, the subpoena issued in that case never specifically mentioned Mr. Burgis or HarperCollins US; and it is unclear from the docket whether it was even served. *See id.* (ECF No. 1-3).

Accordingly, it is clear that ENRC has legally enforceable avenues to seek discovery from ***all five alleged sources*** named in the Amended Subpoena; and yet, it has given no indication that it has done so. ENRC also may seek discovery from other potential alleged sources. For example, ENRC claims in its 1782 Motion that it suspects Mr. Yearsley might have provided Mr. Burgis with information, and the fact that ENRC attached an email from Mr. Yearsley as an exhibit to its 1782 Motion indicates that it has some ability to acquire his communications. *See* Shanmuganathan Decl., Ex. 16. As the Second Circuit explained, ENRC is required to first run these alternative sources to ground, because engaging in that "process" may allow the litigant to "identify the actual purveyors of … information [to the journalists]," which would "obviat[e] the need to inquire of [the journalists]." *In re Petroleum Prods.*, 680 F.2d at 9. Because ENRC has

not yet done this, the Amended Subpoena should be quashed on this ground alone.  *See Graco*, 79

F.3d at 353 (granting motion to quash subpoena under the reporter's privilege where the party

seeking discovery "made no showing that it attempted to obtain the information from other [non-

journalist] sources.").

> **B.** **ENRC Cannot Satisfy the Burden of Overcoming the Privilege for Non-Confidential Newsgathering Materials.**

Even if any of HarperCollins US' documents or contemplated testimony constitute non-

confidential newsgathering materials, ENRC still cannot overcome the qualified test for obtaining

such materials under the federal reporter's privilege.  To overcome the test for non-confidential

newsgathering information, the applicant must "show that the materials at issue are of likely

relevance to a significant issue in the case, and are not reasonably obtainable from other available

sources." *Gonzales*, 194 F.3d at 36.  Courts routinely reject requests to obtain unpublished non-

confidential information based on nothing more than "general claims that the [discovery is] likely

to contain relevant material."  *In re McCray, Richardson, Santana, Wise, Salaam Litig.*, 991 F.

Supp. 2d 464, 470 (S.D.N.Y. 2013) (affirming grant of motion to quash).

As with the standard for confidential information, "[t]he relevancy requirement is not met

if the information sought in the subpoena is merely duplicative or serv[es] a 'solely cumulative

purpose.'"  *Schoolcraft v. City of N.Y.*, No. 10 Civ. 6005(RWS), 2014 WL 1621480, at *3

(S.D.N.Y. Apr. 22, 2014) (citation omitted).  Likewise, even if not to the same degree as required

for confidential sources, courts still require a significant degree of "[e]xhaustion of all other

available sources of information."  *Id.* at *2-3 (collecting cases); *see also In re McCray*, 991 F.

Supp. 2d at 470 ("Courts in the Second Circuit have quashed subpoenas where similar information

could be obtained elsewhere."); *Lebowitz v. City of N.Y.*, 948 F. Supp. 2d 392, 395 (S.D.N.Y. 2013)

(finding the "exhaustion" requirement was not met, since "at least three other witnesses identified by the plaintiff in discovery may have observed the events in question").

Here, ENRC cannot satisfy the relevancy requirement because the information the Amended Subpoena seeks is "merely duplicative or serv[es] a 'solely cumulative' purpose," considering, as explored *supra*, that the UK-based lawsuits involve alleged disclosures to named recipients other than Mr. Burgis or HarperCollins US, and also involve a variety of other alleged wrongdoing regarding Dechert LLP and the SFO's investigation of the company.  *Schoolcraft*, 2014 WL 1621480, at *3.  Additionally, ENRC cannot possibly establish that all the documents it seeks are relevant where, as here, the Amended Subpoena includes overly broad requests (such as for all drafts and manuscripts of the Book and testimony on HarperCollins US' general pre-publication processes).  Likewise, ENRC cannot satisfy the exhaustion requirement because it has done ***nothing*** to seek the information at issue from other sources—despite identifying five such alleged sources and possessing legally enforceable means to seek discovery from them all.   Nor has ENRC taken efforts to examine the Book itself as an alternative source of discovery, even though the Book contains over 300 detailed footnotes laying out its sourcing.  Such blatant failure to act fails to satisfy even the slightly lower test for non-confidential newsgathering materials.

