**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE:

*EX PARTE* APPLICATION PURSUANT TO 28 U.S.C. § 1782 FOR LEAVE TO TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS,

Applicant.

Case No. 20-mc-00312-ER

**MEMORANDUM OF LAW IN OPPOSITION TO MOTION OF RESPONDENT HARPERCOLLIN PUBLISHERS, LLC TO QUASH SUBPOENA OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER**

Duane L. Loft
Joanna Wright
Mark W. Kelley
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
(t) +1 212 446 2300
(f) +1 212 446 2380

*Attorneys for Applicant Eurasian Natural Resources Corporation Ltd.*

## TABLE OF CONTENTS


TABLE OF CONTENTS ..... i

TABLE OF AUTHORITIES ..... ii

INTRODUCTION ..... 1

FACTUAL AND PROCEDURAL BACKGROUND ..... 2

ARGUMENT ..... 4

I. Requests Nos. 8 and 9, Which Seek Information Concerning Mr. Burgis's Compensation, Do Not Implicate Any Privilege. ..... 4

II. Requests Nos. 2 and 7 Do Not Seek Confidential Information Protected by the Reporter's Privilege. ..... 6

A. The Discovery Sought by Requests Nos. 2 and 7 Is Relevant to Significant Issues. ..... 6

B. The Discovery Is Not Reasonably Obtainable from Alternative Sources. ..... 8

III. Requests Nos. 3–6 Should Not Be Quashed Based on the Reporter's Privilege. ..... 10

A. Respondent Has Failed to Carry Its Burden to Show that Responsive Documents Are Confidential. ..... 10

B. Even if Requests Nos. 3–6 Were Seeking Discovery of Confidential Sources, the Reporter's Privilege Is Overcome. ..... 13

C. Any Confidential Information Can Be Redacted. ..... 18

IV. Mr. Burgis's Communications with Respondent's Counsel Are Not Privileged, and Respondent Must Provide a Privilege Log. ..... 18

V. The *Intel* Factors Uniformly Favor Granting Discovery. ..... 20

A. The Third *Intel* Factor Favors Discovery. ..... 20

B. The Fourth *Intel* Factor Favors Discovery. ..... 23

C. Respondent's Claim of Harassment Is Unsubstantiated, False, and Irrelevant. ..... 25

CONCLUSION ..... 25

## TABLE OF AUTHORITIES

### Cases

*Aequitron Medical., Inc. v. CBS, Inc.*,
No. 93 CIV. 950 (DC), 1995 WL 406157 (S.D.N.Y. July 10, 1995) ..................................... 8

*Am. Sav. Bank, FSB v. UBS Painewebber, Inc.*,
No. M8-85, 2002 WL 31833223 (S.D.N.Y. Dec. 16, 2002)................................................. 19

*Application of Waldholz*,
No. 87 CIV. 4296 KMW, 1996 WL 389261 (S.D.N.Y. July 11, 1996) ............................... 13

*Becker v. Norway*,
App. No. 21272/12 (Eur. Ct. H.R. 2017) ................................................................. 22

*Berisha v. Lawson*,
973 F.3d 1304 (11th Cir. 2020) ....................................................................... 18

*Blum v. Schlegel*,
150 F.R.D. 42 (W.D.N.Y. 1993)........................................................................ 13

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
673 F.3d 76 (2d Cir. 2012)............................................................................ 25

*Caines v. City of New York*,
No. 01 Civ. 7229 (RCC)(DFE), 2003 WL 151993 (S.D.N.Y. Jan. 21, 2003)....................... 23

*Chevron Corp. v. Berlinger*,
629 F.3d 297 (2d Cir. 2011)........................................................................ 6, 12

*Davis v. Costa-Gavras*,
580 F. Supp. 1082 (S.D.N.Y. 1984)................................................................... 19

*Don King Prods., Inc. v. Douglas*,
131 F.R.D. 421 (S.D.N.Y. 1990) ........................................................................ 9

*Ferrari v. Cty. of Suffolk*,
No. CV104218JSGRB, 2012 WL 13109926 (E.D.N.Y. Feb. 14, 2012) ................................ 4

*Gonzales v. Nat'l Broad. Co.*,
194 F.3d 29 (2d Cir. 1999).............................................................................. 7

*Goodwin v. UK*,
App. No. 17488/90, 22 Eur. Ct. H.R. 123 (Mar. 27, 1996) .................................................. 22

*In re Appl. to Quash Subpoena to National Broad. Co.*,
79 F.3d 346 (2d Cir. 1996)............................................................................. 16

*In re Application for an Order Permitting Metallgesellschaft AG to take Discovery*, 121 F.3d 77 (2d Cir. 1997) .......... 20, 22, 23

*In re Application of Chevron Corp.*, 709 F. Supp. 2d 283 (S.D.N.Y. 2010) .......... 10, 12

*In re Application of Chevron Corp.*, 736 F. Supp. 2d 773 (S.D.N.Y. 2010) .......... 1, 19

*In re Application of Shervin Pishevar*, 439 F. Supp. 3d 290 (S.D.N.Y. 2020) .......... 9

*In re Ex Parte Application of Kleimar N.V.*, 220 F. Supp. 3d 517 (S.D.N.Y. 2016) .......... 23

*In re Grand Jury Subpoena*, 750 F.2d 223 (2d Cir. 1984) .......... 10, 12

*In re Grand Jury Subpoena Dated Jan. 4*, *1984*, 750 F.2d 223 (2d Cir. 1984) .......... 13

*In re Grand Jury Subpoenas Dated March 19, 2002 and August 2, 2002*, 318 F.3d 379 (2d Cir. 2003) .......... 18

*In re Horowitz*, 482 F.2d 72 (2d Cir. 1973) .......... 18

*In re Petroleum Prod. Antitrust Litig.*, 680 F.2d 5 (2d Cir. 1982) .......... 13

*In re Postalis*, No. 18-MC-497 (JGK), 2018 WL 6725406 (S.D.N.Y. Dec. 20, 2018) .......... 21, 25

*In re Ramaekers*, 33 F. Supp. 2d 312 (S.D.N.Y. 1999) .......... 5

*In re Tiberius Grp. AG*, No. 19-MC-467 (VSB), 2020 WL 1140784 (S.D.N.Y. Mar. 6, 2020) .......... 21, 25

*Intel v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (U.S. 2004) .......... 20, 21, 24, 25

*Johnson v. City of New York*, No. 16CIV6426KAMVMS, 2018 WL 6727329 (E.D.N.Y. Dec. 21, 2018) .......... 9

*JPMorgan Chase Bank, N.A. v. Reifler*, No. 11 CIV. 4016 (DAB), 2016 WL 10570981 (S.D.N.Y. July 14, 2016) .......... 5

*Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*,
895 F.3d 238 (2d Cir. 2018)........................................................................................ 24

*Lipinski v. Skinner*,
781 F. Supp. 131 (N.D.N.Y. 1991)............................................................................ 11

*Lonegan v. Hasty*,
No. CV04-2743(NG)(VVP), 2008 WL 41445 (E.D.N.Y. 2008).......................................... 16

*Mees v. Buiter*,
793 F.3d 291 (2d Cir. 2015).................................................................................. 21, 25

*Persky v. Yeshiva Univ.*,
No. 01 CIV. 5278 (LMM), 2002 WL 31769704 (S.D.N.Y. Dec. 10, 2002) ............ 10, 13, 16

*PPM Am., Inc. v. Marriott Corp.*,
152 F.R.D. 32 (S.D.N.Y. 1993) ........................................................................... 10, 12

*Pugh v. Avis Rent A Car Sys., Inc.*,
No. M8-85, 1997 WL 669876 (S.D.N.Y. Oct. 28, 1997) .................................................... 16

