UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK
---------------------------------------------------------------------------x
IN RE: EX PARTE APPLICATION OF
EURASIAN NATURAL RESOURCES
CORPORATION LIMITED PURSUANT TO 28
U.S.C. § 1782 FOR LEAVE TO TAKE
DISCOVERY FOR USE IN FOREIGN
PROCEEDINGS

Applicant.
---------------------------------------------------------------------------x

Case No. 1:20-mc-00312-ER

Hon. Edgardo Ramos

ORAL ARGUMENT REQUESTED

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF RESPONDENT HARPERCOLLINS PUBLISHERS, LLC TO QUASH SUBPOENA OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER

Laura R. Handman
Jeremy A. Chase
Chelsea T. Kelly
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, NY 10020-1104
Tel: (212) 489-8230
Fax: (212) 489-8340
laurahandman@dwt.com
jeremychase@dwt.com
chelseakelly@dwt.com

*Attorneys for Respondent HarperCollins Publishers, LLC*

# INTRODUCTION[1]

Petitioner ENRC's Opposition erases any doubt that its true purpose in commencing this action was to intimidate and harass its critics in the media. Upon realizing that it could not overcome the high burden imposed by the federal reporters' privilege, ENRC dropped the heart of its Amended Subpoena—its request for all the drafts and manuscripts of Mr. Burgis's book. As HarperCollins-US made clear in its Motion, it had limited involvement in the drafting and review of the Book, given that HarperCollins-UK was the primary publisher. Thus, now that ENRC no longer seeks drafts and manuscripts, HarperCollins-US has ascertained that it possesses *only one* document responsive to the Amended Subpoena—a publishing contract between itself and the author that includes the terms of his compensation for the publication of the Book in the U.S. However, as set forth below, this document is not *even remotely* relevant to ENRC's ongoing or contemplated proceedings in the UK. Indeed, the accompanying declaration of Guy Luke Vassall-Adams QC, an expert in British media and information law, demonstrates that the contract is not relevant to any issue in ENRC's pending breach-of-confidence actions, nor to its anticipated defamation case against Mr. Burgis and HarperCollins-UK. It also appears that ENRC does not even have standing to sue for defamation in the UK—as the company is apparently controlled by the Kazakh state. Despite all this, ENRC has still refused to withdraw its Amended Subpoena.

This action is about much more than just whether HarperCollins-US should disclose a single document. Allowing ENRC to obtain a wholly irrelevant and highly confidential document pursuant to § 1782 in service of an international campaign of harassment and intimidation against journalists and those who have exposed its misconduct and corruption would set a dangerous precedent. It would encourage predatory well-financed foreign entities, like ENRC, to file

---

[1] For ease of reference, HarperCollins-US uses the same abbreviations in this reply brief as in its opening motion.

1

meritless and expensive 28 U.S.C. § 1782 applications as a means of pressuring U.S. companies and individuals who displease them. Indeed, courts have cautioned against allowing § 1782 petitioners to twist the statute—which was intended as an "efficient means of assistance to participants in international litigation"—into a vehicle for harassment or "an overly broad fishing expedition." *In re Asia Mar. Pac. Ltd.*, 253 F. Supp. 3d 701, 705 (S.D.N.Y. 2015). Where, as here, the discovery requested is clearly irrelevant or even "only marginally relevant to the foreign proceeding," courts have seen that as an indication that the § 1782 application "'is made in bad faith, for the purpose of harassment' . . . , which would be grounds for a discretionary denial of discovery." *Mees v. Buiter*, 793 F.3d 291, 299 n.10 (2d Cir. 2015) (internal citation omitted). Courts have also denied requests for irrelevant § 1782 discovery on statutory grounds, because "it is difficult to conceive how information that is plainly irrelevant to the foreign proceeding could be said to be 'for use' in that proceeding." *Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 120 n.7 (2d Cir. 2015).

HarperCollins-US asks the Court to see ENRC's discovery request for what it is—a relentless attempt to intimidate an American publisher and British author via expensive legal warfare across multiple continents. Because the only document at issue, the contract, is wholly irrelevant to the foreign proceedings, the Court should grant the motion and quash the Amended Subpoena.

