UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

---

IN RE: EX PARTE APPLICATION OF
EURASIAN NATURAL RESOURCES
CORPORATION LIMITED PURSUANT
TO 28 U.S.C. ¶1782 FOR LEAVE TO
TAKE DISCOVERY FOR USE IN
FOREIGN PROCEEDINGS

                Respondent.

Case No: 1:20-mc-00312-ER

Hon. Edgardo Romas

ORAL ARGUMENT REQUESTED

---

## DECLARATION OF GUY LUKE VASSALL-ADAMS

I, Guy Luke Vassall-Adams, declare pursuant to 28 U.S.C ¶1746 as follows:

1. I submit this declaration in opposition to the Ex Parte Application of Eurasian Natural Resources Corporation Limited pursuant to 28 U.S.C ¶1782 for an Order to Conduct Discovery for Use in Foreign Proceedings.

**Qualifications**

2. I was called (admitted) to the Bar of England and Wales in October 2000. I have been in practice as a barrister for the past 20 years. I was a junior counsel from 2000 to 2016 and in 2016 I was appointed as a Queen's Counsel (QC).

3. My main area of practice is Media and Information Law, including defamation. I have appeared in numerous media law cases at first instance and on appeal, including four cases in England's highest court (now the Supreme Court, formerly the House of Lords), two of which were defamation cases. I have also appeared in numerous media law cases in the Court of Appeal (Britain's second highest appellate court). I am the

1

author of the official guidance to the judiciary on open justice and reporting restrictions – Reporting Restrictions in the Criminal Courts (Judicial College, 2016) and I have trained the senior judiciary in this area.

4. I attach my CV as Exhibit 1[1].

**Introduction**

5. This declaration addresses the Applicant's request for an order seeking access to the contract between the Respondent and Mr Tom Burgis, author of *Kleptopia* (the "Contract", the "Book"), so as to ascertain the amount the author was paid for writing it.

6. Attached to this declaration is a bundle of documents containing the extracts from statutes and copies of authorities referred to by me, which I shall refer to by their respective exhibit numbers.

7. I have read the Declaration of Niranjan Shanmuganathan dated 2 September 2020, Mr Shanmuganathan's Supplemental Declaration dated 18 January 2021, the Applicant's Memorandum of Law in Support of the Application dated 2 September 2020, the Respondent's Memorandum of Law in support of its Motion to Quash Subpoena dated 24 November 2020 and the Applicant's Memorandum of Law in Opposition to the Respondent's Motion to Quash Subpoena dated 18 January 2021.

**The Contemplated Proceedings**

8. It is clear from Mr Shanmuganathan's Supplemental Declaration dated 18 January 2021 that the proceedings relied upon for the purpose of this Application are possible proceedings in defamation brought by the Applicant in England and Wales against Mr Burgis, HarperCollins Publishers Limited and the Financial Times Limited (Supp. Decl. paras 16-18). These are defined by the Applicant as the Contemplated Proceedings (Supp. Decl. para 16). The Book was published in the UK on 3 September 2020. No

---

[1] Exhibit 1

claims have yet been issued but the Applicant has instructed Pre-Action Protocol letters to be sent to all three potential defendants (Supp. Decl. para 15).

9. The defamation claims relate to two specific parts of *Kleptopia* and the defamatory meaning placed by the Applicant on the words complained of (according to the letter to HarperCollins Publishers Ltd) is that:

   (a) ENRC had Andre Bekker, James Brethel and Gerrit Strydom murdered to protect its business interests, or, alternatively, that there are strong grounds to suspect that our client had Andre Bekker, James Bethel and Gerrit Strydom murdered to protect its business interests; and

   (b) there are reasonable grounds to suspect that ENRC had John Mack poisoned.

10. Meaning is frequently in issue in libel claims and I understand that the Applicant's meaning is contested. I have set out the Applicant's alleged meaning simply to show that the focus of the libel claims, if proceedings are brought, will be on allegations relating to ENRC and its role, if any, in relation to the deaths of four persons in allegedly suspicious circumstances.

**Elements of the claim**

11. There are three main elements that a claimant must establish as constituent parts of the cause of action of libel (defamation in relation to the written word). These are that there has been publication to more than one person of a defamatory statement that refers to the claimant. For a statement to be defamatory it must have a tendency to harm that person's reputation and by s. 1 of the Defamation Act 2013[2], it must in addition, have caused, or be likely to cause, serious harm to the claimant's reputation. Where the claimant is a body that trades for profit (as the Applicant would be), for the harm to reputation to be "serious harm" it must have caused, or be likely to cause, serious financial loss to the claimant.

