UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE:<br><br>*EX PARTE* APPLICATION PURSUANT TO 28 U.S.C. § 1782 FOR LEAVE TO TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS,<br><br>Applicant. | Case No. 20-mc-00312-ER |

**SUR-REPLY IN FURTHER OPPOSITION TO MOTION OF RESPONDENT HARPERCOLLINS PUBLISHERS, LLC TO QUASH SUBPOENA OR, IN THE <u>ALTERNATIVE, FOR A PROTECTIVE ORDER</u>**

Duane L. Loft
Joanna Wright
Mark W. Kelley
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
(t) +1 212 446 2300
(f) +1 212 446 2380

*Attorneys for Applicant Eurasian Natural Resources Corporation Ltd.*

Applicant Eurasian Natural Resources Corporation Limited ("ENRC") respectfully submits this Sur-Reply in Further Opposition to Motion to Quash Subpoena or, in the Alternative, for a Protective Order ("Motion to Quash" or "Mot.") filed by Respondent HarperCollins Publishers, LLC ("HarperCollins" or "Respondent").

**INTRODUCTION**

Respondent filed its Motion to Quash in an attempt to deny discovery of communications with known sources of defamatory and confidential material contained in a book that Respondent published in the United States. On January 27, 2021, over a week after ENRC filed its opposition to Respondent's motion to quash, Respondent's counsel represented that it had conducted a reasonable search in response to the Amended Subpoena and located only one responsive document: the contract for the book that ENRC requested to establish the author's compensation and other key terms (the "Contract"). Even though Respondent has not (and cannot) articulate any conceivable burden in producing this contract, and even though ENRC has offered to considers its remaining requests satisfied upon receiving basic details about Respondent's "reasonable search," Respondent has refused any production, and insists on needless motion practice before this Court.

The Reply submission is devoted mostly to arguments about why the Contract is not relevant to the Foreign Proceedings. It is relevant, both because the author's compensation will help determine whether he can legitimately defend against the defamation claims on the basis that he was acting in the "public interest," and because the Contract's other terms will help establish the extent of the author's diligence, the timeline for that diligence, and whether he can credibly claim to have done an adequate investigation of the truth of what he was publishing.

The rest of the Reply is devoted to two issues that should not be issues at all. First, Respondent resists providing information to verify that it conducted a "reasonable search" for responsive documents. This can be (and should have been) cured by simply providing the

1

custodians, names, and date ranges for the searches. With that information, ENRC will consider Respondent's obligations satisfied with regard to its remaining requests. Second, Respondent asks this Court to rule on the standing of a foreign litigant to sue in a foreign court, despite the fact that ENRC can most certainly sue for defamation in the U.K.

The reality is that the Book is the latest installment in a years-long smear campaign against ENRC which ENRC has tolerated, until now, without seeking legal redress against the publishers and media outlets that published defamatory and confidential information. However, after the Book's allegation that ENRC was involved in murder—an allegation which also appeared in various publications, including the Financial Times—for self-evident reasons, ENRC could not tolerate it any longer. ENRC has little choice but to gather information regarding the sources and circumstances of these grave and false allegations. Respondent's effort to frame this Section 1782 application as harassment or as a fishing expedition is therefore opportunistic and inaccurate.

Accordingly, ENRC respectfully requests that the Court deny the Motion to Quash and compel Respondent to produce the Contract and provide the details of its search for documents.

## ARGUMENT

I. **Respondent's Contract with Tom Burgis Is Relevant to the Ongoing and Contemplated Proceedings.**

Respondent's claim that the Contract is irrelevant to the Foreign Proceedings is meritless. "The proper scope of the discovery sought under section 1782, like all federal discovery, is governed by Federal Rule 26(b)." *In re Application Pursuant to 28 U.S.C. Section 1782*, 249 F.R.D. 96, 106 (S.D.N.Y. 2008). Rule 26(b) construes relevance broadly "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Where relevance is in doubt, the district court should be permissive. *In re Application Pursuant to 28*

*U.S.C. Section 1782*, 249 F.R.D. at 106.  Where parties raise conflicting relevance claims in a Section 1782 proceeding, courts routinely grant discovery requests.  *See In re Application Pursuant to 28 U.S.C. Section 1782*, 249 F.R.D. at 107 ("Given the broadly permissive standard by which a court evaluates the relevance of discoverable material, and the parties' presentation of a factual dispute regarding the relevance of the discovery sought, it is inappropriate to deny [petitioner's] discovery requests on the ground that the requested discovery is irrelevant to [petitioner's] foreign claims."); *In re Gushlak*, No. 11-MC-218 NGG, 2011 WL 3651268, at *6 (E.D.N.Y. Aug. 17, 2011) ("[T]he allegations are plausible enough, and sufficiently supported, for the court to conclude that the proposed subpoenas are 'reasonably calculated' to uncover material that would 'bear on' the Cayman Islands divorce action.").

The Contract "bears on" ENRC's defamation claims in at least four ways.  First, Mr. Burgis's compensation for the book is relevant to a defense that he was acting in the "public interest" because his compensation may make it difficult to substantiate that claim.  If he was paid handsomely for the Book, it is difficult to argue that he acted in the public interest, and if he was paid meagerly, it would raise questions as to whether third parties also compensated him to write the Book, which would also undermine a public interest defense.  And if the Contract included incentive compensation based on sales, it would provide evidence of a motive to include salacious and defamatory content in the Book to increase sales.  Shanmuganathan Second Suppl. Decl. ¶¶ 6, 9.  Second, to the extent it sets the terms of Mr. Burgis's fact-checking and diligence process, the Contract is relevant to whether Mr. Burgis can defend the defamation claims based on conducting adequate investigation of the truth of what he was reporting.  *Id.* ¶¶ 7–8.  Third, to the extent it sets a deadline for the Book, the Contract is relevant to whether Mr. Burgis had time to properly investigate the truth of what he was going to publish.  *Id.* ¶ 10–11.  Fourth, the Contract will

3

establish whether Mr. Burgis agreed to promotion and advertising for the Book, which is relevant to assessing damages for the defamation claim. *Id.* ¶ 13.