Because ENRC cannot overcome either the standard for confidential or non-confidential newsgathering materials, there is no need for HarperCollins US to submit a privilege log in response to the Amended Subpoena, as ENRC argued at the pre-motion conference.  To the contrary, numerous cases establish that courts do not require privilege logs before ruling on motions to quash where, as here, the elements of the reporter's privilege can be established as to ***all*** requested documents—for example, because the documents can be sought from other sources.[8]

---

[8] As stated *supra*, the only discovery the Amended Subpoena seeks that is not covered by the reporter's privilege are the documents and testimony regarding Mr. Burgis's compensation.  This information is not discoverable because it

*See*, *e.g.*, *In re McCray*, 991 F. Supp. 2d at 464 (granting motion to quash subpoena under the reporter's privilege without a privilege log where defendants failed to show that information sought was not reasonably obtainable from other available sources); *see also Giuffre*, 221 F. Supp. 3d at 472 (granting motion to quash subpoena without a privilege log upon concluding that there were numerous alternative sources for information sought by defendant).   In fact, courts have acknowledged that "[t]he 'heavy costs of subpoena compliance' would be a significant issue if reporters have to immediately prepare a privilege log upon being served with a subpoena.   Such a requirement would incur a heavy burden on the press that would inhibit its ability to perform its duties." *Schoolcraft*, 2014 WL 1621480, at *5.   Indeed, the Court should reject ENRC's invitation to burden the press with such an unnecessary expenditure of time, expense, and labor—where, as here, the Amended Subpoena seeks documents that are entirely privileged.[9]

## II.   SOME OF THE DISCOVERY SOUGHT BY ENRC IS PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE.

Although the reporter's privilege protects all documents responsive to Requests 1-7 and testimony responsive to Matters for Examination 1-5 of the Amended Subpoena, some of that discovery is also protected from disclosure by the attorney-client privilege.   It is well established that communications between counsel and a third-party author in the course of pre-publication

---

is irrelevant to any of ENRC's pending actions; of limited, if any relevance to any contemplated lawsuit against Mr. Burgis; and also constitutes proprietary and commercial information that would require a protective order before any production could be ordered.  *See* Silfin Decl., ¶ 4; *see also Sullivan Mktg., Inc. v. Valassis Commc'ns, Inc.*, No. 93 CIV. 6350 (PKL), 1994 WL 177795, at *1 (S.D.N.Y. May 5, 1994) (granting protective order to defendant publisher that restricted access to sensitive business contracts, proposals, and negotiations).

[9] Even if the New York Shield Law does not technically apply here, this Court may also consider the policies underlying the Shield Law when adjudicating a motion based on the federal reporter's privilege.  The New York Shield Law provides "***the broadest possible protection*** to 'the sensitive role of gathering and disseminating news of public events.'"  *O'Neill v. Oakgrove Constr., Inc.*, 71 N.Y.2d 521, 529 (1988).  Under the New York Shield Law, HarperCollins US and Mr. Burgis's confidential newsgathering material or sources are ***absolutely privileged*** from disclosure.  *See* N.Y. Civ. Rights Law § 79-h(b).  Any unpublished non-confidential newsgathering material is subject to a qualified privilege, which is only overcome in exceedingly rare cases upon a "clear and specific showing" that the information sought: "(i) is highly material and relevant; (ii) is critical or necessary to the maintenance of a party's claim, defense or proof of an issue material thereto; and (iii) is not obtainable from any alternative source."  *See id.* § 79-h(c).

legal review of editorial content are protected by the attorney-client privilege.  *See Berisha v. Lawson*, 973 F.3d 1304, 1320 (11th Cir. 2020) (holding that under New York law, an author's communications with his publisher's attorney who conducted pre-publication legal review of the book's contents were protected by the attorney-client privilege); *see also Davis v. Costa-Gavras*, 580 F. Supp. 1082, 1098 (S.D.N.Y. 1984) (holding that the attorney-client privilege applied to conversations between lawyers for a movie studio and the author of the book that had served as the basis for a film's screenplay, even though the author was not an employee of the movie studio).