*Quantlab Grp., LP v. Dempster*,
No. 4:18-CV-2171, 2019 WL 6913303 (S.D. Tex. Aug. 17, 2019) ....................................... 6

*Schoolcraft v. City of New York*,
No. 10 CIV. 6005 RWS, 2014 WL 1621480 (S.D.N.Y. Apr. 22, 2014).......................... 7, 14

*Seifts v. Consumer Health Sols. LLC*,
No. 05 CIV. 9355 ER LMS, 2015 WL 1069270 (S.D.N.Y. Mar. 11, 2015)........................ 12

*Sines v. Yiannopoulos*,
No. 20 MISC. 241 (KPF), 2020 WL 6058279 (S.D.N.Y. Oct. 14, 2020) ............................ 17

*Sommer v. PMEC Assocs. & Co.*,
No. 88 CIV. 2537 (JFK), 1991 WL 73858 (S.D.N.Y. May 1, 1991) .................................. 17

*The New York Times Co. v. Gonzales*,
459 F.3d 160 (2d Cir. 2006)........................................................................................ 18

*Tillack v. Belgium*,
App. No. 20477/05 (Eur. Ct. H.R. 2007)....................................................................... 22

*U.S. ex rel. Vuitton Et Fils S.A. v. Karen Bags, Inc.*,
600 F. Supp. 667 (S.D.N.Y. 1985) ............................................................................... 16

*United States v. Sanusi*,
813 F. Supp. 149 (E.D.N.Y. 1992) ........................................................................ 14, 18

*Universal Standard Inc. v. Target Corp.*,
331 F.R.D. 80 (S.D.N.Y. 2019) .......... 19

*von Bulow by Auersperg v. von Bulow*,
652 F. Supp. 823 (S.D.N.Y. 1986) .......... 10

*Voskuil v. The Netherlands*,
App. No. 64752/01 (Eur. Ct. H.R. 2007) .......... 22

**Statutes**

28 U.S.C. § 1746 .......... 12

**Rules**

Fed R. Evid. 501 .......... 18

Fed. R. Civ. P. 45(c)(3)(A)(iii) .......... 4

Fed. R. Civ. P. 45(e)(2) .......... 19

Applicant Eurasian Natural Resources Corporation Limited ("ENRC") respectfully submits this Memorandum of Law in Opposition to the Motion to Quash Subpoena or, in the Alternative, for a Protective Order ("Motion to Quash" or "Mot.") filed by Respondent HarperCollins Publishers, LLC ("HarperCollins" or "Respondent").

**INTRODUCTION**

The "word 'journalist' . . . is not an incantation that protects against the issuance of a subpoena." *In re Application of Chevron Corp.*, 736 F. Supp. 2d 773, 781 (S.D.N.Y. 2010). Yet, in in its Motion to Quash, Respondent attempts to do just that: quash ENRC's subpoena in its entirety by invoking the reporter's privilege despite Respondent's concession that this privilege does not even apply to all of the requested materials. There is no basis to quash the subpoena.

ENRC has been the victim of a years-long smear campaign orchestrated by its adversaries and competitors to prejudice public opinion against the company through false and defamatory statements and the use of the company's own misappropriated and distorted confidential information. These efforts have given rise to an interminable and harassing investigation by the U.K. Serious Frauds Office that, despite lasting nearly eight years, has resulted in no charges. The acts and misappropriations comprising this illegal campaign against ENRC are the subject of four ongoing litigations in the U.K. against, among others, ENRC's own lawyer, Neil Gerrard, who conspired with others to leak ENRC's confidential information to create a false pretext for the Serious Fraud Office's investigation. ENRC's confidential information, in a twisted and distorted form, has now found its way into a book by the author Tom Burgis which was published in the United States by the Respondent. In his book, Mr. Burgis identifies the individuals who misappropriated and stole ENRC's confidential information as his sources and discusses specific instances of ENRC's stolen confidential information, including letters, emails, a presentation, and a privileged and confidential legal memorandum provided to ENRC by Mr. Gerrard.

Through this Application, ENRC seeks materials in Respondent's possession confirming that the book's sources—the individuals responsible for stealing ENRC's information—provided ENRC's confidential information to Mr. Burgis, which he used to publish his book. These materials are not "confidential" as to ENRC because they belong to ENRC. The "sources" of information for Mr. Burgis's book are likewise not confidential because they are identified in the book and, in any event, ENRC has already identified and sued them in the U.K. Moreover, the discovery is highly relevant to the foreign proceedings. First, it is relevant to ongoing proceedings for breach of confidence against the individuals who stole or leaked ENRC's confidential information because it will establish liability and damages. Second, it is relevant to contemplated proceedings against Mr. Burgis because it will establish liability and damages for claims of breach of confidence against him and because it will rebut his defenses to ENRC's claims for defamation. ENRC also seeks discovery of the compensation paid to Mr. Burgis in order to establish damages for its claims—discovery that is not alleged to be protected by any privilege.

Such discovery is proper under Section 1782 and the Motion to Quash should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

As set forth fully in ENRC's Application, Doc. Nos. 2–4, ENRC has initiated four proceedings in the U.K. against individuals who misappropriated its confidential information (the "Ongoing Proceedings").[1] This information has been included in a book by Tom Burgis called "Kleptopia - How Dirty Money Is Conquering the World" (the "Book"), which was published in the United States by Respondent. ENRC seeks discovery from Respondent for use in the Ongoing

[1] These proceedings are discussed at pages 6–7 of ENRC's memorandum of law in support of its Application, Doc. No. 2, and include *Eurasian Natural Res. Corp. v. Mark Hollingsworth*, Claim No. BL-2019-001955; *Eurasian Natural Res. Corp. v. The Director of the Serious Fraud Office*, Claim No. BL-2019-000613 (the "SFO Proceeding"); *Eurasian Natural Res. Corp. v. Dechert LLP and David Neil Gerrard*, Claim No. CL-2017-000583 (the "Dechert Proceeding"); and *Eurasian Natural Res. Corp. v. Ake-Jean Qajygeldin*, Claim No. BL-2019-001377.

Proceedings and in contemplated proceedings against Mr. Burgis for breach of confidence (the "Burgis Proceeding" and collectively with the Ongoing Proceedings, the "Foreign Proceedings").

Since ENRC filed its Application, the claims it is preparing to bring in the Burgis Proceeding have expanded. On the same day ENRC filed its Application, Mr. Burgis published an article in the *Financial Times* entitled "FBI investigates deaths of mining executives in UK corruption probe," which contains defamatory statements, purportedly sourced from the Book, linking ENRC to serious criminal behavior. Supplemental Declaration of Niranjan Shanmuganathan ("Suppl. Shanmuganathan Decl.") ¶ 3. Later, on October 1, 2020, Mr. Burgis published a second article in the *Financial Times* titled "Silent witnesses: what do three corpses have to do with a corruption case?" which contains similar defamatory statements. *Id.* at ¶ 9. After a series of tweets repeating the defamatory allegations and promoting the Book, *id.* at ¶ 10, Mr. Burgis participated in an interview published on the *Financial Times* website which, again, contains the same defamatory statements, *id.* at ¶ 11. Accordingly, in addition to a claim for breach of confidence, ENRC is also preparing to bring a proceeding against Mr. Burgis, the *Financial Times*, and HarperCollins's U.K. affiliate for defamation.[2] *Id.* at ¶¶ 14–21.