## **FACTUAL BACKGROUND**[2]

Upon reviewing ENRC's Opposition (ECF No. 33), counsel for HarperCollins-US performed a search of relevant custodial data and ascertained that HarperCollins-US possessed no documents responsive to Request Nos. 2-7 of the Amended Subpoena (*i.e.*, documents from

---

[2] This section incorporates by reference the Background from HarperCollins-US' opening Motion to Quash (ECF No. 24 at 2-9), and includes only facts that have occurred since the filing of that Motion.

2

ENRC, communications with the defendants in ENRC's UK lawsuits or other named third-parties, and communications received "to fact-check or perform due diligence on the Book"). Decl. of Laura Handman ¶ 2. Regarding Request Nos. 8-9 (documents regarding compensation that Mr. Burgis received in connection with the publication and sale of the Book), counsel learned that HarperCollins-US maintains a copy of its publishing contract with Mr. Burgis, which sets forth the terms of his compensation for the Book's publication in the U.S (hereinafter, the "Contract"). *See id.* ¶ 3. Counsel later learned that a statement of royalties from sales of the Book will be sent to Mr. Burgis in April 2021, but that this statement has not yet been created. *See id.* ¶ 4. However, beyond the Contract and the royalties data, HarperCollins-US possessed nothing responsive to the Amended Subpoena. *See id.*

Upon learning these facts, on January 27, 2021, counsel for HarperCollins-US contacted counsel for ENRC to discuss whether ENRC would be willing to withdraw its Amended Subpoena given that: (1) HarperCollins-US possessed no documents responsive to Request Nos. 2-7; and (2) information regarding the compensation that HarperCollins-US paid Mr. Burgis to publish the Book is both irrelevant and highly confidential. *See id.* ¶ 5. On February 2, 2021, counsel for ENRC rejected the request to withdraw the Amended Subpoena, maintaining that ENRC still wanted HarperCollins-US to produce the Contract, although they had not articulated a basis for its relevance to the ongoing or contemplated proceedings, aside from vague and unsubstantiated references to "damages." *See id.* ¶ 6.

Separately, on January 21, 2021, ENRC's UK counsel sent HarperCollins-UK and Mr. Burgis a pre-action letter informing them of ENRC's impending filing of a defamation lawsuit against them in the UK arising from the Book. *See* Ex. 1 to Handman Decl. The pre-action letter did not state a claim for breach of confidence, only defamation. *See id.* In preparing their response

to the pre-action letter, HarperCollins-UK's counsel reviewed ENRC's publicly available corporate records and discovered that up to 50% of ENRC's shares appear to be held by the Kazakh state, with additional involvement from Russia. *See* Ex. 2 to Handman Decl. at 4, 10. With this knowledge, on February 11, 2021, HarperCollins-UK's counsel responded to ENRC's letter, informing ENRC that it does not have standing to bring a defamation action in the UK because, under British law, a corporation subject to state control qualifies as a governmental body, which does not have the capacity to sue for defamation. *See id.* (hereinafter, the "Response Letter") at 4. HarperCollins-US' counsel forwarded the Response Letter to ENRC's US counsel, and requested once again that ENRC withdraw its § 1782 application, or at a minimum, consent to stay the proceeding until a UK court could rule on whether ENRC has a viable basis to invoke the jurisdiction of the UK courts. Handman Decl. ¶ 9. On February 12, 2021, ENRC rejected that request. *See id.* ¶ 10.

## ARGUMENT

Because the only document at issue, the Contract, is entirely irrelevant to the UK proceedings, the Court should quash the Amended Subpoena on two grounds: (1) the requested discovery fails to satisfy the statutory requirements of § 1782, as it is not "for use" in a foreign proceeding; and (2) the discretionary *Intel* factors also counsel against forced disclosure of a wholly irrelevant and proprietary document.[3]

### I. ENRC'S REQUESTED DISCOVERY OF THE CONTRACT FAILS TO SATISFY THE STATUTORY REQUIREMENTS OF § 1782.

---

[3] The Contract's irrelevance also requires quashing the Amended Subpoena under Federal Rules of Civil Procedure 45 and 26. *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02 Civ. 3400 WCC, 2006 WL 2642192, at *2 (S.D.N.Y. Sept. 13, 2006) (granting plaintiff's motion to quash subpoenas where the court "determined that the[ ] documents are not likely to lead to the discovery of relevant evidence"); *see also During v. City Univ. of N.Y.*, No. 05 Civ. 6992(RCC), 2006 WL 2192843, at *2 (S.D.N.Y. Aug. 1, 2006) ("Subpoenas issued under Rule 45 of the Federal Rules of Civil Procedure are subject to Rule 26(b)(1)'s overriding relevance requirement.").