---

[2] Exhibit 2

12. The issues which the claimant will therefore have to establish as part of its claim and on which it will bear the burden of proof are that:

    (1) There has been publication of the words complained of to more than one person (publication);
    (2) The words complained of referred to the claimant (reference);
    (3) The words complained of are defamatory, namely that they had a tendency to cause harm to the claimant's reputation (defamation);
    (4) That publication of the words complained of has caused, or is likely to cause, serious harm to the claimant's reputation (serious harm); and
    (5) That publication of the words complained of has caused, or is likely to cause, serious financial loss to the claimant (serious financial loss).

13. The terms of the Contract between the Respondent and Mr Burgis including the amount Mr Burgis was paid for his work on the Book are not relevant to any of these issues. Knowledge of those matters would not assist the claimant in establishing its cause of action as a matter of law, or in pleading its claim against the defendants in its Particulars of Claim. The terms of the Contract are wholly extraneous to, and irrelevant to, the cause of action.

**Defences**

14. The two main defences to a defamatory allegation of fact are Truth (s.2, Defamation Act 2013[3]) and Public Interest (s.4 Defamation Act 2013[4]).

15. In relation to a Truth defence, a defendant bears the burden of persuading the court, on the balance of probabilities, that the imputation of the statement complained of is "substantially true". I do not have any information as to whether any of the defendants would seek to run a Truth defence in this case, either in the Applicant's meaning in its Pre-Action Letter or in some other lesser meaning (e.g. that there were grounds to investigate whether the Applicant was responsible for the deaths).

---

[3] Exhibit 3
[4] Exhibit 4

4

16. It is however clear from the nature of the allegations at issue that the terms of the Contract and the amount Mr Burgis was paid are completely irrelevant to the facts that would be at issue in relation to whether these allegations are true or false. If a Truth defence was advanced, knowledge of the contractual terms would not assist the claimant in seeking to rebut such a defence. Neither would knowledge of the contractual terms be in any way relevant to the claimant's pleaded case in response to the Defence, which would be set out in a Reply.

17. The Public Interest Defence is set out in s.4 of the Defamation Act 2013, in the following terms:

    "It is a defence to an action for defamation for the defendant to show that –
    (a) The statement complained of was, or formed part of, a statement on a matter of public interest; and
    (b) The defendant reasonably believed that publishing the statement complained of was in the public interest."

18. The leading case on the public interest defence is the recent decision of the UK's Supreme Court in *Serafin v Malkiewicz* [2020] UKSC 23, [2020] 1 WLR 2455[5]. In summary, that case confirmed at [74] that to succeed in relation to the public interest defence a defendant must establish that:

    (1) The statement complained of was "on a matter of public interest";
    (2) That he believed that publication of the statement was in the public interest; and
    (3) His belief that publication of the statement was in the public interest was reasonable.

19. The focus of the first element at (1) above – that the statement complained of was "on a matter of public interest" – concerns simply whether the subject matter of the statement was on a public interest issue. This is assessed objectively by the court looking at the publication complained of and hearing submissions on why its subject matter is, or is not, on a topic of public concern.

---

[5] Exhibit 5

20. The second element at (2) above depends upon the author of the publication complained of proving as a fact that he subjectively believed that publication of the statement was in the public interest.

21. The third element at (3) above depends upon the defendant persuading the court that he reasonably believed that publication of the statement was in the public interest. This is an objective test. The Supreme Court in Serafin approved the statement of Mr Justice Warby in *Economou v De Freitas* [2017 EMLR 4[6] who observed that: "I would consider a belief to be reasonable for the purposes of section 4 only if it is arrived at after conducting such enquiries and checks as it is reasonable to expect of the particular defendant in all the circumstances of the case." Mr Justice Warby went on to say at [241] that: "Among the circumstances relevant to the question of what enquiries and checks are needed, the subject-matter needs consideration, as do the particular words used, the range of meanings the defendant ought reasonably to have considered they might convey, and the particular role of the defendant in question."

22. The Supreme Court also held that the factors that were regarded as relevant to the previous common law public interest defence, known as the Reynolds defence (*Reynolds v Times Newspapers Limited* [2001] 2 AC 127[7]), also remained relevant considerations under the "reasonable belief" limb of the defence. However, the Supreme Court emphasized that those factors are only potentially relevant circumstances and should not be elevated into a checklist.

23. The illustrative factors set out in *Reynolds* at p.205A-C were as follows:

    (1) The seriousness of the allegation. The more serious the charge, the more the public is misled and the individual harmed, if the allegation is not true.
    (2) The nature of the information, and the extent to which the subject-matter is a matter of public concern.
    (3) The source of the information. Some informants have no direct knowledge of the events. Some have their own axes to grind, or are being paid for their stories.
    (4) The steps taken to verify the information.