The Contract is also relevant to ENRC's claims for breach of confidence in the Ongoing Proceedings. As Respondent's foreign law expert concedes, "[w]here confidential information of a commercial nature has been misused, damages may be assessed by reference to its commercial value." Doc. No. 39, ¶ 31. Accordingly, as set forth in the Shanmuganathan Declaration, the compensation paid to Mr. Burgis by Respondent is relevant to assessing the appropriate damages in the Ongoing Proceedings because it evidences the commercial value of the misappropriated information contained in the Book. Shanmuganathan Second Suppl. Decl. ¶ 16–17.

## II.    Respondent's Representation that It Does Not Possess Documents Responsive to Requests 2–7 Is Inadequate.

The week prior to the original due date for Respondent's Reply, counsel for Respondent contacted counsel for ENRC and represented that it had performed a search and found no documents responsive to Amended Subpoena Requests 2–7. Declaration of Mark W. Kelley at ¶ 2. In light of this representation, and in a good-faith effort to narrow the dispute and to save costs and the Court's time, counsel to ENRC represented that it would consider Respondent's obligations with respect to Requests 2–7 satisfied if Respondent would describe the efforts it took to search for responsive documents by providing the custodians, date ranges, and key words used for the search. *Id.* ¶¶ 2–3. ENRC also agreed to an extension of the deadline for Respondent to file a reply in order to allow Respondent time to provide such information. *Id.* ¶ 5. However, Respondent refused to provide any information relating to the steps it took to search for responsive material. *Id.* ¶¶ 6–7. Respondent's Reply represents that it possesses no documents responsive to Requests 2–7, Reply at 1, and abandons its invocation of the reporter's privilege, but again fails to provide any information about its search. The declaration from Laura R. Handman states only that

> our law firm performed a search of relevant custodial data and ascertained that HarperCollins-US possessed no documents responsive to Request Nos. 2-7 of the Amended Subpoena

Handman Decl. (Doc. No. 38) ¶ 2.

In light of its refusal to work with ENRC or provide information about the scope of its search, Respondent should be required to substantiate this assertion. *See Raymond v. City of New York*, No. 15CIV6885LTSSLC, 2020 WL 1067482, at *2 (S.D.N.Y. Mar. 5, 2020) (noting order "to email Plaintiffs' counsel a list of the search terms, date ranges, and custodians used in their search."); *Michael Kors, L.L.C. v. Su Yan Ye*, No. 1:18-CV-2684 (KHP), 2019 WL 1517552, at *3 (S.D.N.Y. Apr. 8, 2019) ("Rule 34 imposes the responsibility on a responding party to state . . . the parameters of the search to be made (i.e., custodians, sources, date ranges and search terms.").

### III.     ENRC Has Standing To Sue for Defamation in the U.K.

In the Introduction of its Reply, Respondent insinuates that ENRC lacks standing to sue for defamation in the U.K. because counsel for Respondent's U.K. affiliate has alleged in an unsworn letter that up to 50% of one of ENRC's parent corporation's shares are held by the Kazakh state "with additional involvement from Russia." Reply at 4. As explained in the Shanmuganathan Declaration, these assertions are factually incorrect. Shanmuganathan Second Suppl. Decl. ¶¶ 18–19. And Respondent does not even explain why, if true, this allegation affects ENRC's standing to sue in the U.K. It would not. As explained in the Shanmuganathan Declaration, any prohibition on suits by state actors does not extend to commercial entities. *Id.* ¶ 19. In any event, this argument is an attempt to ensnare this Court in the kind of "speculative foray[ ] into legal territories unfamiliar to federal judges," that the Second Circuit has warned courts to avoid in the context of Section 1782. *In re Application for an Order Permitting Metallgesellschaft AG to take Discovery*, 121 F.3d 77, 80 (2d Cir. 1997). This argument should be rejected out of hand.

5

## IV. The *Intel* Factors Counsel in Favor of Discovery Here.

Finally, Respondent claims that because the Contract is irrelevant to the Foreign Proceedings, the *Intel* factors favor quashing the Amended Subpoena. For the reasons set forth above, the Contract *is* relevant to the Foreign Proceedings. In any event, Respondent's argument that materials must be discoverable in the foreign proceedings to qualify under Section 1782 misconstrues the third *Intel* factor: as this Court has observed, "Section 1782 does not require that the evidence requested be admissible or discoverable in the foreign tribunal." *In re Top Matrix Holdings Ltd.*, No. 18 MISC. 465 (ER), 2020 WL 248716, at *6 (S.D.N.Y. Jan. 16, 2020). Finally, the probative value of the Contract is not outweighed by the burden of producing it because Respondent has already identified the document and would suffer no burden in producing it.[1]

### CONCLUSION

For the reasons set forth above, the Court should deny the Motion to Quash and compel Respondent to produce the Contract and provide the details of its search for responsive documents.

Dated: February 23, 2021

Respectfully submitted,

/s/ Duane L. Loft
Duane L. Loft
Joanna Wright
Mark W. Kelley
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
(t) +1 212 446 2300
(f) +1 212 446 2380

*Attorneys for Applicant Eurasian Natural Resources Corporation Ltd.*

---

[1] Any argument that production would be burdensome because the Contract contains sensitive or proprietary information is moot because ENRC is amenable to redaction of sensitive information in the Contract and to a protective order governing the use of information contained in the Contract. Kelley Decl. ¶ 3.