Thus, any documents or testimony that ENRC seeks that include legal advice from in-house counsel at HarperCollins US regarding the pre-publication legal review process are covered by the attorney-client privilege.  *See Berisha*, 973 F.3d at 1320.

## III.   THE AMENDED SUBPOENA VIOLATES THE PRINCIPLES OF SECTION 1782 DISCOVERY BECAUSE IT IS HARASSING, OVERLY BURDENSOME AND INTRUSIVE, AND DESIGNED TO CIRCUMVENT FOREIGN PROOF-GATHERING LIMITS.

"[I]f the district court determines that a party's discovery application under section 1782 is made in bad faith, for the purpose of harassment, or unreasonably seeks cumulative or irrelevant materials, the court is free to deny the application in toto, just as it can if discovery was sought in bad faith in domestic litigation."  *In re Postalis*, No. 18-mc-497 (JGK), 2018 WL 6725406, at *5 (S.D.N.Y. Dec. 20, 2018); *see also In re Tiberius Grp. AG*, No. 19-mc-467 (VSB), 2020 WL 1140784, at *5 (S.D.N.Y. Mar. 6, 2020) ("Courts may . . . deny [1782] applications where it determines that the discovery is being sought in bad faith or for the purpose of harassment.").  ENRC's bad faith here is exemplified by its continued persecution of HarperCollins US where it clearly has no viable claim for "breach of confidence" against Mr. Burgis—as it cannot identify any confidential information in Mr. Burgis's 33-page document or in the Book itself that has not already been made public through prior lawsuits.  In failing to identify any such information,

ENRC all but concedes that, in publishing the Book, neither Mr. Burgis nor HarperCollins US used—let alone "misused"—any of its confidential information, which is an element of a UK "breach of confidence" action.[10]  *See* 1782 Mot. at 9.  Indeed, no cause of action exists in the UK or the US for mere ***possession*** of confidential information.[11]  Because the contemplated discovery would not render ENRC's potential claim against Mr. Burgis valid, the only plausible explanation for the instant proceeding is ENRC's relentless harassment campaign against its critics in the media.  For this reason alone, the Court should quash the Amended Subpoena.

The Court should also quash the Amended Subpoena because at least two of the four *Intel* factors weigh in favor of doing so.  In its seminal opinion *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 US 241, 264-65 (2004), the Supreme Court set forth four factors for courts to consider when adjudicating requests for foreign discovery under 28 U.S.C. § 1782: (1) whether the "person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to US federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the discovery sought is "unduly intrusive or burdensome."  The third and fourth factors both weigh heavily against permitting the discovery ENRC seeks in the Amended Subpoena.

---

[10] ENRC also admits that, under UK law, even if a defendant did "misuse" confidential information, it may raise a public interest defense, in which the Court balances whether the public interest in the information outweighs the duty of confidence.  *See* 1782 Mot. at 9.  Here, there is certainly great public interest in investigating and exposing global corporate corruption.

[11] In fact, under US law, the First Amendment bars the imposition of civil liability against a journalist for publication of truthful speech about a matter of public concern, even if the third party who provided information to the journalist obtained that information unlawfully.  *See Bartnicki v. Vopper,* 532 US 514, 535 (2001).