On October 27, 2020, this Court permitted Respondent to file this Motion to Quash based on arguments that the Subpoena sought to reveal "confidential sources" protected by the "reporter's privilege." *See* Declaration of Laura R. Handman ("Handman Decl") Ex. G at 18:5–15. On November 12, 2020, in an attempt to avoid burdening the Court with unnecessary motion practice, ENRC served an Amended Subpoena which substantially narrowed ENRC's requests, eliminating all requests that would require identifying any of Mr. Burgis' confidential sources or

[2] That HarperCollins's affiliate is a party to a claim has no bearing on ENRC's application. *See* Doc. No. 2 at 15; *In re Top Matrix Holdings Ltd.*, No. 18 MISC. 465 (ER), 2020 WL 248716, at *5 (S.D.N.Y. Jan. 16, 2020) ("Notwithstanding the likelihood that Credit Suisse also has the requested information, Credit Suisse USA and Dougan have separate legal personalities, and neither is within the jurisdiction of the Swiss courts.").

any other sources not identified in (and thus made public by) the Book. *See* Handman Decl. Ex. E. The Amended Subpoena also eliminated requests for documents possessed by Respondent's European affiliate. On November 24, 2020, Respondent filed its Motion to Quash without acknowledging the Amended Subpoena or addressing its narrowed scope.

After reviewing HarperCollins's brief and conferring with its U.K. counsel, ENRC has decided to withdraw Amended Subpoena Request No. 1 in an abundance of caution to avoid any possibility that the request may require the disclosure of Mr. Burgis's confidential sources and because ENRC believes it may be able to obtain the same documents through discovery in the Burgis Proceedings. Accordingly, the topics of the Amended Subpoena that ENRC seeks discovery for is limited to the following requests:

- ENRC's own confidential material in Respondent's possession (Request No. 2);
- Communications between Mr. Burgis, defendants in the Foreign Proceedings, and co-conspirators whose identities are revealed in the Book (Requests Nos. 3–6);
- Any non-confidential or public-source material concerning ENRC that Respondent may have used to fact-check the Book (Request No. 7); and
- Discovery regarding Mr. Burgis's compensation (Requests Nos. 8 and 9).

## ARGUMENT

### I. Requests Nos. 8 and 9, Which Seek Information Concerning Mr. Burgis's Compensation, Do Not Implicate Any Privilege.

Respondent's omnibus Motion to Quash can be denied on the sole basis that Respondent has conceded that at least two of the requests in the Amended Subpoena do not implicate any privileged material whatsoever.[3] *See* Handman Decl. Ex. G at 7:14–17 ("The only thing that doesn't come within either of those privileges is the request for the amount of money paid to Mr. Burgis."). A motion to quash is proper only where the challenged subpoena "requires disclosure

[3] Respondent made no objection to the original Requests 8 and 9 based on privilege. Doc. No. 18-1 at 24–25.

of privileged or other protected matter and no exception or waiver applies." Fed. R. Civ. P. 45(c)(3)(A)(iii). It is undisputed that Requests Nos. 8 and 9, which seek discovery relating to Mr. Burgis's compensation for the Book, do not involve any material protected by any privilege. The Motion to Quash should therefore be denied. *See, e.g.*, *Ferrari v. Cty. of Suffolk*, No. CV104218JSGRB, 2012 WL 13109926, at *3 (E.D.N.Y. Feb. 14, 2012) (denying motion to quash, even though subpoena sought a subset of privileged material, and modifying subpoena instead to require production of only non-privileged material).

Acknowledging that Requests Nos. 8 and 9 seek relevant materials, Respondent argues that the discovery is "of limited" relevance to the Burgis Proceeding and would "require a protective order before any production could be ordered." Mot. at 20 n.8. Yet, that is not a basis to quash the Amended Subpoena. Having conceded that Mr. Burgis's compensation is relevant to the Burgis Proceeding, *see also* Suppl. Shanmuganathan Decl. ¶¶ 18–20, it must produce these materials regardless of its opinion that the relevance is "limited." Moreover, the materials are of obvious relevance to the Ongoing Proceedings as they may be used to establish and measure damages related to the breach of confidence arising from sharing and publishing ENRC's confidential information. Doc. No. 4, Declaration of Niranjan Shanmuganathan ("Shanmuganathan Decl.") ¶¶ 29–31. The materials may also demonstrate whether Mr. Burgis was paid by third parties to publish the Book as part of a negative PR campaign against ENRC. To the extent Mr. Burgis's compensation could be classified as proprietary (a showing Respondent nowhere makes beyond a conclusory assertion, *see* Mot. 20 n.8), a protective order governing the disclosure of that information is the appropriate solution. *See JPMorgan Chase Bank, N.A. v. Reifler*, No. 11 CIV. 4016 (DAB), 2016 WL 10570981, at *3 (S.D.N.Y. July 14, 2016) (affirming order compelling production of records, and rejecting respondent's argument that "a protective

order would be insufficient to protect its interests").

## II. Requests Nos. 2 and 7 Do Not Seek Confidential Information Protected by the Reporter's Privilege.

The Amended Subpoena also requests material that, even if subject to the reporter's privilege, cannot, under any circumstance, be considered confidential. Request No. 7 seeks only materials "that derive from or include non-confidential sources of information." Handman Decl. Ex. E. Request No. 2 seeks materials "that belong to, were derived from, or have ever been in the possession, custody, or control of ENRC." *Id.* ENRC's own information obviously is not "confidential" as to ENRC under the reporter's privilege. *See, e.g.*, *In re Ramaekers*, 33 F. Supp. 2d 312, 314 (S.D.N.Y. 1999) ("The audio tape is the paradigm of nonconfidential information because [the party] himself was the source."); *Quantlab Grp., LP v. Dempster*, No. 4:18-CV-2171, 2019 WL 6913303, at *4 (S.D. Tex. Aug. 17, 2019) ("[Documents] cannot be held confidential from Quantlab if they are Quantlab's own documents."). Request No. 2 names specific ENRC materials which the Book explicitly cites as sources, including "the February 28, 2008 presentation titled 'An Introduction to Ferrochrome,' the March 29, 2011 letter from Neil Gerrard, the May 22, 2011 email from Paul Judge, and the Dechert report on Kazakhstan." Handman Decl. Ex. E.

Requests Nos. 2 and 7 thus seek non-confidential materials which must be produced, notwithstanding the reporter's privilege, if they "are of likely relevance to a significant issue in the case, and are not reasonably obtainable from other available sources." *Chevron Corp. v. Berlinger*, 629 F.3d 297, 309 (2d Cir. 2011) (internal citations and quotations omitted).

### A. The Discovery Sought by Requests Nos. 2 and 7 Is Relevant to Significant Issues.

This discovery is of core relevance to the Foreign Proceedings. First, it will confirm that Respondent and Mr. Burgis possessed the same misappropriated ENRC material at issue in the Ongoing Proceedings, which is relevant to liability and damages in those proceedings.

Shanmuganathan Decl. ¶ 31. Second, the evidence is relevant to liability for breach of confidence in the Burgis Proceeding for the same reasons: it will establish that Mr. Burgis came into possession of, and misused, ENRC's confidential information. *Id.* ¶¶ 29–30. Third, the discovery is relevant to the defamation claims against Mr. Burgis because it will reveal the information available to him, his knowledge of the falsity of his defamatory statements, the extent to which he conducted "enquiries and checks" of such statements, and whether he was aware that his sources had "axes to grind" against ENRC—all of which is relevant to rebutting the Public Interest Defense to defamation in the U.K. Suppl. Shanmuganathan Decl. ¶ 19.

Instead of contesting relevance, Respondent argues that ENRC is relying on "general claims that the discovery is likely to contain relevant material." Mot. at 19. That is not a basis to quash the Amended Subpoena—if Respondent is not in possession of responsive materials, it should state as much. If it does not contest that the Amended Subpoena seeks relevant material, it cannot resist discovery. And ENRC has good reason to believe Respondent and Mr. Burgis have relevant material because the Book refers to and discusses the very confidential information that ENRC seeks to establish Mr. Burgis possessed and used for the Book. *See infra* at 14.