Under 28 U.S.C. § 1782, parties are only allowed to seek discovery in the U.S. when three statutory requirements are met: "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign [or international] tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *Brandi–Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012). The Second Circuit has opined that courts may consider the relevance of the requested discovery in considering whether the second requirement—the "for use" factor—is met, because "it is difficult to conceive how information that is plainly irrelevant to the foreign proceeding could be said to be 'for use' in that proceeding." *Certain Funds*, 798 F.3d at 120 n.7. Indeed, in determining whether the requested discovery is "for use" in a foreign proceeding, a § 1782 applicant must demonstrate that the evidence sought is "something that will be employed with some advantage or serve some use in the proceeding." *Mees*, 793 F.3d at 298. "Put differently, discovery is 'for use' in a foreign proceeding if it is relevant to the subject matter of the proceeding, and the evidence would 'increase [the applicant's] chances of success' in the proceeding." *In re Asia Mar. Pac. Ltd.*, 253 F. Supp. 3d at 705.

Accordingly, U.S. courts have repeatedly denied § 1782 applications upon determining that an applicant's requested discovery was not remotely relevant to the foreign proceedings, and thus could not be "for use" in those proceedings. *See, e.g.*, *In re Escallón*, 323 F. Supp. 3d 552, 559 (S.D.N.Y. 2018) ("Petitioner's discovery request appears to be little more than a fishing expedition to acquire documents and information that have at best limited relevance to the Colombian Proceedings. Petitioner has therefore failed to show that the requested discovery is 'for use' in foreign proceedings as required by § 1782, and his application must be denied on statutory grounds."); *see also In re Schlich for Order to Take Discovery Pursuant to 28 U.S.C. § 1782*, No.

16-MC-319 (VSB), 2017 WL 4155405, at *6 (S.D.N.Y. Sept. 18, 2017) (denying § 1782 application upon concluding that "the material sought is plainly irrelevant to the foreign proceeding and not 'for use' in a foreign proceeding within the meaning of § 1782"); *In re Sargeant*, 278 F. Supp. 3d 814, 821 n.4 (S.D.N.Y. 2017) ("Given the facial irrelevance of the merits underlying the Novoship actions, it is unlikely that they can be 'for use' in the Panamanian proceeding."). The Court should reach the same result here. Mr. Burgis's compensation information is plainly not relevant to any issue in ENRC's ongoing UK lawsuits, nor to its contemplated defamation proceeding against Mr. Burgis or HarperCollins-UK. ENRC has put forth no authority to the contrary—nor can it. Instead, it makes two baseless arguments in its Opposition, neither of which hold water.

**First**, it argues, without support, that "the [compensation] materials are of obvious relevance to the Ongoing Proceedings as they may be used to establish and measure damages related to the breach of confidence arising from sharing and publishing ENRC's confidential information." Opp. at 5. It also cites to its § 1782 Application, which claimed that "information regarding Mr. Burgis's compensation in connection with publication and sale of the book . . . will be useful for establishing and measuring damages against Mr. Burgis in the Burgis Proceeding." *Id.* (citing ECF No. 4 at ¶ 30). However, ENRC cites *no* authority for these groundless assertions, and for good reason—they are inaccurate.

HarperCollins-US engaged an expert in UK law to analyze ENRC's claims that information regarding Mr. Burgis's compensation arising from the Book's publication in the US could be relevant to: (1) a contemplated defamation claim against Mr. Burgis or HarperCollins-UK in the UK; or (2) the ongoing breach-of-confidence actions against third parties in the UK. *See generally* Decl. of Guy Luke Vassall-Adams. Mr. Vassall-Adams has been a practicing