---

[6] Exhibit 6
[7] Exhibit 7

6

(5) The status of the information. The allegation may have already been the subject of an investigation which commands respect.

(6) The urgency of the matter. News is often a perishable commodity.

(7) Whether comment was sought from the plaintiff. He may have information others do not possess or have not disclosed. An approach to the plaintiff will not always be necessary.

(8) Whether the article contained the gist of the plaintiff's side of the story.

(9) The tone of the article. A newspaper can raise queries or call for an investigation. It need not adopt allegations as statements of fact.

(10) The circumstances of the publication, including the timing.

24. The reference to a source of the information at (3) above is a reference to a journalist's source, or informant, who might not have first-hand knowledge of the relevant events or might have their own agenda for making defamatory allegations against another person, or might have been paid for the information. This aspect relates to the journalist's source, not the journalist himself.

25. The Contract is not relevant to any of the issues that would arise in relation to the public interest defence. It has nothing to do with the subject-matter of the publication and whether it is "on" a matter of public interest. It has no bearing on whether Mr Burgis genuinely believed that publication of the words complained of was in the public interest. It is not relevant to any of the factors that a court might take into consideration in deciding whether Mr Burgis' belief that publication was in the public interest was a reasonable one. It will not assist the Applicant to rebut any aspect of the defendant's public interest defence, or to plead any relevant matter in its Reply.

26. Mr Shanmuganathan asserts at Supp Decl para 20 that "Mr Burgis' compensation and who he received it from is also very relevant to determining whether he had a reasonable belief that publication of the Allegations was in the public interest, particularly if those who paid him also had axes to grind against ENRC".

27. I have three observations about this statement:

7

(1) It seems very unlikely that it will be disputed by the defendant to the claim that he was paid by his publishers for the very substantial amount of work involved in researching and writing the Book. The fact of a payment, therefore, will be admitted and will not be in issue.

(2) Mr Shanmuganathan proceeds from an assumption that Mr Burgis was paid to make these allegations by unknown third parties. This assumption (as to which no evidence is cited) involves treating Mr Burgis as if he himself was the source, when in fact he is the **author**, reliant on his own sources to provide him with their knowledge of the relevant events. The case law cautions that paid **sources** may have "axes to grind"; it is talking here about informants, not authors as the above passage from *Reynolds* makes crystal clear.

(3) No authority is cited in support of the bare assertion that the amount an author is paid for a publication is relevant to whether he reasonably believed that the publication complained of was in the public interest. I am not aware of **any** authority identifying the amount an author was paid as a relevant consideration under the public interest defence.

**Damages and other relief**

28. I can deal with this shortly because it does not appear to be asserted by the Applicant that the Contract would have any bearing on damages or any other relief if the Applicant were to bring a claim and succeed on liability after a trial. This concession is rightly made, because general damages in libel compensate for injury to reputation, hurt feelings and the award of a sum to vindicate the claimant's reputation to the world (*John v MGN Limited* [1997] QB 586 at 607-608[8]); *Monroe v Hopkins* [2017] EWHC 433 (QB), [2017] 4 WLR 68 at [75]-[76] [9]). Special damages may also be available as part of general damages, although they are rare in practice, where the claimant can attribute specific financial losses to the libel (*The Gleaner Co Ltd v Abrahams* [2003] YKPC 55, [2004] 1 AC 628 at [56][10]). The Contract is not relevant to any of these matters and its contents would not assist the Court in deciding the appropriate quantum of damages or other relief (such as the terms of an injunction).

---

[8] Exhibit 8
[9] Exhibit 9
[10] Exhibit 10

8

**The Ongoing Proceedings**

29. , In the Decl. at [31] the Applicant asserts that: "The evidence relating to compensation of Mr Burgis will also help to establish the extent of damages in the Ongoing Proceedings, including damages that may result from the publication of Mr Burgis' book." Again, this is a bare assertion unsupported by any facts, reasoning or authority.

30. It is however apparent from the Decl. at [5] that the Ongoing Proceedings relate to persons other than Mr Burgis who are not parties to the Contract and who are alleged to have breached the Applicant's confidence in the specific circumstances there described. *If* the Applicant succeeds in establishing liability as against those defendants in those proceedings the damages awarded in those claims will relate to the breaches of confidence committed by those persons, not the actions of Mr Burgis.