Regarding the third factor, the Second Circuit has noted that "'proof-gathering restrictions' are best understood as rules akin to privileges that *prohibit* the acquisition or use of certain materials, rather than as rules that *fail to facilitate* investigation of claims by empowering parties to require their adversarial and non-party witnesses to provide information."  *Mees v. Buiter*, 793 F.3d 291, 303 n.20 (2d Cir. 2015).  Here, the UK reporter's privilege would bar the use of ENRC's discovery of Mr. Burgis and HarperCollins US' newsgathering materials, and thus tips the balance in favor of quashing the Amended Subpoena under the third *Intel* factor.  *See id.* (noting that "authoritative proof that a foreign tribunal would reject evidence obtained with the aid of § 1782 . . . would provide helpful and appropriate guidance to a district court in the exercise of its discretion").[12]  Additionally, although courts should not deny a § 1782 application "solely because such discovery is unavailable in the foreign court," they may "consider[ ] . . . foreign discoverability (along with many other factors) when it might otherwise be relevant to the § 1782 application."  *In re Tiberius Grp. AG*, No. 19-MC-467 (VSB), 2020 WL 1140784, at *4 (S.D.N.Y. Mar. 6, 2020) (quoting *Mees*, 793 F.3d at 303-04 n.20).  To that end, ENRC's counsel admitted at the pre-motion hearing that ENRC is pursuing the instant § 1782 action to effectively evade the UK's restrictions on third-party discovery.  *See* Handman Decl., Ex. G at 16:12-21 ("We don't have the power to ask Mr. Burgis for documents, your Honor. . . .  We don't have pending litigation against Mr. Burgis. . . .  *[A]s your Honor knows, discovery in Europe and in the UK is very different, and third-party discovery isn't a matter of course*.") (emphasis added); *see also In re*

---

[12] Indeed, the courts of the United Kingdom recognize a reporter's privilege stemming from both the Contempt of Court Act 1981 (the "Contempt Act") and the European Convention on Human Rights (the "ECHR").  The European Courts have held that disclosure of journalistic sources "cannot be compatible with Article 10 of the Convention unless [disclosure] is justified by an overriding requirement in the public interest."  *Goodwin v. UK*, App. No. 17488/90, 22 Eur. Ct. H.R. 123 [39] (Mar. 27, 1996) (emphasis added).  As especially relevant here, one court held—in a case where a journalist received and reported on a purported internal corporate document—that the plaintiff's interest in identifying and bringing proceedings against the confidential source of the document to prevent further dissemination of that party's confidential information was insufficient to outweigh the public interest in protection of journalistic sources.  *See Fin. Times Ltd. v. UK*, App. No. 821/03, 21 Eur. Ct. H.R. 533 (Nov. 24, 2009).

*Postalis*, 2018 WL 6725406, at *4 (denying § 1782 application after considering the petitioner's public statements indicating that its application was an attempt to gain pre-litigation discovery for a prospective lawsuit in the US).

Regarding the fourth *Intel* factor ("unduly intrusive or burdensome"), courts have denied § 1782 applications as "unduly intrusive" where, as here, the information sought is protected from disclosure by the federal reporter's privilege.  For example, in *In re Application of Shervin Pishevar*, 439 F. Supp. 3d 290, 305 (S.D.N.Y. 2020), the Court initially denied the petitioner's § 1782 application under the fourth *Intel* factor upon concluding that the petitioner had failed to make a clear and specific showing that there were no alternative sources to discover the identity of the journalist's confidential source, as required by the federal reporter's privilege.[13]  Here, in addition to the fact that ENRC's Amended Subpoena is unduly intrusive under the federal reporter's privilege, it is also unduly burdensome.  The Amended Subpoena seeks a wide range of documents such as "all manuscripts and other drafts of the Book" and testimony regarding HarperCollins US' general pre-publication processes, even though ENRC's 1782 Motion makes clear that it is primarily after just two things: (1) any allegedly confidential ENRC documents that it believes Mr. Burgis has in his possession; and (2) the identit(ies) of whomever allegedly gave Mr. Burgis any such documents.  Such requests are clearly unduly burdensome.

## CONCLUSION

For the foregoing reasons, the Court should quash the Amended Subpoena issued against HarperCollins US.

---

[13] The magistrate judge later granted the application after the petitioner sought this discovery from alternative sources. *See Pishevar*, No: 1:19-mc-00503(JGK)(SDA) (S.D.N.Y.), Dkt. 99.  The respondent filed objections to this decision, which the court has not yet ruled upon.  *See id.*, Dkt. 100.

Dated:  November 24, 2020
New York, New York

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By: /s/ *Laura R. Handman*
Laura R. Handman
Jeremy A. Chase
Chelsea T. Kelly

1251 Avenue of the Americas, 21st Floor
New York, NY  10020-1104
(212) 489-8230 Phone
(212) 489-8340 Fax
laurahandman@dwt.com
jeremychase@dwt.com
chelseakelly@dwt.com

*Attorneys for Respondent HarperCollins*
*Publishers, LLC*

26