Nor is this discovery "cumulative" of evidence available in the Foreign Proceedings, as Respondent argues. Mot. at 20. First, the collateral undertaking rule prevents the use of any materials produced in any of the Foreign Proceedings in any other proceeding, so Respondent's argument that materials sought by the Amended Subpoena are cumulative across those proceedings fails. Suppl. Shanmuganathan Decl. ¶ 22. But even within each proceeding, evidence is only considered "cumulative" if it demonstrates a fact already established through other evidence. *Schoolcraft v. City of New York*, No. 10 CIV. 6005 RWS, 2014 WL 1621480, at *6 (S.D.N.Y. Apr. 22, 2014) (rejecting argument that evidence was cumulative of witness testimony

of the same facts because the evidence could be used to prove another, unrelated fact). For example, in *Gonzales* (cited by Respondent, Mot. at 10, 19), the moving party sought evidence relating to a police officer's stop of a journalist's car to support allegations that the police department engaged in a pattern of discriminatory conduct. *Gonzales v. Nat'l Broad. Co.*, 194 F.3d 29, 32 (2d Cir. 1999). Even though the movant had evidence of other stops to support their claim, the court rejected the argument that the evidence was cumulative and held that the reporter's privilege was overcome because "each additional instance of proof they could marshal was . . . significant." *Id.* Similarly, here, ENRC seeks evidence of an additional and completely unique instance of misuse of its confidential material—its publication in the Book—which is not cumulative of evidence of the original acts of misappropriation by the foreign defendants.

**B. The Discovery Is Not Reasonably Obtainable from Alternative Sources.**

Relevant, non-confidential material must be produced if it is not "reasonably obtainable" from other sources.[4] Requests Nos. 2 and 7 seeks to establish that Respondent was in *possession* of ENRC's own confidential material or other public and non-confidential information because the fact of Respondent's possession of these materials is evidence that such material was used or available to be used to publish and fact check the Book. When discovery is sought to establish the *fact of possession*, courts recognize that such discovery is not available from other sources. For example, in a similar case, *Aequitron Medical., Inc. v. CBS, Inc.*, a party sought material in the possession of CBS to show that CBS knew that its broadcast was defamatory, but chose to air it anyways. No. 93 CIV. 950 (DC), 1995 WL 406157, at *3 (S.D.N.Y. July 10, 1995). Holding that the reporter's privilege was overcome, Judge Chin noted that "while some of the requested

[4] HarperCollins argues that ENRC has failed "to examine the Book itself as an alternative source of discovery." Mot. at 20. Yet, ENRC *has* studied the Book closely, and quoted the Book's footnotes as evidence that Mr. Burgis is in possession of its confidential materials. If HarperCollins is arguing that the Book provides evidence of misappropriation, then it concedes that ENRC's confidential materials were used to publish the Book.

discovery may be available from other sources . . ., the point is whether defendants *had* the information." *Id.* This case is on all fours with *Aequitron*: ENRC seeks to demonstrate that Respondent "*had*" misappropriated material to establish liability for breach of confidence and to rebut defenses to defamation. Accordingly, the materials ENRC seeks are not obtainable from alternative sources because those sources cannot demonstrate Respondent's possession.

Respondent argues that ENRC can obtain and use the same materials through discovery in the foreign proceedings, Mot. at 17–18, but that is incorrect. As discussed above, material produced in the Foreign Proceedings is subject to the collateral undertaking rule, which prevents any materials produced in one proceeding from being used, in any manner, for any other purpose. Suppl. Shanmuganathan Decl. ¶ 22. This doctrine not only prevents ENRC from using evidence collected in one case as evidence in another case: it prevents ENRC from even reviewing materials produced in one case to determine whether they are relevant to another case and from characterizing discovery requests or the responses to those discovery requests.[5] *Id.* ¶ 23. ENRC further represents that the material sought by the Amended Subpoena is *not* obtainable through the Burgis Proceeding, *id.* ¶ 26, or the SFO and Dechert Proceedings, where a request for discovery of material potentially responsive to the Amended Subpoena was denied, *id*. ¶¶ 24–25.

Finally, Respondent makes the astonishing argument that ENRC can obtain this discovery from *reporters*—Mr. Burgis and Mark Hollingsworth.[6] Mot. at 16. But that would send ENRC in circles, from one reporter to the next, each of whom would invoke the reporter's privilege and point to the other as an alternative source. For this reason, other journalists are not considered

[5] ENRC does not concede that it failed to serve discovery requests that encompass materials sought by the Amended Subpoena or that materials responsive to the Amended Subpoena were produced in the Ongoing Proceedings.

[6] HarperCollins describes Mr. Hollingsworth as a "freelance journalist and author." Mot. at 24. ENRC does not take a position as to whether Mr. Hollingsworth is a journalist.

alternative sources for purposes of the reporter's privilege. *See, e.g.*, *In re Application of Shervin Pishevar*, 439 F. Supp. 3d 290, 306 (S.D.N.Y. 2020) ("[T]he Court finds that the information is not obtainable from other media sources (due to them also likely asserting the reporter's privilege.)"); *Don King Prods., Inc. v. Douglas*, 131 F.R.D. 421, 426 (S.D.N.Y. 1990) (finding evidence unobtainable when other reporters with knowledge, who are "equally free to invoke the reporter's privilege, are no more or less available"); *cf. Johnson v. City of New York*, No. 16CIV6426KAMVMS, 2018 WL 6727329, at *2 (E.D.N.Y. Dec. 21, 2018) (finding likelihood that a reporter would "assert her journalist privilege" left the respondent, another reporter, as the only available source of information).

Accordingly, there is no basis to quash Requests Nos. 2 and 7.

## III. Requests Nos. 3–6 Should Not Be Quashed Based on the Reporter's Privilege.

Amended Subpoena Requests Nos. 3–6 seek communications with narrow set of individuals identified in the Book, some explicitly as sources, who are members of the conspiracy at issue in the Foreign Proceedings. Respondent's invocation of the reporter's privilege for purportedly confidential information fails, first, because Respondent has not satisfied its burden to establish that the requested discovery is "confidential," and second, because even if the discovery were confidential, the privilege is overcome.

### A. Respondent Has Failed to Carry Its Burden to Show that Responsive Documents Are Confidential.

"It is the journalist's burden to demonstrate that the material he or she seeks to protect from disclosure is confidential." *In re Application of Chevron Corp.*, 709 F. Supp. 2d 283, 294 (S.D.N.Y. 2010); *see also von Bulow by Auersperg v. von Bulow*, 652 F. Supp. 823, 826 (S.D.N.Y. 1986) (quoting *In re Grand Jury Subpoena*, 750 F.2d 223, 224 (2d Cir. 1984)) ("[I]t is axiomatic that the burden is on a party claiming the protection of a privilege to establish those facts that are

essential elements of the privileged relationship."). Courts require sworn testimony that "*all of the sources*" that provided information "did so on the *express understanding* that their identities would remain confidential." *Persky v. Yeshiva Univ.*, No. 01 CIV. 5278 (LMM), 2002 WL 31769704, at *2 (S.D.N.Y. Dec. 10, 2002) (emphasis added); *see also Chevron Corp.*, 709 F. Supp. 2d at 294 (finding that "conclusory" assertion that party "entered into agreements with some of his sources" to keep material confidential did "not sustain[ ] his burden of establishing that any of the material sought is subject to any confidentiality agreement"); *PPM Am., Inc. v. Marriott Corp.*, 152 F.R.D. 32, 36 (S.D.N.Y. 1993) ("To state that the source 'has requested' and Daily Insights 'had agreed' to keep the identity of a source confidential is insufficient to show that there was a mutual agreement of confidentiality."); *Lipinski v. Skinner*, 781 F. Supp. 131, 136 (N.D.N.Y. 1991) (mere assertions in affidavit insufficient to carry burden of demonstrating confidentiality).