6

barrister for 20 years, and specializes in Media and Information Law, including defamation. *See id.* ¶¶ 2-3. He was appointed as a Queen's Counsel in 2016, and has appeared in numerous media law cases, including four cases in England's highest court. *See id.* Mr. Vassall-Adams opined that the Contract cannot possibly be relevant to damages in the anticipated defamation action because, similar to the US, in the UK, "general damages in libel compensate for injury to reputation, hurt feelings and the award of a sum to vindicate the claimant's reputation to the world." *Id.* ¶ 28. He noted that special damages "may also be available as part of general damages, although they are rare in practice, where the claimant can attribute specific financial losses to the libel." *Id.* In any event, the Contract is not relevant to any of these matters and "its contents would not assist the Court in deciding the appropriate quantum of damages or other relief . . . ." *Id.*

Mr. Vassall-Adams also attested that the Contract would not be relevant to a UK court's determination of damages in the ongoing breach-of-confidence actions in the UK. *See id.* ¶¶ 29-32. He noted that, under UK law, if ENRC succeeds in establishing liability against those defendants, "the damages awarded in those claims will relate to the breaches of confidence committed by those persons, not the actions of Mr. Burgis." *See id.* ¶ 30. He explains the range of ways in which UK courts determine damages in these actions and states that, "there is in my view no basis on which a Court could properly conclude that what Mr Burgis was paid in the contract is of any relevance to damages in the Ongoing Proceedings . . . ." *Id.* ¶ 32.

**Second**, ENRC makes several highly offensive and meritless suggestions that the compensation information is also relevant because Mr. Burgis might have been "paid by third parties to publish the Book as part of a negative PR campaign against ENRC." Opp. at 5; *see also* ECF No. 34 ¶ 20 (arguing that "Mr. Burgis's compensation and who he received it from is also . . . relevant to determining whether he had a reasonable belief that publication of the Allegations

7

was in the public interest, particularly if those who paid him also had axes to grind against ENRC"). This patently false and unfounded allegation hardly merits a response. However, even if the libelous accusation was true (it is not), this claim still fails because the Contract at issue only includes the terms of Mr. Burgis's compensation from HarperCollins-US—not from any alleged "third parties."[4] Handman Decl. ¶ 11. That fact alone should dispose of this argument.

Additionally, it is impossible to see how the Contract could be relevant to any public interest defense that Mr. Burgis or HarperCollins-UK might assert in the anticipated UK defamation case. The UK public interest defense simply requires the defendant to show that the allegedly defamatory statement made was "on a matter of public interest;" and that the defendant "reasonably believed that publishing the statement . . . was in the public interest." Vassall-Adams Decl. ¶ 17. As Mr. Vassall-Adams explains in his Declaration, he is not aware of any UK authority—nor has ENRC cited any—for the proposition that "identifying the amount an author was paid . . . [is] a relevant consideration under the public interest defence" for a claim of defamation. Vassall-Adams Decl. ¶ 27.[5] And while both Mr. Vassall-Adams and ENRC's counsel Mr. Shanmuganathan agree that, in determining whether the allegedly defamatory statement is in the public interest, a UK court may consider whether the *source* of the statement had any "axes to grind" against the subject of the statement, ENRC does not explain how Mr. Burgis's Contract with his publishing company could possibly reveal whether his sources had any such biases. *See id.* ¶ 23; *see also* ECF No. 34 ¶¶ 19-20.[6]

---

[4] HarperCollins-US represents to the Court without reservation that Mr. Burgis's publishing contract does not contain any terms that could substantiate ENRC's baseless and speculative claims. If, however, the Court requires confirmation of the same, HarperCollins-US will gladly provide a copy of the Contract to the Court for its *in camera* inspection.

[5] Mr. Vassall-Adams also notes that because Mr. Burgis would not dispute the fact that he was paid by his publisher for work on the Book, the fact of payment itself will not be in issue. Vassall-Adams Decl. ¶ 27.

[6] ENRC's only other argument regarding the purported relevance of Mr. Burgis's compensation information is that HarperCollins-US allegedly "conceded" its relevance. Opp. at 5. HarperCollins-US did no such thing. Rather, HarperCollins-US merely stated that information regarding Mr. Burgis's compensation for the Book constituted

Because the Contract is clearly irrelevant to all claims and defenses in the pending and contemplated UK proceedings, the Court should quash the Amended Subpoena on statutory grounds for failing to seek discovery "for use" in the foreign proceedings.