31. Damages for breach of confidence can be assessed on a number of different bases, depending on the nature of the confidential information. Frequently, damages will be assessed on the ordinary tortious basis, namely the sum that would put the claimant in the position it would have been in had it not been for the breach of confidence (*Indata Equipment Supplies Ltd v ACL Limited* [1998] 1 B.C.L.C 412[11]). Where confidential information of a commercial nature has been misused, damages may be assessed by reference to its commercial value e.g. the amount which might reasonably have been paid for a license to use the information as between a willing licensor and licensee *(Lunn Poly Limited v Liverpool & Lancashire Properties Ltd* [2006] EWCA Civ 430[12]) (so-called *Wrotham Park* damages). While damages are the main remedy, a court can also order an account of profits instead of damages. Damages may also be awarded for mental distress, where the confidential information is personal e.g. relates to a person's sex life (*Mosley v News Group Newspapers Ltd* [2008] EWHC 1777 (QB), [2008] EMLR 20[13]).

---

[11] Exhibit 11
[12] Exhibit 12
[13] Exhibit 13

32. Notwithstanding the wide range of ways in which damages for breach of confidence can be assessed, there is in my view no basis on which a Court could properly conclude that what Mr Burgis was paid in the contract is of any relevance to damages in the Ongoing Proceedings and that information is not a matter that the Court could take into account in determining damages in those proceedings.

**Disclosure**

33. In England and Wales disclosure ("discovery" in the US) is governed by the Civil Procedure Rules. There are three main routes to obtaining disclosure. First, the parties to an action are required to provide standard disclosure under CPR 31.6[14] of all documents that adversely affect their case, adversely affect the other party's case or support the other party's case, the touchstone being the issues in dispute in the proceedings judged by reference to the statements of case. The Contract would not fall to be disclosed by way of standard disclosure because it is not relevant to any issue that would be in dispute between the Applicant and Mr Burgis.

34. Secondly, a party may apply for an order for specific disclosure against another party under CPR 31.12[15] e.g. of a specific document or class of documents. Again, the Court will only order specific disclosure of documents relevant to issues in dispute, so it would not order disclosure of the Contract from Mr Burgis.

35. Finally, the Court may make an order for disclosure against a person who is not a party to the proceedings, which would appear to be the most relevant provision here as the Respondent will not be a party to the defamation claim. Such orders are granted under CPR 31.17(3)[16] which provides as follows:

"The Court may make an order under this rule only where-
(a) The documents of which disclosure is sought are likely to support the case of the applicant or adversely affect the case of one of the other parties in the proceedings; and

---

[14] Exhibit 14
[15] Exhibit 15
[16] Exhibit 16

10

    (b) disclosure is necessary in order fairly to dispose of the claim or save costs."

36. The case law on CPR 31.17 states that "the word 'only' in CPR 31.17 emphasises that disclosure from third parties is the exception rather than the rule" (*Franksom v Home Office* [2003] EWCA Civ 655, [2003] 1 WLR 1952 at [10])[17]; that it is a jurisdiction that "should be exercised with caution" (*Re Howglen Ltd* [2001] BCC 245 at [250H][18]), and that the court has a "clear obligation to ensure, if necessary by its own motion, that this intrusive jurisdiction is not used inappropriately even by consent" (*Flood v Times Newspapers Limited* [2009] EWHC 411 (QB), [2009] EMLR 18 at [29][19]).

37. The Applicant would not succeed in persuading an English court to make an order for third party disclosure against the Respondent as the Contract would satisfy neither requirement: it would not support his case or adversely affect Mr Burgis' case, nor would it be necessary to fairly dispose of the claim or save costs. The English case law clearly establishes that this "intrusive jurisdiction… should not be used inappropriately" and the present application, in my strong opinion, seeks to circumvent the restrictive regime for third party disclosure in England and Wales.

**Conclusion**

38. In summary, my strongly held views are as follows:
    (1) The Contract is not relevant to any of the issues that will fall to be decided in the Contemplated Proceedings, namely the threatened libel claim by the Applicant against Mr Burgis concerning the allegations complained of in the Book. The Contract is not relevant to any aspect of the claim, the defences or relief.
    (2) The Contract is not relevant to any damages that might ultimately be awarded to the Applicant in the Ongoing Proceedings, which relate to persons other than Mr Burgis and concern different alleged breaches of confidence.

---

[17] Exhibit 17
[18] Exhibit 18
[19] Exhibit 19

11

(3) The present Application is an attempt to circumvent foreign proof-gathering restrictions and policies, namely the restrictive regime governing orders for disclosure against third parties in England and Wales.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on the 15th day of February 2021 in London, United Kingdom.

*[Signature]*