As an initial matter, Mr. Gerrard—the subject of Request No. 4—is not a confidential source according to the Book's "Note on Truth," which explicitly identifies an individual as a source if they are "described as thinking something" in the Book. Book at xi. The Book contains numerous descriptions of Mr. Gerrard "thinking something," thus identifying him as a source:

- "He knew next to nothing about the Trio – so little that a better-informed colleague was startled that he had taken on an investigation into their affairs. Immediately, Gerrard perceived that any notion that the Trio had surrendered control of ENRC when they floated a chunk of their shares on the London Stock Exchange was illusory." Book at 128.
- "Despite the obstruction, Neil Gerrard felt he was piecing together a picture of how the operation in Kazakhstan really worked. And he was starting to suspect that there was something altogether more sinister going on in the other part of the ENRC empire – in Africa." *Id.* at 135.
- "Could there have been another reason, Gerrard wondered, for such an expensive addition to Hanna's African operation." *Id.* at 279.[7]

[7] This is only a small subset of the characterizations of Mr. Gerrard's thoughts in the Book. *See also* Book at 133 ("As for where all that money was going, that was now the question that preoccupied Neil Gerrard."); *id.* at 135 ("Gerrard's team couldn't identify any favours that had been bestowed on the company in exchange for the

Accordingly, to the extent the Amended Subpoena seeks communications with Mr. Gerrard,[8] or any other source whose thoughts are described in the Book,[9] those individuals cannot be considered a confidential source, even under Mr. Burgis's own standard.[10]

With respect to the other individuals in Requests Nos. 3–6, each of which is identified in the Book but whose thoughts are not explicitly described,[11] the Book's conclusory "Note on Truth" stating that some of Mr. Burgis's sources spoke "on condition of anonymity" is insufficient to carry Respondent's burden of demonstrating that such sources acted under an express understanding of confidentiality. First, it is an unsworn conclusory statement, not evidence of any fact. *See* 28 U.S.C. § 1746; *Seifts v. Consumer Health Sols. LLC*, No. 05 CIV. 9355 ER LMS, 2015 WL 1069270, at *6 (S.D.N.Y. Mar. 11, 2015) (Ramos, *J.*) (holding that "unsworn" and "conclusory" letters "do not constitute evidence"). But even if the "Note on Truth" was admissible evidence, courts routinely require a much more specific showing of an explicit agreement to maintain confidentiality. For example, in *PPM America, Inc.*, Judge Conner held that a conclusory statement which simply asserted "[t]he source has requested and Daily Insights had agreed to keep

---

scholarship. But when they were shown documents purporting to authorise the award, they could tell that they were fakes. The team returned to London convinced there was more to be discovered."); *id.* at 173 ("That was, he thought, part of the job he had been hired to do."); *id.* at 276 ("Gerrard wanted to know more about him. He asked Evgeny Boyarov, a Russian-born Brit who handled the financials for Hanna's African dealings."); *id.* at 281 ("There was always a cover story, a paragraph or two of business jargon to justify the enormous expense. But Gerrard refused to suspend his disbelief."); *id.* at 284 ("That was the centre of the corruption that Neil Gerrard believed he had started to detect when he was fired, and which the Serious Fraud Office's investigators were now apparently pursuing."); *id.* at 285 ("During Neil Gerrard's investigation, he had been curious about what exactly McCormick did to earn his pay."

[8] The other persons named in Requests Nos. 3–6 are also recurring characters in the Book. For example, Akezhan Kazhegeldin (Request No. 5) appears at least 15 times, and Glenn Simpson (Request No. 6) appears at least 17 times.

[9] For example, Chapter 36 of the Book describes the thought process of several SFO investigators.

[10] Because Mr. Gerrard is identified as sources, materials responsive to Requests No. 4 are non-confidential. These materials meet the requirements to overcome the privilege for non-confidential information for the same reasons set forth *supra* at pp. 5–9: Respondent's possession of communications distributing ENRC's confidential material is relevant to ENRC's lawsuits for breach of confidence and defamation, and would support ENRC's claim that Mr. Burgis used such materials for the Book. The materials are not obtainable from another source because ENRC seeks to prove that *Respondent* possessed them—a fact that can only be proven through discovery produced by *Respondent*.

[11] That Mr. Burgis refers to the Book in his declaration does not convert that statement into a sworn testimony.

the identity of the source confidential," was "insufficient to show that there was a mutual agreement of confidentiality." 152 F.R.D. at 36. Similarly, in *Chevron Corp.*, the district court rejected a "conclusory" statement that a journalist had "entered into agreements" to keep video material confidential. 709 F. Supp. 2d at 294. The Second Circuit affirmed the court's holding that the party "did not sustain his burden of demonstrating information was conveyed to him in confidence," noting that he "did not submit corroborative evidence that the persons filmed demanded that the footage of them be held in confidence." *Chevron Corp. v. Berlinger*, 629 F.3d 297, 310 (2d Cir. 2011); *see also In re Grand Jury Subpoena Dated Jan. 4, 1984*, 750 F.2d 223, 225 (2d Cir. 1984) (finding assertion that respondent used "a variety of sources, many of whom were promised confidentiality" conclusory and insufficient).

Here, as in those cases, even if it were admissible, the "Note on Truth" is insufficient to demonstrate a relationship of confidentiality. First, it merely suggests an implied understanding of anonymity—it does not indicate there was a meeting of the minds or an "express understanding" of confidentiality, as required. *Persky* 2002 WL 31769704, at *2. Second, it is extremely vague. For example, it identifies someone as a non-confidential source if they are "described as thinking something" in the Book. Book at xi. Third, it does not state whether there were conditions on the purported assurance of confidentiality that may have been breached. *See Blum v. Schlegel*, 150 F.R.D. 42, 45 (W.D.N.Y. 1993) (rejecting claim of confidentiality when source was promised that information in article would not be publicized).

Accordingly, Mr. Gerrard is not a confidential source, and Respondent has not carried its burden to show that information was exchanged with an express understanding of confidentiality

**B. Even if Requests Nos. 3–6 Were Seeking Discovery of Confidential Sources, the Reporter's Privilege Is Overcome.**

Even if the sources other than Mr. Gerrard—who is identified as a source in the Book—

were deemed confidential, the privilege would still be overcome. The qualified reporter's privilege is overcome for confidential sources when the material is "highly material and relevant, necessary or critical to the maintenance of the claim, and not obtainable from other available sources." *In re Petroleum Prod. Antitrust Litig.*, 680 F.2d 5, 7 (2d Cir. 1982).

1. <u>ENRC Seeks Highly Material and Relevant Information.</u>

Courts find evidence to be "highly material and relevant" if it relates to the core issues and not a merely "peripheral aspect of this case." *Persky*, 2002 WL 31769704 at *3 (finding information about sources for an article written about the movant's lawsuit to be "highly material and relevant" because the sources were "people with knowledge" of relevant events); *see also Application of Waldholz*, No. 87 CIV. 4296 KMW, 1996 WL 389261, at *3 (S.D.N.Y. July 11, 1996) (same, because the movant "predicates defendants' liability in part" on the evidence); *Schoolcraft*, 2014 WL 1621480, at *6 (same, when evidence "related to the events surrounding . . . central issues to [movants'] claims"). Courts also find evidence to be "highly material and relevant" if it would be particularly useful to the claimant, even if it is cumulative of other means of proving the same fact. *See, e.g.*, *United States v. Sanusi*, 813 F. Supp. 149, 159–60 (E.D.N.Y. 1992) (finding videotape evidence to be highly material and relevant, even when the party would be able to make the claim without the tape, because of its "potential effect on a jury").

Instead of arguing that the materials ENRC seeks are irrelevant or immaterial, Respondent recycles its argument that ENRC is acting on a mere "hunch" that it possesses its confidential information. Mot. at 13. Again, that is not a valid basis to quash. If Respondent does not possess responsive materials, it should simply make that representation. If it does not contest that the Requests seek relevant material, it does not have grounds to resist discovery.