## II. THE *INTEL* DISCRETIONARY FACTORS ALSO WEIGH AGAINST FORCED DISCLOSURE OF THE CONTRACT.

Even if the "for use" requirement is satisfied, if the discovery request "appears only marginally relevant to the foreign proceeding," it "may in certain cases suggest that the application 'is made in bad faith, for the purpose of harassment, or unreasonably seeks cumulative or irrelevant materials,' which would be grounds for a discretionary denial of discovery." *Mees*, 793 F.3d at 299 n.10 (citation omitted); *see also Metallgesellschaft AG v. Hodapp (In re an Order Permitting Metallgesellschaft AG to Take Discovery)*, 121 F.3d 77, 79 (2d Cir. 1997) (noting that, if a court "suspects that the [§ 1782 discovery] request is a 'fishing expedition' or a vehicle for harassment, the district court should deny the request") (citation omitted). The Court should, in its discretion, deny ENRC's requested discovery on this basis. Additionally, at least two of the four discretionary *Intel* factors identified in the Motion also counsel against the forced disclosure of the Contract.

First, it is clear that ENRC's discovery request "conceals an attempt to circumvent foreign proof-gathering restrictions" in violation of the third *Intel* factor. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004). ENRC's counsel has effectively conceded as much. When HarperCollins-US' counsel represented that Mr. Burgis would be willing to disclose the Contract in the anticipated UK proceeding against him (if he were required to do so by the UK court), ENRC's counsel admitted that the Contract might not be discoverable in that jurisdiction, which is one reason why they were seeking it in the U.S. Handman Decl. ¶ 5. The UK court is

---

"proprietary commercial information of limited, ***if any***, relevance to the lawsuits at hand." Mot. at 2 (emphasis added). Further research for purposes of this reply brief has confirmed that there is no such relevance.

9

the proper entity to determine the Contract's admissibility, and this Court should deny ENRC's attempted end-run around UK discovery rules. While the third *Intel* factor does "not 'authorize denial of discovery pursuant to § 1782 solely because such discovery is unavailable in the foreign court, [it] . . . allow[s] consideration of foreign discoverability (along with many other factors) when it might otherwise be relevant to the § 1782 application.'" *Mees*, 793 F.3d at 303 (citing *Metallgesellschaft*, 121 F.3d at 79). Because the Contract is not relevant to any claims or defenses in the UK proceedings, it would not be discoverable in those proceedings—and thus, this factor weighs against disclosure. *See* Vassall-Adams Decl. ¶ 33.

Second, in analyzing whether a party's request for § 1782 discovery is "unduly intrusive or burdensome" under the fourth *Intel* factor, courts should weigh the probative value of the materials sought. *See Okean B.V. & Logistic Sol. Int'l*, 60 F. Supp. 3d 419, 432 (S.D.N.Y. 2014) (denying § 1782 application where production of the materials would be intrusive and burdensome and the "probative value . . . [was] conjectural at best"). Here, as established *supra*, the Contract is of no probative value to ENRC in the UK proceedings because it is irrelevant to all claims and defenses therein. Disclosure of the Contract would also be unduly intrusive and burdensome because it would require HarperCollins-US to disclose confidential and proprietary business information—*i.e.*, the terms of its compensation with one of its authors. *See In re Ex Parte Application of Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1043 (N.D. Cal. 2016) ("Requests are unduly intrusive and burdensome where they are not narrowly tailored, request confidential information and appear to be a broad 'fishing expedition' for irrelevant information.").

## CONCLUSION

For the foregoing reasons, the Court should quash the Amended Subpoena issued against HarperCollins-US.

Dated: February 15, 2021
       New York, New York

                            Respectfully submitted,

                            DAVIS WRIGHT TREMAINE LLP

                            By: /s/ *Laura R. Handman*
                                Laura R. Handman
                                Jeremy A. Chase
                                Chelsea T. Kelly

                            1251 Avenue of the Americas, 21st Floor
                            New York, NY  10020-1104
                            (212) 489-8230 Phone
                            (212) 489-8340 Fax
                            laurahandman@dwt.com
                            jeremychase@dwt.com
                            chelseakelly@dwt.com

                            *Attorneys for Respondent HarperCollins Publishers, LLC*