In any event, ENRC is acting on far more than a "hunch." ENRC has identified multiple categories of evidence that Mr. Burgis and HarperCollins possess. The Book *explicitly cites to*

*and quotes from* ENRC's confidential information. Respondent's string of citations to instances where public filings in the U.K. mention these documents, Mot. at 8 and n. 3, is not evidence that the *contents* of those documents, which appear in the Book, were already in the public domain. Indeed, just a few examples of information that is in the Book but was not already public is below:

- The Book cites to and describes, on numerous occasions, specific paragraphs of a privileged report prepared by ENRC's counsel which the Book calls the "Dechert Report on Kazakhstan" by paragraph number. *See, e.g.*, Book at 369 ("***Dechert report on Kazakhstan, par 3.60. The report also states that Farhad Ibragimov was later fired.***") (emphasis added). Respondent cites two public filings that reference the report, but those citations consist largely of simple references to the report without substantive description of its contents and without citations to numbered paragraphs or, e.g., Mr. Ibragimov.

- The Book describes Mr. Gerrard's fee and a warning that the fee "was preferable to the alternatives, which included the corporation being ejected from the stock exchange and its directors facing criminal charges." Book at 115. This information is not contained in any of the public filings cited by Respondent.

- The Book contains direct excerpts from a May 22, 2011 email from Paul Judge to ENRC's directors and officers, *see* Book at 107–08, while the public filing Respondent cites includes only the date and recipients of the email, and states that the email addressed "Mr. Mashkevich and his prospective role as a future chairman of the Claimant," Handman Decl., Ex. A, Annex C.2(8)(a)(ii).

The Book contains numerous other references to ENRC's non-public, confidential information that Respondent simply ignores, such as specific citations to private agreements, Book at 334, 421, and other private emails, *id.* at 387. For example, HarperCollins nowhere addresses Mr. Burgis's citation to and quotation from a February 28, 2008 presentation titled "An Introduction to Ferrochrome," which is named in the Amended Subpoena and not publicly available. *Id.* at 421.

ENRC has further reason to believe that Mr. Burgis is in possession of relevant material because of emails linking him to known recipients of ENRC's confidential information, including Mark Hollingsworth (the subject of Request No. 3 and a defendant in the Ongoing Proceedings), Phillip van Niekerk, and Alexander Yearsley. In one message, Mr. Hollingsworth commits to encouraging Mr. Burgis to participate in the smear campaign against ENRC and to publish

ENRC's confidential information:

> I read the FT story on Ablyazov – fascinating. Yes, I will try and get Tom Burgis to run the SFO and Belgium story because I know Tom.

Shanmuganathan Decl. Ex. 15. This same information appears to be in the Book (Mukhtar Ablyazov, a former Kazakh Minister for Energy, Industry, and Trade, appears over 350 times in the Book). ENRC has also identified an email from Mr. Burgis in which he discusses ENRC's confidential information with Mr. Yearsley. *Id.* Ex. 16. These emails and the Book's citation to specific pieces of ENRC's confidential information clearly rebut Respondent's argument that ENRC has put forth "no credible evidence" that Mr. Burgis possesses ENRC's confidential information. Mot. at 13. Because there is ample evidence that Respondent possesses relevant evidence, Respondent's cases on this point are all distinguishable.[12]

2. <u>The Discovery is Important to ENRC's Claims in the Foreign Proceedings.</u>

HarperCollins does not and cannot dispute that Requests Nos. 3–6 seek critical discovery that will confirm that Respondent and Mr. Burgis possessed ENRC's confidential information and is of significant relevance to the Ongoing Proceedings and contemplated claims for breach of confidence in the Burgis Proceeding. *See Persky*, 2002 WL 31769704, at *3 (finding "necessary and critical" standard satisfied when the "information alone might result in substantiation of plaintiff's claim" and "might be the only evidence" for a key fact). The materials are also "extremely relevant" to the contemplated defamation claims against Mr. Burgis because they will establish that he was aware of the falsity of his published statements and the extent of the

[12] Respondent's cases involve movants with *no evidence* that a responding party possesses relevant material. *See Lonegan v. Hasty*, No. CV04-2743(NG)(VVP), 2008 WL 41445, at *3 (E.D.N.Y. 2008) (finding that movant failed to show "that any relevant material exists"); *Pugh v. Avis Rent A Car Sys., Inc.*, No. M8-85, 1997 WL 669876, at *4 (S.D.N.Y. Oct. 28, 1997) ("Avis has pointed to no statement by anyone broadcast on 60 Minutes that would indicate that the nonbroadcast material contains [relevant material]."); *U.S. ex rel. Vuitton Et Fils S.A. v. Karen Bags, Inc.*, 600 F. Supp. 667, 671 (S.D.N.Y. 1985) (describing basis for belief that respondent possessed relevant information as a "non sequitur" "lacking a logical basis").

conducted "enquiries and checks" of such statements. Suppl. Shanmuganathan Decl. ¶ 18.

As to the necessity of the evidence to the Ongoing Proceedings, Mr. Burgis and HarperCollins are the only parties in possession of evidence that ENRC's misappropriated materials were actually *used* to publish the Book. Accordingly, ENRC's claim that the defendants in those proceedings caused damages attributable to publication of the Book "rises or falls" with the availability of evidence that the materials those parties misappropriated were shared with and used by HarperCollins. *In re Appl. to Quash Subpoena to National Broad. Co.*, 79 F.3d 346, 351 (2d Cir. 1996); *see also Sines v. Yiannopoulos*, No. 20 MISC. 241 (KPF), 2020 WL 6058279, at *6 (S.D.N.Y. Oct. 14, 2020) (holding that evidence was necessary and critical because it provides "strong proof of one of the key elements" of the movant's claim).

Respondent's argument that the evidence ENRC seeks must not be important to the Ongoing Proceedings because they have advanced without the evidence ignores that this evidence is necessary to the *specific claim* that ENRC's confidential materials were used to publish the Book. Respondent tries to invoke *Sommer* for the proposition that any evidence collected would be cumulative and only go to "one aspect of a larger course" of conduct, Mot. at 14, but that is a mischaracterization. The court in *Sommer* found that evidence was not "necessary or critical" to a claim because the movant had "fifteen other avenues in support of their allegations." *Sommer v. PMEC Assocs. & Co.*, No. 88 CIV. 2537 (JFK), 1991 WL 73858, at *2–3 (S.D.N.Y. May 1, 1991).

3. <u>The Discovery Is Not Obtainable from Other Available Sources.</u>

For the same reasons set forth *supra* at pp. 5–9, the materials responsive to Requests Nos. 3–6 are not obtainable from other available sources. ENRC seeks to prove that Respondent *possessed* communications with sources of ENRC's confidential information, a fact which cannot be demonstrated with discovery from other parties. Moreover, any evidence collected in the Foreign Proceedings is subject to the collateral undertaking rule which prevents ENRC from using

it in any other proceeding. Finally, ENRC has tried and failed to discover material responsive to the Amended Subpoena in the SFO and Dechert Proceedings.

### C. Any Confidential Information Can Be Redacted.

HarperCollins nowhere acknowledges that many of its purported concerns can be addressed through simple redactions should the court rule that ENRC is entitled only to *non*-confidential material. *See The New York Times Co. v. Gonzales*, 459 F.3d 160, 170–71 (2d Cir. 2006) ("Our caselaw regarding disclosure of sources by reporters provides ample support for redacting materials that might involve confidential sources."); *In re Grand Jury Subpoenas Dated March 19, 2002 and August 2, 2002*, 318 F.3d 379, 386 (2d Cir. 2003) (noting that in camera review is "a practice both long-standing and routine in cases involving claims of privilege"); *cf. Sanusi*, 813 F. Supp. at 161 ("CBS is permitted to obscure the identity of a confidential source.").

## IV. Mr. Burgis's Communications with Respondent's Counsel Are Not Privileged, and Respondent Must Provide a Privilege Log.

Respondent argues that some communications between Mr. Burgis and Respondent's counsel are privileged, but even if Respondent was correct—and it is not—that is not a reason to quash the Amended Subpoena. As a preliminary matter, communications between Mr. Burgis and Respondent's counsel are not privileged because Mr. Burgis is a third party that would break the privilege between HarperCollins and its attorneys. *See In re Horowitz*, 482 F.2d 72, 81 (2d Cir. 1973). Respondent relies on *Berisha v. Lawson*, but that case interpreted New York law, 973 F.3d 1304, 1319 (11th Cir. 2020), and federal common law governs Respondent's privilege claims, Fed R. Evid. 501. And *Berisha* is inconsistent with federal common law because it extended the attorney-client privilege to a third party when its relationship with the privilege bearer did "not bear many of the hallmarks of a traditional employer-employee relationship." 973 F.3d at 1319. Courts in the Second Circuit, in contrast, extend the attorney-client privilege only where "by virtue

of assuming the functions and duties of a full-time employee, the [third party] is a *de facto* employee of the company." *Universal Standard Inc. v. Target Corp.*, 331 F.R.D. 80, 89 (S.D.N.Y. 2019) (collecting cases). Respondent's privilege thus was not extended to Mr. Burgis.[13]

More importantly, Respondent is attempting to use a sweeping assertion of privilege to avoid its obligation to supply a privilege log as required by federal and local rules. *See, e.g.*, Fed. R. Civ. P. 45(e)(2) (when withholding on the basis of privilege, party "must expressly make the claim" and "describe the nature of the withheld" information to "enable the parties to assess the claim"). Respondent should be required to log *any* privilege it asserts, including the reporter's privilege, which is "qualified" and "does not foreclose the issuance of compulsory process to journalists or excuse them from demonstrating" that "the privilege applies to particular documents or information in question." *In re Application of Chevron Corp.*, 736 F. Supp. 2d at 781. As ENRC argued at the pre-motion conference, Handman Decl. Ex. G at 13–14, a privilege log is necessary here because "without knowing more about the particulars of the individual documents and events as to which [respondent] claims privilege, it is impossible to make an informed determination as to whether in fact the elements of the privilege have been made out, let alone to permit [petitioner] to seek to overcome any such privilege, as is its right." *In re Application of Chevron Corp.*, 736 F. Supp. 2d at 782; *see also Am. Sav. Bank, FSB v. UBS Painewebber, Inc.*, No. M8-85, 2002 WL 31833223, at *2 (S.D.N.Y. Dec. 16, 2002) (finding "refusal to produce a log and assertion of a blanket [reporter's] privilege an unreasonable course of action").[14]

Instead of providing a privilege log or specifically addressing which documents in its

---

[13] Respondent's second case is even farther afield: there, a client met with a potential codefendant for the purpose of preparing a "joint defense" for an "anticipated lawsuit." *Davis v. Costa-Gavras*, 580 F. Supp. 1082, 1098-99 (S.D.N.Y. 1984). Respondent does not argue that that any communications were made under such circumstances.

[14] Nor is this failure justified by any purported burden, which Respondent does not even attempt to describe. Rather, it tries to have it both ways, arguing that it had "limited involvement in the drafting and review of the Book," Mot. at 3, while also arguing that logging the documents it possesses would be an undue burden, *id.* at 25.

possession are privileged, Respondent has forced ENRC to guess and rely on Respondent's unsworn and internally contradictory account of the responsive documents it possesses. For example, Respondent has not described the responsive, allegedly attorney-client privileged communications between Mr. Burgis and Respondent's counsel, and ENRC cannot know, e.g., whether additional third parties besides Mr. Burgis broke privilege. Respondent also asks ENRC and this Court to rely on conclusory and unsworn assertions that Mr. Burgis preserved confidentiality, again providing no means of confirming whether third parties that would break confidentiality are included on email exchanges. And ENRC is precluded from making specific arguments about redacting confidential information because it has no idea, for example, whether there are emails mentioning a confidential source that can be easily redacted.

Accordingly, Respondent's assertion of privilege is groundless and not a reason to quash the Amended Subpoena. Rather, this Court should require Respondent to provide a privilege log.

## V. The *Intel* Factors Uniformly Favor Granting Discovery.

Respondent concedes all *Intel* factors except the third and fourth factors discussed below.

### A. The Third *Intel* Factor Favors Discovery.

Respondent and Amicus Curiae ("Amicus") fail to mount a serious claim that the Application "conceals an attempt to circumvent foreign proof-gathering restrictions." Mot. at 23. To carry this burden, Respondent must provide "authoritative proof" that the foreign court would reject all discovery collected by means of Section 1782. *In re Application for an Order Permitting Metallgesellschaft AG to take Discovery*, 121 F.3d 77, 80 (2d Cir. 1997). It has not done that.

Respondent's arguments relating to the availability of third-party discovery in the U.K. misapprehend the third *Intel* factor. The Supreme Court's decision in *Intel v. Advanced Micro Devices, Inc.* explicitly rejected the notion that Section 1782 imposes a blanket "foreign discoverability rule" barring 1782 discovery if an applicant "would not be able to obtain the

documents if they were located in a foreign jurisdiction." 542 U.S. 241, 259–60 (2004). The Court noted that "[a] foreign nation may limit discovery within its domain for reasons peculiar to its own legal practices, culture, or traditions—reasons that do not necessarily signal objection to aid from United States federal courts." *Id.* at 261. The Second Circuit has also been clear on this point: "a § 1782 application should not be rejected on the ground that the discovery would not be available in the foreign proceedings." *Mees v. Buiter*, 793 F.3d 291, at 303 n.20 (2d Cir. 2015). Respondent's own case concedes this point, too. *See* Mot. at 24 (citing *In re Tiberius Grp. AG*, No. 19-MC-467 (VSB), 2020 WL 1140784, at *5 (S.D.N.Y. Mar. 6, 2020) ("[C]ourts routinely grant § 1782 applications where the discovery sought might not be available in the foreign legal system, but is not explicitly prohibited from being acquired by way of a § 1782 application.")).[15]

As to the applicability of U.K. privileges, ENRC has provided a declaration from Mr. Shanmuganathan, an English intellectual property and media lawyer, Shanmuganathan Decl. ¶ 1, who explained that the qualified reporter's privilege in the U.K. is subject to numerous exceptions and does not shield the discovery sought in this action, *id.* ¶ 36. In a supplemental declaration, Mr. Shanmuganathan again explains that Article 10 "would not prevent the discovery of materials responsive to the Amended Subpoena" for a host of reasons. Suppl. Shanmuganathan Decl. ¶ 27. First, U.K. courts routinely hold that a party's right to a fair trial, itself a matter of public interest, override a journalist's entitlement under Article 10. *Id.* ¶ 27(b). Second, ENRC seeks information relating to allegations that ENRC was involved in very serious criminal behavior, and the right to disclosure in these circumstances is much stronger than in the cases cited by Respondent and Amicus which relate only to commercial information. *Id.* ¶ 27(d). Third, the bad faith and

[15] Respondent's other case, *In re Postalis*, No. 18-MC-497 (JGK), 2018 WL 6725406 (S.D.N.Y. Dec. 20, 2018), is also off point: there, the court held that an application circumvented *domestic* proof-gathering restrictions. *Id.* at *6.

potential financial gain of the leaking parties militates in favor of disclosure. *Id.* ¶ 27(e).

Neither Amicus nor Respondent acknowledge, let alone contest, these or the points made in Mr. Shanmuganathan's original declaration. Instead, they supply generic summaries of the U.K. reporter's privilege and out-of-context quotes from decisions of European courts.[16] However, these decisions are inapposite because they involved "unmasking" requests that sought to ascertain the identity of an unknown party.[17] In contrast, ENRC seeks *its own materials* from parties *it has already identified* and who are identified in the Book as sources. Moreover, examination of these foreign cases yields little of value to Respondent. For example, *Goodwin v. UK* is inapposite because there, a divided court reversed an order requiring disclosure of a journalist's sources because the justification for the order—damages caused by potential publication of confidential information—was mooted by an injunction preventing publication of the information. App. No. 17488/90, 22 Eur. Ct. H.R. 123 [41–42] (Mar. 27, 1996).

This effort to vaguely invoke foreign privileges to quash the Amended Subpoena is insufficient in its own right, but especially in light of the Second Circuit's clear instruction to avoid "speculative forays into legal territories unfamiliar to federal judges" and "unduly expensive and time-consuming fight[s] about foreign law." *Metallgesellschaft AG*, 121 F.3d at 80 (cleaned up). In fact, this case resembles *Metallgesellschaft*: there, the respondent sought to avoid Section 1782 by proffering an "ambiguous affidavit" from a German lawyer and claiming "a privilege under

[16] For example, Amicus's quotation from the UN Special Rapporteur for Freedom of Expression in *Becker v. Norway* was in reference to Article 19 of the International Covenant on Civil and Political Rights, which is neither a statement from an English court nor a comment on Article 10. *See* Suppl. Shanmuganathan Decl. ¶ 27(f).

[17] *See Becker v. Norway*, App. No. 21272/12, ¶ 3 (Eur. Ct. H.R. 2017) (noting that party sought relief from compulsion "to give evidence that would have enabled one or more journalistic sources to be identified"); *Tillack v. Belgium*, App. No. 20477/05, ¶ 64 (Eur. Ct. H.R. 2007) (noting that purpose of unlawful raid was to ascertain "the identity of the person responsible for disclosing the confidential information"); *Voskuil v. The Netherlands*, App. No. 64752/01, ¶ 3 (Eur. Ct. H.R. 2007) (noting that applicant sought relief from "an order for his detention intended to compel him to disclose the identity of an informant").

German law entitling him to refuse to comply with a discovery order." *Id.* The Second Circuit forcefully rejected this attempt, and instructed that "absent authoritative proof that a foreign tribunal would reject the evidence obtained," "a district court should not refrain from granting the assistance afforded under [Section 1782] based simply on allegations" "of a violation of the alleged privilege." *Id.* Here, Respondent has not proffered an ambiguous affidavit, much less "authoritative proof" that the discovery ENRC seeks would be rejected in the U.K.

Accordingly, the third *Intel* factor favors discovery.

### B. The Fourth *Intel* Factor Favors Discovery

Neither Respondent nor Amicus demonstrate that the fourth *Intel* factor, which asks whether the discovery is "unduly intrusive or burdensome," disfavors discovery. Their arguments reiterate claims about the reporter's privilege, which fail for the reasons above. Respondent then states that ENRC's requests "are clearly unduly burdensome." Mot. at 25.

These conclusory allegations are not sufficient. Respondent "cannot merely assert that compliance with the subpoena would be burdensome without setting forth the manner and extent of the burden . . . and the probable negative consequences of insisting on compliance." *In re Ex Parte Application of Kleimar N.V.*, 220 F. Supp. 3d 517, 522 (S.D.N.Y. 2016) (internal citation and quotation marks omitted); *see also Caines v. City of New York*, No. 01 Civ. 7229 (RCC)(DFE), 2003 WL 151993, at *1 n.1 (S.D.N.Y. Jan. 21, 2003) (finding that a "conclusory assertion of burdensomeness is entitled to no weight whatsoever") (internal citation and quotation marks omitted). Respondent does not claim, for example, that its production would be voluminous, or that responsive documents would be difficult to access. Put simply, Respondent offers no information whatsoever to support its argument that compliance would be burdensome. Moreover, Respondent has already represented that it had "limited involvement in the drafting and review of the Book," Mot. at 3, leaving little room to argue that compliance would be unduly burdensome.

Amicus's argument that the Court should exercise its discretion because the requested discovery burdens the "right to speak anonymously," Doc. No. 29-1 ("Amicus Br.") at 11, fails for the simple reasons that the relevant sources are not "anonymous," but rather publicly identified as sources in the Book itself. Because these individuals are already known to have misappropriated ENRC's confidential information, the reasons for the reporter's privilege—the concern for the anonymity and effective news-gathering, as expressed by Amicus, *see id.* at 2–6—simply do not apply here. And because the material sought is *ENRC's own confidential information*, any concern for the confidentiality of newsgathering materials is significantly diminished. Additionally, the argument that any First Amendment concerns "are at their apex" because ENRC's foreign causes of action are not available in the United States, *id.* at 12, is inapplicable because ENRC is preparing a defamation claim against Mr. Burgis—a claim equally available in the United States.

Amicus's argument that ENRC's discovery requests are inconsistent with the statutory purpose of Section 1782 is misplaced. *Id.* ENRC's requests are entirely consistent with the "twin aims" of Section 1782: "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 244 (2d Cir. 2018) (quoting *Metallgesellschaft*, 121 F.3d at 79) (internal quotation marks omitted)). On the contrary, Amicus asks this Court to contravene clear Supreme Court guidance that courts should not impose limitations on discovery "for reasons peculiar to [a nation's] own legal practices, culture, or traditions." *Intel* 542 U.S. at 261. The argument that the Application "encourage[s] foreign countries to provide assistance our courts would not accept," Amicus Br. at 12, makes no sense: ENRC is not arguing that reporter's privileges are wholly inapplicable because the material is being sought for a U.K. proceeding. Rather, ENRC argues that Respondent has

failed to set forth a valid basis to invoke those privileges and that they have been overcome.

With no serious argument from Respondent, the fourth *Intel* factor favors discovery.

**C. Respondent's Claim of Harassment Is Unsubstantiated, False, and Irrelevant.**

Finally, Respondent asks the Court to hold that the Burgis Proceeding is "not viable" under U.K. law, and, therefore, that the Application was made "in bad faith or for the purpose of harassment." *Id*. This argument fails on numerous grounds. First, the Supreme Court and the Second Circuit have repeatedly cautioned courts against applying tests that "require interpretation and analysis of foreign law" because such inquiries "can be fraught with danger." *Mees*, 793 F.3d at 298 (quoting *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012)); *see also Intel*, 524 U.S. at 263. Second, even if this Court were to consider Respondent's "viability" argument, it would fail. Respondent provides no authority to support its baseless claims about U.K. law or to contest Mr. Shanmuganathan's testimony that "ENRC has a viable claim for breach of confidence against Mr. Burgis." Shanmuganathan Decl. ¶ 26. Third, even if the Court excused these deficiencies, Respondent does not address any of the Ongoing Proceedings for which the Application also seeks discovery, all of which are live and pending in the U.K.

None of Respondent's cases support its position. *Postalis* found bad faith where an applicant had publicly admitted that it sought discovery for use in the United States, *not* a foreign proceeding. 2018 WL 6725406, at *5. *In re Tiberius* actually *rejected* the argument that discovery was sought for an improper purpose, as the respondent did not "point to any specific evidence" supporting that claim. 2020 WL 1140784, at *5. Here, similarly, Respondent points to no specific evidence substantiating its "harassment claim," and its argument should be rejected.

## CONCLUSION

For the reasons set forth above, the Court should deny Respondent's motion to quash.

Dated: January 18, 2021

Respectfully submitted,

*Duane L. Loft*
Duane L. Loft
Joanna Wright
Mark W. Kelley
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
(t) +1 212 446 2300
(f) +1 212 446 2380

*Attorneys for Applicant Eurasian Natural Resources Corporation Ltd.*